IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

| | |
|---|---|
| 16 FRONT STREET LLC AND | |
| C. RICHARD COTTON | PLAINTIFFS |
| VS. | CIVIL ACTION NO. 1:14-CV-00183-SA-DAS |
| MISSISSIPPI SILICON LLC | DEFENDANT |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## INTRODUCTION

A shell corporation of Globe Specialty Metals, the parent company of the only merchant silicon metal producer in the United States with no production facilities in Mississippi, and a freelance writer from Saltillo, Mississippi, a town that is approximately 50 miles away from Burnsville, Mississippi ("Plaintiffs") have somehow joined together in an effort to enjoin Mississippi Silicon, LLC ("MS Silicon") from lawfully constructing a silicon metal production facility in accordance with a Prevention of Significant Deterioration permit validly-issued by the Mississippi Environmental Quality Permit Board. Rather than provide 60-days' notice of this citizen suit as mandated under the federal Clean Air Act or any notice of this motion as required under Rule 65, Plaintiffs filed their complaint in this Court followed immediately by a motion for emergency relief.[1] Ironically, Plaintiffs argue that the Mississippi Department of Environmental Quality deprived them of an opportunity to be heard regarding MS Silicon's permit application, which was filed over a year ago, because the public comment period was allegedly one-day less

---

[1] To date, Plaintiffs have not served MS Silicon with the complaint or the accompanying motion.

than required by law. To remedy this apparent affront, Plaintiffs target Globe's soon-to-be competitor instead of the agency that allegedly precluded them from participating in the permitting process.[2] Plaintiffs' failure to join a required party is one of many reasons why Plaintiffs cannot prevail on their motion or their claims in the underlying complaint. Plaintiffs are also late to the game, filing the wrong claim in the wrong venue at the wrong time. Not only do Plaintiffs fail to demonstrate a likelihood of success on the merits or that they will suffer immediate and irreparable injury,[3] they have also failed entirely to state a justiciable claim under the Clean Air Act. Accordingly, this Court should deny Plaintiffs' motion, dismiss this case with prejudice, and award MS Silicon its costs and attorneys' fees incurred in defending this action.

## LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedure governs the issuance of injunctive relief. Preliminary injunctive relief is an "extraordinary remedy," and "[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Miss. Power & Light v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). To obtain this extraordinary

---

[2] This is the third frivolous lawsuit that a Globe Specialty Metals ("Globe") affiliated entity has filed regarding the MS Silicon Facility. First, after failing to provide any comments on the draft permit during the public notice-and-comment period, Globe requested a formal hearing on MS Silicon's permit before the Mississippi Environmental Quality Permit Board. Globe's request was denied because Globe failed to file it within the timeframe specified under Mississippi law. Globe appealed the dismissal of its request in Chancery Courts in both Hinds County and Tishomingo County, Mississippi. The Tishomingo court rejected Globe's claims and entered judgment in favor of the Mississippi Department of Environmental Quality and MS Silicon. (*See* Exhibit 1) The Hinds County action will be heard at the end of October. While pursuing dual actions in Hinds and Tishomingo counties, Globe also filed further actions causing the Mississippi Development Authority and MS Silicon to defend against decisions restricting access to confidential business records associated with the project's arrangements with the State of Mississippi. (*See* Exhibit 2) In addition, Globe has filed another frivolous lawsuit in the U.S. District Court for the District of Columbia against MS Silicon, which, among other things, seeks the revocation of the PSD permit. *See Globe Metallurgical, Inc. v. Rima Industrial, S.A., et al.*, No. 14-1252 (KBJ) (D.D.C) (attached as Exhibit 3). These lawsuits are in addition to the anti-competitive campaign of misinformation that Globe, through its affiliates and agents, has undertaken in an effort to stop the MS Silicon Facility so that Globe will remain the only merchant producer of silicon metal in the United States. This has included, among other things, failed attempts to have the U.S. Environmental Protection Agency ("EPA") object to or otherwise direct the Mississippi Department of Environmental Quality to repeal the permit issued to MS Silicon.

