**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

**16 FRONT STREET LLC, AND**
**C. RICHARD COTTON**

                          **Plaintiffs**

**v.**                                               CIVIL ACTION
                                          No. 1:14-CV-183-SA-DAS


**MISSISSIPPI SILICON, LLC**

                          **Defendant**

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR**
**TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**


The question before the court is straightforward – is the document with the words "Prevention of Significant Deterioration" at the top, as issued by MDEQ to defendant MS Silicon (the "Document"), a lawful PSD permit, such as MS Silicon must possess to construct its proposed silicon manufacturing plant in Burnsville, or not. The Clean Air Act requires not merely that a document say "PSD Permit" at the top, but that it be issued following adherence to a procedure mandated by the CAA. Plaintiffs allege in their Complaint, and have demonstrated by competent evidence on the instant motion, that the MDEQ, in collusion with MS Silicon, failed in a number of ways to adhere to the public participation procedures required by the PSD component of the Clean Air Act ("CAA"). Because that is so, the fact that the Document bears the words "Prevention of Significant Deterioration" does not render it a PSD permit in fact. From this follows the conclusion that MS Silicon is constructing a new major source of emissions of regulated pollutants without a PSD permit as mandated by the CAA and therefore should be enjoined pursuant to 42 U.S.C. § 7404(a)(3). Nothing in Defendant's Opposition to

- 1 -

Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction ("Opposition") alters these conclusions in any way.

Rather than seeking to defend the legally defective public participation process that preceded issuance of the Document (which it is plainly unable to do), MS Silicon seeks to divert the Court's attention from the issue before it by bald and false assertions – *e.g.,* that "[i]t is undisputed that MS Silicon has a PSD permit," and that Plaintiffs 16 Front Street LLC ("16 Front Street") and C. Richard Cotton ("Cotton) "request the Court to remand MS Silicon's permit so that the MDEQ will allow for an extended public comment period and a public hearing" (Opp., Doc. 25, pp. 6, 9) – before listing a litany of economic woes that will occur if MS Silicon is forced to stop construction of its proposed new silicon manufacturing facility in Burnsville (the "Plant") (Opp., pp. 12-13).

In this manner, MS Silicon effectively asks the Court to ignore the requirements of the Clean Air Act in order that it may avoid losing money. The avoidance of economic loss, however, is not among the declared legislative purposes of PSD, *see* 42 U.S.C. § 7475, and such contentions are wholly unavailing to Defendant here. Rather, the rank illegality of Defendant's construction of its planned silicon manufacturing plant in Burnsville, considered in light of its demonstrated collusion with MDEQ and other state officials, warrant the injunction Plaintiffs pray for here.

**A.      Plaintiffs Have Demonstrated a Substantial Likelihood of Success on the Merits of the Issue Presented.**

1.      <u>Any breach of the public participation requirements mandated by PSD preclude an ensuing permit from being a "PSD permit."</u>

As clearly stated by Congress, a PSD permit may issue only after the public has been given "adequate opportunity for informed public participation in the decision-making process."

42 U.S.C. § 7470(5). Under the federal regulations incorporated into the Mississippi SIP, this must include: (a) publication of MDEQ's preliminary determination to issue the permit in a local newspaper; (b) a period of at least 30 days – beginning the day after publication – for the public to review, at the local library: (i) the proposed permit, (ii) MDEQ's preliminary determination to issue the permit, and (iii) the application and any other information submitted by the applicant, and to submit written comments, and (c) a public hearing at which the public may appear to submit written and oral comments. *See* 42 U.S.C. § 7475(a)(2) and § 7475(e)(3); 40 C.F.R. § 51.161 and § 51.166(q); Miss. Code § 1-3-67; APC-S-5 (2011) (cited and discussed in Plaintiff's opening Mem. at pp. 2-5).