[3] In fact, the Plaintiffs acknowledge in their Motion that they have not shown that they will suffer immediate and irreparable injury.

relief, a party must clearly show: (1) a substantial likelihood of prevailing on the merits of the claims; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm the injunction may do to the adverse party; and (4) that granting the preliminary injunction is in the public interest. *Canal Authority of State of Fla. V. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). The moving party carries the burden of persuasion as to all four elements. *See Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) ("It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."). Additionally, for an injunction to issue, the moving party must post a bond with the court sufficient to pay the damages to a party found to have been wrongfully enjoined. *See* Fed. R. Civ. P. 65(c). The legal standard for a temporary restraining order is identical to that of injunctive relief. *See Justice v. Hosemann*, 829 F. Supp. 2d 504, 510 (N.D. Miss. 2011).

## BACKGROUND

The federal Clean Air Act regulates the construction and operation of the proposed MS Silicon Facility under the New Source Review ("NSR") permitting program and the Title V operating permits program. The Mississippi Department of Environmental Quality ("MDEQ") implements these air permitting programs in Mississippi, see 11 Miss. Admin. Code Pt. 2, and pursuant to approval by EPA, it administers various parts of the Clean Air Act. *See* 40 C.F.R. § 52.02; 40 C.F.R. §§ 52.1270 -1284.

The NSR program is a preconstruction permitting program that is designed to help bring states into attainment with and maintain compliance with air quality standards for certain pollutants. The Prevention of Significant Deterioration ("PSD") component of the program is focused on areas of the country that are in attainment with those standards, such as the site of the

MS Silicon Facility. The PSD program requires new major stationary sources, like the MS Silicon Facility, to undergo preconstruction review. As part of this process, permit applicants submit to the permitting authority all information necessary to make a PSD determination. This includes air modeling information to demonstrate that a proposed facility will not cause or contribute to an exceedance of any National Ambient Air Quality Standards ("NAAQS") or exceed a PSD increment; an analysis of the equipment proposed for the facility showing that the facility will apply the Best Available Control Technology ("BACT") for all pollutants regulated under the Clean Air Act, and an additional impact analysis, which considers the proposed facility's impact on soils, vegetation, visibility, and growth associated with the facility. 42 U.S.C. §§ 7475(a), 7479(3); 40 C.F.R. § 52.21(b), (c), (d), (k), (n) & (o).

In December 2013, MDEQ issued a PSD permit to MS Silicon authorizing it to construct a silicon metal manufacturing facility in Tishomingo County, Mississippi. *See* Pls.' Ex. 1B (ECF 6). Once this state of the art facility is in operation, MS Silicon will be only the second merchant silicon metal producer in the United States. The other is Globe Metallurgical, Inc., a subsidiary of Globe Specialty Metals, which by its own admission has been the only merchant manufacturer of silicon metal in the United States since December 2005 when it acquired the United States silicon metal operations of Elkem Metals. Globe Specialty Metals has enjoyed a monopoly on the merchant production of silicon metal in the United States for almost a decade and, in concert with its attempts to stop the MS Silicon Facility, it has for some time fought aggressively to keep out foreign imports.

Though the MS Silicon facility is designed with best available emission control equipment, it has the potential to emit regulated pollutants in amounts classifying it as a new major source, thereby triggering PSD permitting obligations under the Clean Air Act. To fulfill

4

these obligations, MS Silicon submitted a PSD permit application to the MDEQ. The MDEQ reviewed the permit application, confirmed that the facility would meet all applicable requirements for a PSD permit, and issued a draft permit for public review and comment. The public comment period began on October 24, 2013 and instructed comments to be filed no later than November 22, 2014. During this time, only the EPA and U.S. Department of Agriculture submitted comments. No other comments were received, and on account of the absence of public opposition to the project, MDEQ reasonably exercised its discretion to not conduct a public hearing. *See* Miss. Code Ann. § 49-17-29(4) ("the Permit Board, in its discretion, may hold a public hearing or meeting to obtain comments from the public on its proposed action"); 11 Miss. Admin. Code Pt. 2, Ch. 5. After addressing each of the comments submitted by the federal agencies, the final permit was issued by MDEQ on November 27, 2013 and accepted by MDEQ Permit Board on December 10, 2013.