Congress has mandated that the prescribed opportunities for informed public participation must be strictly observed. *See, e.g., In re: Russell City Energy Center*, PSD Appeal No. 08-01, 2008 WL 3047431, at *12 (E.A.B. July 29, 2008) (discussed *infra*).[1] Indeed, courts have routinely vacated EPA regulations that would have the effect of weakening the public's Congressionally-mandated right to participate in the decision-making process. *See, e.g., Sierra Club v. EPA*, 705 F.3d 458, 468-69 (D.C. Cir. 2013) (vacating "significant monitoring concentration" rule because PSD rigidly requires air quality monitoring data to be available for public review and comment at a public hearing).

---

[1] *U.S. v. Marine Shale Processors*, 81 F.3d 1329 (5th Cir. 1996) does not compel or support a different result. In *Marine Shale*, the Louisiana Department of Environmental Quality ("LDEQ") did not provide public notice or an opportunity for public comment before issuing a "synthetic minor" permit to a facility that, but for emission controls prescribed in the permit, would be a major emitting facility. 81 F.3d at 1352. Marine Shale argued that, due to this procedural defect, the permit was not "federally enforceable," precluding the government from enforcing emission limits in the permit. The Fifth Circuit disagreed, holding that a permit requirement is "established under" an approved state implementation plan, and hence is "federally enforceable," if the state implementation plan is the source of authority the state relied upon to issue the permit. *Id.* at 1356. PSD was not an issue, as the permit was not – and was never intended to be – a PSD permit. Here, MS Silicon's permit is federally enforceable on the same grounds, but it is not a PSD permit.

The Environmental Appeals Board's decision in *Russell City Energy Center* most closely addresses the issue presented here. In that case, the permitting agency published public notice in one local newspaper – the *Oakland Tribune* – but did not publish notice in multiple newspapers or mail notice to interested individuals, as the applicable regulations required.[2] As explained by EPA,

> The failure of the permitting authority to comply fully with the public participation requirements of the PSD regulations implementing this statutory requirement, combined with a reasonable perception that the permitting authority may not in fact have given consideration to the public's comments beforehand, undermines the statutory objective and should be rectified.

*Id.*, 2008 WL 3047431, at *12 (quoting *In re: Rockgen Energy Center*, 8 E.A.D. 536, 557 (E.A.B. 1999)). Any breach of the public participation requirements harms the public and subverts the purposes of PSD:

> Clearly, any violation of [the public participation regulations] that would deny the public its rightful opportunity to comment and therefore have its views considered by the permitting agency could cause a 'harm' or 'prejudice' . . . . This is clear since initial notice of permitting actions – along with soliciting public comments, incorporating comments and [agency] responses thereto in the administrative record, and providing proper notice of final permitting actions – constitute a set of related procedures that together support the statutory directive to foster effective public participation in PSD permitting. . . . [T]he essence of the alleged 'harm' from the procedural violation is not simply its potential impact on the final decision, but rather the deprivation of the public's opportunity to have its views considered by the permitting agency.

*Id.* (internal citations omitted). Thus, even though the public notice defect was minor – and unlike the public notice and other procedural defects established here, was not willfully intended to forestall public participation -- the Appeals Board held that the Russell City Energy Center permit was not a lawful PSD permit and could not authorize construction of the proposed new

---

[2] The public participation procedures applicable under EPA regulations in that case were somewhat different than those applicable under the Mississippi SIP here, as in requiring publication of notice in multiple newspapers, but the principle expounded is equally applicable here.

major source. *Id.* at *21 ("[O]ne cannot dismiss the [permitting agency's] omissions . . . as 'harmless error'. . . . Moreover, given the pivotal importance to Congress of providing adequate initial notice within EPA's public participation regime, we regard it as inappropriate to impose upon [petitioner] the burden of showing actual prejudice.").