In February 2014, Globe Specialty Metals sought review of the permitting decision before the MDEQ Permit Board, the "exclusive administrative body to make decisions on permit issuance, reissuance, denial, modification or revocation of air pollution control . . . permits." Miss. Code. Ann. § 49-17-29(3)(a). Globe's request for review was filed well beyond the 30-day limitations period for review of a Permit Board decision. *See* Miss. Code. Ann. § 49-17-29(4)(b). Accordingly, the MDEQ Permit Board denied the request for review. Globe was not deterred by the Permit Board's February 18, 2014 decision and appealed the denial to the Chancery Court of Hinds County and Tishomingo County on March 7, 2014. Globe's complaint was dismissed by the Tishomingo County Chancery Court, which found that the Permit Board's decision was proper and that Globe's alternative claim was untimely because it failed to file an appeal within the 15-day statutory deadline. *See* Exhibit 1.

5

**ARGUMENT**

Plaintiffs cannot satisfy any of the four factors necessary to obtain injunctive relief. Plaintiffs are unlikely to prevail on the merits of their claim because they cannot state a justiciable claim under section 304 of the Clean Air Act. Additionally, Plaintiffs' claim is subject to dismissal because they have failed to satisfy jurisdictional notice requirements and failed to join the MDEQ as a necessary party. Plaintiffs can demonstrate no irreparable injury because MS Silicon has not emitted a regulated pollutant. Nor can Plaintiffs show that that balance of equities weighs in their favor or that an injunction is in the public interest.

**A. Plaintiffs are not likely to Succeed on the Merits.**

It is axiomatic that a party must state a justiciable claim before it can prevail on one. Plaintiffs have failed to do so and thus are not likely to prevail on the merits.

Plaintiffs base their claim on Clean Air Act section 304(a)(3), 42 U.S.C. § 7604(a)(3). This provision allows for a suit "against any person who proposes to construct or constructs any new or modified major emitting facility without a [PSD] permit . . . or who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of any condition of such permit." 42 U.S.C. § 7604(a)(3). Thus, to prevail on a section 304(a)(3) claim, Plaintiffs must show that MS Silicon (1) does not have a PSD permit or (2) that it is currently violating its permit.

Plaintiffs have not and cannot set forth a prima facie claim under Section 304. It is undisputed that MS Silicon has a PSD permit; Plaintiffs attached a copy of it to their complaint. *See* Pls. Ex. 1B (ECF 6). Additionally, Plaintiffs have not alleged in their motion that MS Silicon is violating its permit. Instead, Plaintiffs seek to prove their case by collaterally attacking the validity of MS Silicon's PSD permit. Such an attack is not authorized under section 304 of the

6

Clean Air Act—this has been settled law in the Fifth Circuit for several years. *CleanCOALition v. TXU Power*, 536 F.3d 469 (5th Cir. 2008). In *CleanCOALition*, the Fifth Circuit squarely addresses whether the "without a permit" language in section 304(a)(3) can mean "without a permit that complies with the CAA." *Id*. at 479. The defendant in that case was in possession of an air permit issued by the state permitting authority. The plaintiffs alleged that the permit was not validly issued in accordance with PSD regulations, and thus defendant's construction of the invalidly-permitted facility was a violation of section 304(a)(3). The court concluded that "not only has [defendant] applied for a permit, it has since successfully obtained one[.] . . . Thus, it can hardly be said-as [plaintiffs] must in order for § 7604(a)(3) to apply-that [defendant] is proposing to construct or constructing a facility 'without a permit.'" *Id.* Accordingly, the court held that an allegation of an improperly issued PSD permit could not sustain a claim under section 304.