        2.      <u>The undisputed facts compel the conclusion that MS Silicon's Document is not a PSD permit.</u>

The evidence Plaintiffs have adduced and filed with their moving papers demonstrates:

- MS Silicon's silicon manufacturing plant will be a new "major emitting facility" that requires a pre-construction PSD permit under title I, Part C of the Clean Air Act;

- MDEQ published public notice of the preliminary decision to issue a permit to MS Silicon on October 24, 2013;

- Under Mississippi law, the public comment period began the next day, on October 25, 2013;

- MDEQ made only four documents – the draft permit, the public notice, MDEQ's preliminary determination to issue the permit and an air quality impact analyses summary prepared by MDEQ and MS Silicon – available for public review at the Burnsville Public Library, and did so only on October 29, 2013;

- MDEQ did not make all the information submitted by MS Silicon available for public review at the Library, including an air dispersion modeling report which shows much broader and more significant air quality impacts than does the limited information MDEQ provided for public review;

- The public comment period ended on November 22, 2013, thus giving the public only 25 days to review and comment on the limited information available at the Library and only 29 days in total to comment on the proposed permit; and

- MDEQ did not hold a public hearing on the proposed permit, and the public had no opportunity to appear and give oral comments on the Permit before it was issued.

It is also undisputed that MS Silicon commenced construction of the facility before Plaintiffs commenced this lawsuit.

MS Silicon does not – and cannot – dispute the foregoing facts or the law. MS Silicon offers no contrary evidence (or even contrary allegations), and offers no contrary interpretation

of the strict public participation requirements under PSD. Plaintiffs stipulate that MS Silicon has the Document issued by MDEQ under the Mississippi SIP, but the evidence and law establish that it is not a PSD permit required under title I, Part C of the Clean Act. *See United States v. Ohio Edison Co.*, 276 F. Supp.2d 829, 883-84 (S.D. Ohio 2003) (where utility obtained a state permit issued under the applicable SIP before making a major modification, instead of a required PSD permit, holding that "[c]ompliance with the SIP does not obviate the need to comply with the PSD provisions").

**B. MS Silicon's Assertion of Collateral Attack and Claimed Affirmative Defenses Are Misplaced.**

Unable to counter Plaintiffs' claim that the Document is not a PSD permit (other than by boldly declaring it "undisputed" that it has one, Opp. at 6), MS Silicon initially seeks to avoid plaintiff's claim for injunctive relief by characterizing Plaintiffs' claim as an impermissible collateral attack on the Document, asserting that MEDQ is a necessary party, and that Plaintiffs wrongfully failed to serve pre-suit notice under 42 U.S.C. § 7604(b). Opp. at pp. 6-9. Defendant is wrong on all counts.

1.    <u>Plaintiffs' claim is not a collateral attack on the Document.</u>

MS Silicon correctly asserts (Opp. at pp. 6-7) that federal courts do not allow collateral attacks on the substance of a PSD permit by way of a citizen suit under 42 U.S.C. § 7604(a). Courts have rejected many such collateral attacks, such as claims that a PSD permit does not contain valid best available control technology ("BACT") requirements, that the applicant's air quality impact modeling was not performed correctly, and that the permit application was incomplete or incorrect. *See, e.g., CleanCOALition v. TXU Power*, 536 F.3d 469 (5th Cir. 2008). On the other hand, it is equally clear that a district court should reject the "collateral attack" defense and exercise jurisdiction under 42 U.S.C. § 7604(a)(3) where a citizen claims that

defendant proposes to construct (or, as here, is constructing) a major source of emissions without a PSD permit, including in situations where the construction is ostensibly authorized by a minor source permit or other agency authorization. *See, e.g., Weiler v. Chatham Forest Prod., Inc.*, 392 F.3d 532, 536 (2d Cir. 2004) (plaintiffs' allegations that proposed factory would be a major emitting facility and that defendant had not obtained the permits required under PSD, "if proven, appear to be sufficient under the language of [CAA § 304(a)(3)] to allow the plaintiffs to succeed in their effort to halt construction of the factory"); *Citizens for Pennsylvania's Future v. Ultra Resources, Inc.*, 898 F. Supp. 2d 741, 745-47 (M.D. Pa. 2012) (same, distinguishing collateral attack situations); *Sierra Club v. Portland General Elec. Co.*, 663 F. Supp. 2d 983, 996-97 (D. Ore. 2009) ("Sierra Club has alleged violations of the PSD permit program, and is entitled to sue under § 7604."); *Ogden Projects, Inc. v. New Morgan Landfill Co.*, 911 F. Supp. 863, 867 (E.D. Pa. 1996) (rejecting collateral attack defense and upholding jurisdiction under CAA § 304(a)(3) where defendant had obtained a solid waste landfill permit from state agency in lieu of CAA Part D permit).