The basis behind this conclusion is simple: Courts do not countenance collateral attacks on air permits because such suits subvert Congress's careful scheme for judicial review of permitting decisions:

> Congress and the EPA have set forth an elaborate enforcement scheme through which citizens have an opportunity to participate in public hearings and state court proceedings involving the issuance of any construction permit. It would seem odd then that Congress would simultaneously authorize citizens to bypass this process altogether and seek simultaneous review in federal court.

*Id.* at 478. This reasoning is compelling here because Plaintiffs not only failed to participate in the public comment process, but they never attempted to challenge the validity of the permit pursuant to Mississippi's statutory-prescribed permit review and appeal process. *See* Miss. Code. Ann. § 49-17-29 ("the Permit Board created by Section 49-17-28 shall be the exclusive administrative body to make decisions on permit issuance, reissuance, denial, modification or

7

revocation of air pollution control and water pollution control permits"). They did not request review with the MDEQ Permit Board, nor did they seek appeal of the permit decision in the Chancery court. Simply put, the Plaintiffs failed to exhaust the administrative and judicial remedies available to it under Mississippi law; and they cannot seek to vacate MS Silicon's permit here.

Plaintiffs' claim also suffers from jurisdictional defects. The Clean Air Act requires a plaintiff to provide 60 days notice of an alleged violation prior to filing suit in a district court. *See* 42 U.S.C. § 7604(b). The failure to do so requires dismissal for lack of jurisdiction. *See Zen-Noh Grain Corp. v. Consolidated Environmental Management, Inc. – Nucor Steel Louisiana*, No 12-1011, 12-1738, 2013 WL 3776576 at *7-9 (E.D. La. July 17, 2013) (dismissing citizen suit claim where defendant did not give 60 days' notice as required by 42 U.S.C. 7604); *Chaplin v. Exxon Co.*, No. H-84-2524, 1986 WL 13130 at *5 (S.D. Tex. June 10, 1986) ("Defendants contend this Court lacks subject matter jurisdiction . . . [because] plaintiffs have failed (1) to satisfy the notice requirement. . . . This Court agrees and, therefore, recommends dismissal of the action."). Because MS Silicon has a permit, Plaintiffs' allegation that MS Silicon has violated a substantive provision of the Clean Air Act must be characterized as a claim under section 304(a)(1), 42 U.S.C. § 7604(a)(1), which provides a cause of action for a violation of an emission standard or limitation. Because Plaintiffs failed to provide 60 days notice of this claim as required under 42 U.S.C. § 7604(b)(1), this Court lacks jurisdiction.

### B. Plaintiffs Failed to Join MDEQ, a Required Party

Plaintiffs' likelihood of success is also defeated by their failure to join the only party that can afford them the relief they seek—MDEQ. Pursuant to Rule 12(b)(7), a complaint will be dismissed where a plaintiff fails to join an indispensable party pursuant to Rule 19. A necessary

party is one that "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A).

Plaintiffs request the Court to remand MS Silicon's permit so that the MDEQ will allow for an extended public comment period and a public hearing on MS Silicon's permit. Plaintiffs' motion is replete with allegations against the MDEQ: "In issuing the Permit, MDEQ did not afford the public the opportunities to participate in the decision-making process;" "the public was not given 30 days in which to submit comments;" "MDEQ intentionally short-circuited the public participation process." Motion for Temp. Restraining Order ¶¶ 3, 4 (ECF 3). In fact, Plaintiffs claim that the only question in this case is whether MDEQ issued a valid permit on account of an alleged infraction of the public comment period. Mem. in Supp. of Motion for TRO at 1 (ECF 19).

This Court cannot command MS Silicon to reopen the public comment period because MS Silicon has no authority to initiate a public comment period in association with the approval of a PSD permit. *Cf. Bomer-Blanks Lumber Co. v. Oryx Energy Corp.*, 837 F. Supp. 769, 770 (M.D. La. 1993) ("plaintiffs' complaint constitute[s] a collateral attack on an order of the Commissioner. Therefore, the joinder of the Commissioner as a defendant is necessary for a complete resolution of the issues before the Court."). Accordingly, Plaintiffs cannot be awarded their requested relief in the absence of MDEQ.