*Weiler* is directly on point. In that case, the state issued a synthetic minor source permit for a new factory because the state determined that conditions in the permit would effectively reduce emissions below the major source threshold. 392 F.3d at 535. Plaintiff filed suit under 42 U.S.C. § 7604(a)(3), claiming that the factory would in fact be a major source and required a permit under title I, Part D. The district court dismissed, holding that § 7604(a)(3) does not allow challenges of the state's determination that no major source permit is necessary. *Id.* at 536. The Second Circuit reversed, holding that opportunities for administrative or state court review of the agency's determination are not adequate substitutes for a § 7604(a)(3) citizen suit. *Id.* at 537. Moreover, the question in the suit was whether defendant sought, and the state issued,

- 7 -

the correct permit. *Id.* at 538. If the state correctly issued a synthetic minor source permit, defendant would be free to construct the factory; if there was error, however, defendant may not yet proceed. *Id.*

Likewise, Plaintiffs' claim here -- that MS Silicon is constructing a new major emitting facility with a "permit" that is not a PSD permit -- falls within the Court's jurisdiction under 42 U.S.C. § 7604(a)(3). MS Silicon may have the Document bearing the words "permit" and "prevention of significant deterioration," but factually and legally, it is not a PSD permit as required by the Clean Air Act. Cf. *Sierra Club v. Portland Gen'l Elec. Co.,* 663 F.Supp.2d 983, 997 (D. Or. 2009) ("The citizen suit provisions in both [the Clean Water Act and the CAA] grant citizens the right to challenge the actions of companies alleged to be in violation of the law, regardless of whether the government believes them to be in violation of the law.")

Defendant predictably cites and relies on *CleanCOALition v. TXU Power,* 536 F.3d 469 (5th Cir. 2008), *see* Opp. at 6-7, for the proposition that "42 U.S.C. 7604(a)(3) does not authorize preconstruction suits against facilities [*sic*] that have . . . obtained a permit," but instead allows suits only where "an entity proposes to construct or constructs a facility without a permit whatsoever." 536 F.3d at 478-79. *CleanCOALition* is inapposite, however. There, plaintiff filed suit under § 7604(a)(1) and § 7604(a)(3) after the state issued public notice of a preliminary determination to issue a PSD permit to defendant, but before the state issued a final permit and before defendant commenced construction. *Id.* at 470. Plaintiff alleged that defendant's permit application was incomplete, and that the court had jurisdiction: (a) under § 7604(a)(1) because filing a complete application is an "emission standard or limitation" under the Clean Air Act; and (b) under § 7604(a)(3) because a final PSD permit based on an incomplete application would not comply with PSD. The state ultimately issued a final permit, but not until after the district court

- 8 -

dismissed both claims. *Id*. at 471, n. 2. The Fifth Circuit affirmed dismissal of both claims.

Insofar as relevant here, the court rejected the argument that the term "without a permit" in § 7604(a)(3) means "without a permit that complies with the CAA." *Id.* at 479. Defendant not only applied for a PSD permit, it obtained a PSD permit (albeit after the complaint was dismissed). Thus, the court continued, "it can hardly be said [that defendant] is proposing to construct or constructing a permit a facility 'without a permit.'" *Id.*