### C. Plaintiffs Failed to Allege Irreparable Injury

Plaintiffs have not and will not suffer an irreparable injury. This fact is undisputed. Instead, Plaintiffs argue that they need not establish injury where conduct is willful. This argument runs afoul of the Supreme Court's holding in *Monsanto*, wherein the Court held that each of the four injunction factors must be satisfied prior to the granting of extraordinary relief.

9

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 157 (2010) ("An injunction should issue only if the traditional four-factor test is satisfied."). This is true even where a violation of an environmental statute is demonstrated. *Id*. ("The traditional four-factor test applies when a plaintiff seeks a permanent injunction to remedy a [National Environmental Policy Act] violation.").

Even adopting Plaintiffs' argument, there are no facts alleged demonstrating that MS Silicon willfully violated the law. Plaintiffs' citation to *Sierra Club v. Franklin County Power of Illinois, LLC*, 546 F.3d 918 (7th Cir. 2008) does not support their argument. In *Sierra Club*, the court actually did not find willful misconduct. The issue was whether the defendant had a valid permit, and the court held that their persistence in defending the permit was not willful misconduct. *Id*. at 935 ("Sierra Club cites no authority to explain how the Company's persistence constitutes willful misconduct"). Likewise, there is no violation, willful or otherwise, of the Clean Air Act here. MS Silicon has not emitted a regulated pollutant nor has it violated a condition of its permit. Regarding the alleged violation of the public comment period, that obligation falls on MDEQ as the permitting authority, not MS Silicon. Thus, MS Silicon cannot violate 42 U.S.C. § 7475(a).

Plaintiffs can allege no facts to show they will suffer an irreparable injury because no pollutants have been emitted. To prove irreparable injury, a plaintiff must show "that (1) the harm to the plaintiff is imminent; (2) the injury would be irreparable; and (3) the plaintiff has no other adequate legal remedy." *Northern Healthcare Capital, LLC v. Brandywine Health Servs. of Mississippi, Inc.*, No. 1:09–CV–267–SA–JAD, 2009 WL 3647346, *1.

Plaintiffs' alleged injury is neither imminent nor irreparable, because it would stem from the operation of a facility that has not yet been built. District courts find such an "injury"

insufficient to warrant a preliminary injunction. For example, in *Florida Wildlife Federation v. Goldschmidt*, 506 F. Supp. 350, 370 (S.D. Fla. 1981), plaintiffs sought to enjoin construction of a segment of Florida interstate. The "irreparable injury" alleged was "massive secondary growth" and resulting "environmental disaster." The court found that there was no irreparable injury, because "the process of building a highway . . . cannot be accomplished overnight," and plaintiffs were not "entitled to an injunction now against events which will occur, if at all, so far distant into the future that a full trial could be conducted before they came to pass." *Id. See also Sierra Club v. Atlanta Regional Comm'n*, 171 F. Supp. 2d 1349, 1361-62 (N.D. Ga. 2001) (no irreparable harm from excess ozone in the air where projects were "currently under construction . . . [or] scheduled to begin [construction] in the next twelve months"); *Williams Pipe Line Co. v. City of Mounds View, Minn.*, 651 F. Supp. 544, 548 (D. Minn. 1986) (no irreparable harm from danger of exploding pipelines where transportation of petroleum products would not take place for at least eight to ten weeks in the future). Here, construction is anticipated to last 24 months. Thus, any injury Plaintiffs could suffer is far from imminent.

Further, Plaintiffs have an adequate legal remedy. This Court has denied a plaintiff's motion for a preliminary injunction to stop the issuance of environmental permits where there was a state administrative process to contest such permits. *R.O.C.C.O.L. v. U.S. Army Corps of Engineers*, No. Civ.A. 3:95CV021–D–A, 1995 WL 1945536 (N.D. Miss. Mar. 3, 1995). Though the court ultimately found the motion moot because the Corps had already issued the permits, it stated that "Mississippi law provides aggrieved parties with the opportunity to request an evidentiary hearing and present arguments to the Permit Board even after permits have been issued. The court is of the opinion that plaintiff must exhaust administrative remedies before

11

proceeding in this court. Plaintiff has not done so in the present case." *Id.* at *3. Accordingly, Plaintiffs cannot satisfy the second factor.