The *CleanCOALition* holding should be read in context and limited to its facts. The operative phrase in § 7604(a)(3) is "without a permit required under Part C of title I." The Fifth Circuit's use of the shorthand "without a permit whatsoever" is understandable, as there was no allegation that defendant there might construct the facility with anything other than a PSD permit. Nonetheless, it is still shorthand. The court was not asked, and did not answer, whether § 7604(a)(3) authorizes citizen suits against defendants who commence construction of a major emitting facility with a permit that is not a PSD permit. The court also did not address whether § 7604(a)(3) authorizes citizen suits after a final permit is issued without strict compliance with the public participation requirements mandated by PSD. *Cf. Zen-Noh Grain Corp. v. Leggett*, 2009 WL 961253, at *5, *7 (E.D. La. Apr. 7, 2009) (dismissing without prejudice on ripeness ground where subject permit had not yet issued, noting that citizen suit could be maintained after the state issued a final permit). To read the *CleanCOALition* "without a permit whatsoever" stricture as broadly as Defendant invites the Court to do would be inconsistent with the language of § 7604(a)(3) and would lead to absurd results – for example, it would bar a citizen suit against a defendant who constructs a new major emitting facility with only a Clean Water Act permit merely because it has some species of "permit." *Compare, Ogden Projects, Inc., supra,* 911 F. Supp. at 867.

The instant case is thus distinguishable from *CleanCOALition*. Plaintiffs allege -- and have demonstrated – that MS Silicon is constructing a new major emitting facility with a "permit" that is not a PSD permit, *i.e.* that MS Silicon is constructing "without a permit required under Part C of title I," bringing the instant claim within the plain meaning of § 7604(a)(3). This case is also distinguishable because MS Silicon commenced construction before Plaintiffs filed suit.

The inapplicability of the collateral attack bar in this case is confirmed by the policy rationales underlying the bar. These are, first, that plaintiffs should not be allowed to challenge the terms or conditions of a PSD permit by way of a citizen suit, because "[s]etting the terms and conditions of CAA permits is a discretionary function that Congress delegated to the EPA and individual state agencies in acknowledgement of their special expertise and competence." *Ogden Projects*, 911 F. Supp. at 867. And, second, that in PSD Congress created "an elaborate enforcement scheme through which citizens have an opportunity to participate in public hearings and state court proceedings involving the issuance of any construction permit." *CleanCOALition*, 536 F.3d at 478 (noting that it would be "odd" if Congress simultaneously allowed citizens to bypass the public participation-based appeal process by filing a citizen suit).

Neither rationale applies here. Plaintiffs challenge whether MS Silicon's Document is a PSD permit at all. Plaintiffs do not challenge the terms or conditions of the Document or any other matter properly within the discretion of MDEQ. Whether a permit issued without strict adherence to the public participation requirements mandated by PSD is or is not a PSD permit is not a question that implicates MDEQ's discretion or expertise. It is a pure question of law for this Court.

Nor are Plaintiffs trying to bypass the state administrative process envisioned by

Congress.  To the contrary: the foreshortened public participation process Plaintiffs complain of subverted the public's ability to resort to MDEQ's administrative and state court appeal procedures.  To paraphrase *CleanCOALition,* it would be "odd" indeed if § 7604(a)(3) did not authorize citizen suit challenges under these circumstances.

As a final point, MS Silicon's reliance on the 60-day pre-suit notice provision of 42 U.S.C. § 7604(b) is entirely misplaced.  That requirement applies only to claims under 42 U.S.C. § 7604(a)(1).  Plaintiffs' Complaint, however, invokes only the Court's jurisdiction under § 7604(a)(3), under which no pre-suit notice is required.  *See, e.g., Weiler,* 392 F.3d at 538 ("plaintiffs proceeding under section 304(a)(3) are excused from [the 60 day notice] requirement" of § 7604(b)(1)); *see also* Complaint, ¶ 3 (citing § 7604(a)(3) only), *and compare* Opp. at p. 8 (*ipse dixit* recharacterization of Plaintiffs' claim as a claim under § 304(a)(1)).