### D. Plaintiffs cannot Demonstrate that the Balance of Equities Tips in Their Favor

The balance of equities clearly favors MS Silicon in this case. An injunction in this case will cause serious financial injury to MS Silicon. If construction is halted, MS Silicon will incur significant demobilization and remobilization expenses from a number of its contracts who will need to move their equipment and personnel to other projects. These expenses could be in the range of tens of thousands of dollars. Lalley Decl. ¶ 7. A halt in construction will also require MS Silicon to incur storage fees for the equipment it has ordered for the facility. *Id*. The resulting delay from an injunction would impact MS Silicon's future revenue stream. Each month that the facility is delayed is anticipated to result in a revenue loss of approximately $8 million per month. *Id.* ¶ 9.

Because an injunction creates uncertainty, MS Silicon's financing could be placed in jeopardy of construction is restrained. To date, MS Silicon has received $36 million in state and federal financing, as well as from other private and public sources. *Id.* ¶ 10. "Any period of delay will create hesitancy on the part of investors, and may ultimately cause some sources to pull out of the project entirely." *Id*. In the absence of this funding, the Facility cannot be built. *Id.*

As noted above, Plaintiffs have demonstrated no injury, and thus cannot show that the balance of equities tips in their favor. Thus, Plaintiffs have not satisfied the third injunction factor.

### E.  The injunction Plaintiffs Seek Disserves the Public Interest

An injunction also does not serve the public interest.  As indicated above, MS Silicon will bring approximately 150 new full-time jobs and a significant number of temporary jobs to the Burnsville area where the unemployment rate is more than three-times that of the County and State.  Lalley Decl. ¶ 3.  Additionally, construction of the facility is anticipated to create over 500 construction jobs earning $16.3 million in wages.  On account of these benefits, the Governor and the Mississippi Development Authority strongly support this project.  Enjoining the construction of the facility will delay this process, putting these jobs at risk for no good reason.  As noted above, the facility is not currently operational and therefore is not emitting any permits.  Accordingly, no there is no public benefit in enjoining construction.

## CONCLUSION

For the reasons stated above, the Court should deny Plaintiffs' motion for a Temporary Restraining Order and Preliminary Injunction. If the Court determines that a Temporary Restraining Order or Preliminary Injunction proper, MS Silicon requests, pursuant to Rule 65(3)(c), that the Court require a bond in the amount of $250 million.  Lalley Decla.   Given the vexatious and entirely meritless nature of Plaintiffs' complaint in this Court, rather than pursuing appropriate appeals remedies, the Court should also award MS Silicon its attorneys' fees and costs pursuant to Clean Air Act § 304(d), 42 U.S.C. § 7604(d).

Respectfully submitted, this the 6th day of October, 2014.

                                  MISSISSIPPI SILICON LLC

                                  BY:  WATKINS & EAGER PLLC


                                  By: /s/ Keith W. Turner
                                      Keith W. Turner

OF COUNSEL:

Keith W. Turner (MSB No. 99252)
Rebecca Lee Wiggs (MSB No. 7191)
WATKINS & EAGER PLLC
400 East Capitol Street
Jackson, Mississippi  39201
Post Office Box 650
Jackson, Mississippi  39205
Telephone:     (601) 965-1900
Facsimile:       (601) 965-1901
Email:  kturner@watkinseager.com
        rwiggs@watkinseager.com

## CERTIFICATE OF SERVICE

     I, Keith W. Turner, as one of the attorneys for plaintiff Mississippi Silicon LLC named herein, hereby certify that I have this day caused to be filed with the clerk of the court the foregoing pleading using the CM/ECF system, which shall send notification of such filing to all parties of record in this case.

     This the 6th day of October, 2014.


                                    /s/Keith W. Turner
                                    Keith W. Turner