2.   <u>MS Silicon Cannot Avoid an Injunction by Asserting MDEQ is a necessary party.</u>

As a general rule, "federal and state agencies administering federal environmental laws are not necessary parties in citizen suits to enforce the federal environmental laws."  *Ass'n to Protect Hammersley, Eld & Totten Inlets v. Taylor Res., Inc.*, 299 F.3d 1007, 1014 (9th Cir. 2002).  That is so here.   Plaintiffs' request for relief is straightforward: the Court should enjoin MS Silicon from continuing to construct its silicon manufacturing facility until such time as MS Silicon obtains a PSD permit.  Plaintiffs do not ask the Court to "remand the Permit" or take any other action in respect of the Document other than to determine that it is not a PSD permit.  And Plaintiffs do not ask the Court to order MDEQ to do anything.  Try as it might to assert that MDEQ is a necessary party here, MS Silicon has not identified a single fact or legal issue that requires MDEQ's participation.  Indeed, there is none.

- 11 -

## C.   The Express Mandate of Clean Air Act's PSD Provisions Narrows the Court's Traditional Discretion in Deciding Whether to Enjoin the Illegality at Issue Here.

As a general rule, a federal court is not mechanically obligated to enjoin every violation of law.  *TVA v. Hill*, 437 U.S. 153, 193 (1978).  On the other hand, a court is not required "to balance the equities and make findings regarding irreparable harm and adequacy of legal remedies in all cases arising under the environmental statutes."  *U.S. v. Marine Shale Proc.*, 81 F.3d 1329, 1358 (5th Cir. 1996) (comparing *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531 (1987) and *Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982)).  In particular, a court must enforce the law, and enjoin a violation, where Congress has narrowed the courts' flexibility in the context of a particular statutory scheme by formulating legislative policies and establishing their relative priority for the nation.  *Hill*, 437 U.S. at 194; *Marine Shale*, 81 F. 3d at 1358-59.

*Hill* is the well-known case wherein the Supreme Court enjoined completion of a dam because the dam threatened the existence of a small fish, the snail darter.  This was a violation of the Endangered Species Act, which commanded all federal agencies "'to *insure* that actions *authorized, funded* or *carried out* by them do not *jeopardize* the continued existence' of an endangered species."  437 U.S. at 172-73 (quoting 16 U.S.C. § 1536) (Court's emphasis).  One would be hard pressed, the Court concluded, to find a statutory provision whose terms were plainer than these, and thus "admits of no exception."  *Id.*   The traditional 4-part test for preliminary injunctive relief would have been hard to prove: on one hand the dam was a $100 million investment that was almost complete, and on the other, the snail darter represents "a relatively small number of three-inch fish among the countless millions of species extant."  *Id.* at 172.  Balancing the equities, however, was unnecessary.  Congress had spoken in the "plainest of words, making it abundantly clear that the balance has been struck in favor of affording

- 12 -

endangered species the highest of priorities." *Id.* at 194-95. "Once Congress," the Court held, "exercising its delegated powers, has decided the order of priorities in a given area, it is for the Executive to administer the laws and for the courts to enforce them when enforcement is sought." *Id.*

Like the Endangered Species Act, which requires agencies to "insure" that projects will not harm endangered species, the express purpose of PSD is to "assure that any decision to permit increased air pollution in any area to which this section applies is made *only after* adequate procedural opportunities for informed public participation in the decisionmaking process." 42 U.S.C. § 7470(5) (emphasis added). And, construction of a new major emitting facility is prohibited unless the facility has a PSD permit issued in accordance with 42 U.S.C. § 7475(a), including the mandate to give the public an opportunity to appear and make written or oral comments on the proposed permit at a public hearing. The statutory language is clear and reflects Congress' prioritization of national interests. 42 U.S.C. § 7470(5). When called upon to enforce PSD, therefore, a district court may and should enjoin construction of a new major emitting facility if the defendant is without a PSD permit issued in conformity with all the required opportunities for informed participation in the decision-making process. Accordingly, as in *Hill*, the Court here may and should enjoin MS Silicon's construction without resort to traditional equitable balancing.

> **D. The Traditional Test For Injunctive Relief Also Does Not Apply Here Because the Public Participation Opportunities Were Willfully Foreshortened and the Violation Will Continue Until Enjoined**.

Even where Congress has not statutorily circumscribed the courts' equity jurisdiction, the traditional 4-part test is not a prerequisite to injunctive relief where the misconduct at issue is willful, *Marine Shale*, 81 F.3d at 1358-59, or where a statutory violation is demonstrated and

there is a reasonable likelihood of future violations, *Sierra Club v. Franklin County Power of Illinois, LLC*, 546 F. 3d 918, 935 (7th Cir. 2008) (affirming preliminary injunction because district court's determination that PSD permit expired left defendant no option but to obtain this permit before commencing construction). *See also, United States v. Kaun,* 827 F.2d 1144, 1148 (7th Cir.1987); *EPA v. Envtl. Waste Control,* 917 F.2d 327, 332 (7th Cir.1990) ("It is an accepted equitable principle that a court does not have to balance the equities in a case where the defendant's conduct has been willful."). MS Silicon misconstrues this issue. It is not willful misconduct for MS Silicon to defend its Document, just as it was not willful misconduct for defendant to defend an expired permit in *Franklin County Power. See,* 546 F.3d at 935-36. The willful misconduct here is MS Silicon's complicity in the foreshortened public participation process, which MS Silicon does not – and cannot – deny. As the email evidence Plaintiffs have adduced shows, MS Silicon *instigated* these actions by MDEQ to prevent Nucor Corporation from commenting on the permit. MS Silicon *knew* about the foreshortened public participation process but did nothing to cure it. MS Silicon seeks to *profit* from it.

Neither MS Silicon's investment in its proposed plant, nor the fragility of its credit arrangements, nor the potential creation of jobs in the community (Opp. at 12-13) overcomes, much less excuses, MS Silicon's willful instigation of and complicity in the MDEQ's curtailment of public participation and its ensuing misconduct in constructing its silicon manufacturing plant without a lawful PSD permit. MS Silicon's violation of PSD will continue every day that MS Silicon constructs the subject new major source of regulated emissions without a PSD permit.

### E. Even if the Traditional 4-Part Test Were Applicable, Plaintiffs Have Demonstrated That an Injunction Is Appropriate.

It is well-settled that environmental harms are usually irreparable and cannot be compensated by money damages. *Amoco Prod. Co.*, 480 U.S. at 545. "If such injury is

sufficiently likely, therefore, the balance of harms will usually favor the issuance of an injunction to protect the environment." *Id.* Thus, the risk that future air emissions will decrease plaintiff's recreational and aesthetic enjoyment of a natural area is an irreparable harm. *Franklin County Power*, 546 F.3d at 936. Moreover, as explained by the Environmental Appeals Board in *Russell City Energy Center*, "any violation of [the public participation procedures] that would deny the public its rightful opportunity to comment and therefore have its views considered by the permitting agency would cause a 'harm' or 'prejudice'."

In addition, the balance of harms weighs in favor of an injunction where the harm defendant would suffer as a result of the injunction is self-inflicted. *See, e.g., Monsanto Co. v. Scruggs*, 249 F. Supp. 2d 746, 758-59 (N.D. Miss. 2001); *Sierra Club v. U.S. Army Corps of Eng.*, 645 F.3d 978, 996 (8th Cir. 2011); *South Camden Cit. in Action v. New Jersey Dept. of Env't'l. Prot.*, 145 F. Supp. 2d 446, 501 (D.N.J. 2001). In particular, courts give no weight to the economic harms that will result if defendant commences construction of a project before defendant receives the required environmental permits.

For example, in *U.S. Army Corps of Engineers,* plaintiff filed a Clean Water Act citizen suit alleging that defendant commenced construction before obtaining the necessary Clean Water Act permit. To avoid an injunction, defendant argued that an injunction would cost it up to $11 million per month, and this after defendant had already spent $800 million on plant construction. The court was not persuaded. When defendants "'jump the gun' or 'anticipate a pro forma result' in permitting applications, they become largely responsible for their own harm." 645 F.3d at 997 (citation and ellipsis omitted). There, defendant constructed the plant for over a year without a required permit. An injunction was help appropriate, without regard to the costs occasioned by it. *Id.*

- 15 -

Similarly, defendant in *South Camden Citizens* argued that it had spent more than $50 million to construct the subject facility and would lose $200,000 for each week the facility did not operate. 145 F. Supp. 2d at 501. Here again, the court was not persuaded. Defendant explicitly assumed the risk in constructing the facility before defendant obtained the necessary air permits. *Id.*

Here, all factors weigh in favor of enjoining MS Silicon from continuing to construct its silicon manufacturing plant unless and until it obtains a PSD permit. The plant will be a major emitting facility and will have a significant impact on air quality up to 50 miles away from Burnsville. Like plaintiff in *Franklin County Power*, plaintiff Cotton may stop enjoying and visiting his favorite recreation areas if the plant is constructed. Moreover, Plaintiffs and the public have incurred and are incurring an abridgement of their right of informed public participation in the permitting process. All of these are irreparable harms.

Any harm that MS Silicon might suffer if construction is enjoyed is MS Silicon's own fault. MS Silicon knew, before the final permit was issued, that the public participation process was designed to avoid public comment, and has known since February 12, 2014 that the public participation process was being challenged. When MS Silicon chose to commence and continue construction anyway, MS Silicon assumed the risk that the permit would be challenged. MS Silicon's claimed damages here are no different than those in *U.S. Army Corps of Engineers* and *South Camden Citizens*; and, as in those cases, MS Silicon's claimed costs should carry no weight in the injunction analysis.[3]

---

[3] Plaintiffs acknowledge that Defendant's costs stemming from the requested injunction may be indemnified by an appropriate injunction bond in the event it prevails on the merits. *Calagaz v. DeFries,* 303 F.2d 588, 589-90 (5th Cir. 1962); *Marett v. Scott,* No. Civ. A. 299CV244-D-B, 2000 WL 491857 (N.D. Miss. Apr. 10, 2000). Plaintiffs submit, however, that Defendant's request that the Court require Plaintiffs to post a $250 million bond, is patently unreasonable. Among other reasons, Defendant's

**Conclusion**

Based on the evidence, reasoning and authorities cited in Plaintiffs' moving papers and above, the instant Motion for Temporary Restraining Order and Preliminary Injunction should be granted.

RESPECTFULLY SUBMITTED, this, the 14th day of October 2014.

s/ Ronnie Musgrove
RONNIE MUSGROVE (MSB #3698)
*Attorney for Plaintiffs, 16 Front Street LLC and C. Richard Cotton*

J. Michael Bowman (admitted *Pro Hac Vice*)
*Attorney for Plaintiff 16 Front Street LLC*

OF COUNSEL:

**MUSGROVE/SMITH LAW**
1635 Lelia Drive, Suite 104 (39216)
Post Office Box 4670
Jackson, Mississippi 39296
Tel: 601.852.1696 / Fax: 601.852.1714

**BALDWIN HASPEL BURKE & MAYER, LLC**
1100 Poydras Street, Suite 3600
New Orleans, LA 70163
Tel: 504.569.2900 / Fax: 504.569.2099

---

declarant's claim that MS Silicon will suffer revenue losses of $8 million per month if construction of the subject silicon manufacturing plant is delayed is wholly speculative given that the plant, by Defendant's own admission, is not built yet. Opp. at 10.

# CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2014, I electronically filed the foregoing document with the Clerk of the Court using the ECF system and it was served on the following counsel of record:

Rebecca Lee Wiggs
Keith Turner
WATKINS & EAGER PLLC
400 East Capitol Street (39201)
Post Office Box 650
Jackson, Mississippi 39205
Tel: 601.965.1900 / 601.965.1901
*rwiggs@watkinseager.com*
*kturner@watkinseager.com*

Martin T. Booher
Baker & Hostetler, LLP
1900 East 9th Street, Suite 3200
Cleveland, OH 44114
(via First Class, U.S. Mail)

s/ Ronnie Musgrove
_____
RONNIE MUSGROVE (MSB #3698)
*Attorney for Plaintiffs, 16 Front Street LLC and C.*
*Richard Cotton*