IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

16 FRONT STREET LLC, and
C. RICHARD COTTON                                                              PLAINTIFFS

V.                                                            CAUSE NO.: 1:14CV183-SA-DAS

MISSISSIPPI SILICON, LLC                                                         DEFENDANT

ORDER

Plaintiffs filed this citizen suit under the Clean Air Act, 42 U.S.C. §§ 7401 *et seq.* (CAA), on September 29, 2014. Presently before the Court is Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction [3]. Plaintiffs request the Court grant a preliminary injunction to enjoin construction of a Mississippi Silicon facility in Burnsville, Mississippi, until a judgment on the merits is entered, an order setting the instant motion for hearing, and a temporary restraining order to enjoin construction of the Mississippi Silicon facility until such hearing may be conducted. Because Plaintiffs have failed to initially satisfy the strenuous burden under Federal Rule of Civil Procedure 65, the Court denies their request for a temporary restraining order but grants their request for a hearing as to the necessity of a preliminary injunction.

*Factual and Procedural Background*

The Clean Air Act imposes permitting requirements for air pollution control on stationary sources, such as factories and powerplants, as well as moving sources, such as airplanes and automobiles. The Act's "Prevention of Significant Deterioration" (PSD) provisions make it unlawful to construct or modify a "major emitting facility" in "any area to which [the PSD

program] applies" without a permit. 42 U.S.C. §§ 7475(a)(1), 7479(2)(C).[1] Facilities seeking to qualify for a PSD permit must comply with substantive requirements, e.g., emissions limitations that reflect the "best available control technology" (BACT) for "each pollutant subject to regulation under" the Act, as well as procedural requirements, e.g., public comment periods and public hearing requirements. 42 U.S.C. § 7475(a)(4).

Though it enacted the Clean Air Act, Congress has found "that air pollution prevention . . . . and air pollution control at its source is the primary responsibility of States and local governments," 42 U.S.C. § 7401(a)(3), with assistance and guidance from the federal government. Id. at 7401(a)(4); Citizens for Pennsylvania's Future v. Ultra Res., Inc., 898 F. Supp. 2d 741, 743 (M.D. Pa. 2012). That is, state entities, not the Environmental Protection Agency (EPA), issue any and all permits sought pursuant to the CAA guidelines. Consistent with the aims of the CAA, each state must submit to the EPA for review and approval a state implementation plan (SIP) "which provides for implementation, maintenance, and enforcement of . . . standard[s] in each air quality control region . . . within such State." 42 U.S.C. § 7410(a)(1). A state agency must be designated to review applications for permits, and each SIP must use the "specific definitions" established in EPA regulations unless the state's definitions are "more stringent, or at least as stringent" as the federal definitions. 40 C.F.R. 51.165(a)(1).

To comply with federal standards, Mississippi enacted the Mississippi Air and Water Pollution Control Law (AWPCL), MISS. CODE ANN. § 49-17-1 *et seq.*, as well as regulations pursuant to the approved SIP. The AWPCL delegates authority to the Air and Water Pollution Control Commission through the Mississippi Department of Environmental Quality (MDEQ) to develop rules and regulations to implement the provisions of the CAA. MISS. CODE ANN. §§ 49-

---

[1] A "major emitting facility" is a stationary source with the potential to emit two hundred fifty tons per year of "any air pollutant" (or 100 tons per year for certain types of sources). 42 U.S.C. § 7479(1).

17-7, 49-17-13. Thus, MDEQ evaluates applications and issues the appropriate air permits for construction of new emission sources or for modifications to existing emissions sources. See MISS. CODE ANN. § 49-17-14. It is undisputed that the Mississippi SIP has been reviewed and approved by the EPA.

Plaintiffs have filed suit under 42 U.S.C. § 7604(a)(3), which provides that:

> any person may commence a civil action on his own behalf . . . against any person who proposes to construct or constructs any new or modified major emitting facility without a ["Prevention of Significant Deterioration" or "PSD" permit] . . . or who is alleged . . . to be in violation of any condition of such permit.

Plaintiff contends Mississippi Silicon is in the process of constructing a "major emitting facility" and that the permit issued by MDEQ for that construction did not comply with the public participation requirements of the CAA and Mississippi's SIP such that the permit is not a lawful "PSD permit." Accordingly, Plaintiff seeks to enjoin further construction unless and until Mississippi Silicon complies with the public participation requirements and obtains a "valid" PSD permit.

*Standard for Granting a Temporary Injunction*

The granting or denial of a motion for a temporary restraining order rests in the sound discretion of the trial court. Canal Auth. of State of Fla. v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974). Typically, however, in making this determination, the district court considers the four prerequisites for a preliminary injunction. Id. The four prerequisites are: (1) substantial likelihood that plaintiff will prevail on the merits, (2) substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) the threatened injury to plaintiff outweighs the threatened harm defendant would suffer by the injunction, (4) the granting of the injunction will serve the public interest. Blackshear Residents Org. v. Romney, 472 F.2d 1197, 1198 (5th

3

Cir. 1973). "In considering these four prerequisites, the court must remember that a preliminary injunction is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion." Canal Auth. of Fla., 489 F.2d at 573. Moreover, the movant must demonstrate all four factors, and the failure to demonstrate one of the factors is sufficient for the court to deny the injunction. Allied Mktg. Group, Inc. v. CDL Mktg., Inc., 878 F.2d 806, 809 (5th Cir. 1989).

Here, however, Plaintiffs contend that the usual four prong test need not be shown for the requested injunctive relief, but that injunctive relief is available by establishing that a statutory violation mandates injunctive relief, or by demonstrating that the defendant's conduct has been willful. See Sierra Club v. Franklin County Power of Ill., LLC, 546 F.3d 918, 935-937 (7th Cir. 2008). The Seventh Circuit indeed recognized other instances where the four prong test was not followed in deciding injunctive relief. However, in addition to noting that the district court's grant of summary judgment necessarily indicated that the emitting party violated the statute, that court additionally analyzed those four factors in support of the grant of injunctive relief. That Court found that the four injunctive relief factors favored Sierra Club:

> First, Sierra Club will likely suffer irreparable injury if the Company builds under its expired PSD permit rather than a new permit because the former likely includes more relaxed emission standards. See [] Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531, 545, 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987) (environmental injuries are "often permanent or at least of long duration, i.e., irreparable"). Second, legal remedies will not adequately address Sierra Club's injury. The record shows that at least one Sierra Club member will likely suffer a decrease in recreational and aesthetic enjoyment of Rend Lake if the plant is built according to the 2001 permit. An economic award would not sufficiently compensate for this injury. See Amoco, 480 U.S. at 545, 107 S. Ct. 1396 ("Environmental injury, by its nature, can seldom be adequately remedied by money damages . . . ."); Envtl. Waste Control, 917 F.2d at 332.
>
> Third, the balance of harms favors issuing an injunction. An injunction protects Sierra Club from irreparable injury while simply requiring the Company to defer construction until it obtains a permit that complies with the

4

> Clean Air Act. Finally, the record contains no evidence that the injunction harms the public interest. In fact, based on the record before us, we agree with Sierra Club that requiring the Company to obtain a valid PSD permit would likely result in decreased emissions and improved public health, which would further a stated goal of the Clean Air Act. See 42 U.S.C. § 7401(b)(1) ("to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population").

Sierra Club, 546 F.3d at 936-37. Accordingly, the Court will apply the common four factor test for determining whether a temporary injunction should issue in this case.

*Discussion and Analysis*

Congress enacted the PSD requirements in order to give added protection to air quality in certain parts of the country, notwithstanding the attainment and maintenance of those air quality standards, but also to insure that "any decision to permit increased air pollution in any area . . . is made only after careful evaluation of all the consequences of such a decision and after adequate procedural opportunities for informed public participation in the decisionmaking process." 42 U.S.C. § 7470(5). Congress therefore set forth explicit substantive and procedural requirements to be met prior to the construction of any major emitting facility. At issue here, the procedural requirements include, *inter alia*, a public hearing and opportunity for any interested person to appear and submit comments on a proposed permit. See 42 U.S.C. § 7475(a)(2). The regulations attributable to the CAA note that the:

> opportunity for public comment *shall include, as a minimum* - -
>
> (1) Availability for public inspection in at least one location in the area affected of the information submitted by the owner or operator and of the State or local agency's analysis of the effect on air quality;
>
> (2) A 30-day period for submittal of public comment; and
>
> (3) A notice by prominent advertisement in the area affected of the location of the source of information and analysis specified . . . .

5

40 C.F.R. 51.161(b)(1-3) (emphasis added); see also APC-S-2 (IV)(C)(1-3).

Plaintiffs allege that the MDEQ preliminarily determined to issue the Mississippi Silicon permit on October 21, 2013, and that notice was published in the *Northeast Mississippi Daily Journal* on October 24.  Pursuant to Mississippi law, the day of publication of the required public notice does not count toward the thirty-day public comment period, MISS. CODE ANN § 1-3-67; therefore, the Notice, on its face, allows only twenty-nine days to comment on the proposed permit.  Plaintiffs state that the Burnsville Library did not receive the applicable material for public review until October 29, 2013, thereby limiting the public to twenty-four days to review and comment.  Moreover, those reports available were not full air quality impact modeling reports, but summaries prepared by MDEQ and Mississippi Silicon, which improperly reflect the level of emissions by about 50%.  Plaintiffs further allege that the supplemental air quality impact modeling report submitted to MDEQ by Mississippi Silicon on November 22, 2013, was not made available for public review.  Plaintiffs additionally state that MDEQ issued the permit without holding a public hearing.  Plaintiffs contend that Mississippi Silicon and/or MDEQ intentionally abbreviated the opportunity for public review to prevent objections from Nucor Corporation, a competitor.  According to Plaintiffs, because the permit was not issued in accordance with the public participation requirements of the CAA and Mississippi SIP, the permit issued is not a lawful "PSD permit."

Defendant argues that a number of procedural defects in Plaintiffs' case renders Plaintiffs' claims unlikely to succeed.  Defendant questions the standing of 16 Front Street LLC, claims that the required sixty days' notice of citizen suit was not followed, submits that Plaintiffs failed to join a necessary party, and argues that the Court lacks subject matter jurisdiction over this suit because it is an impermissible collateral attack on the validity of the PSD permit.

With regard to subject matter jurisdiction, Defendant contends that the Fifth Circuit's legal conclusions in CleanCOALition v. TXU Power, 536 F.3d 469 (5th Cir. 2008), are dispositive in this case. However, because there are significant factual distinctions between the instant case and CleanCOALition, the Court disagrees with the assumption that CleanCOALition necessarily requires dismissal of this citizen suit.

CleanCOALition instituted a citizen suit against private entities planning to construct a power generating facility. CleanCOALition v. TXU Power, 2007 U.S. Dist. Lexis 98658, at *1-3 (W.D. Tex. May 21, 2007). At the time suit was commenced, construction was preliminarily approved under a draft PSD permit and was being reviewed by the Texas Commission on Environmental Quality (TCEQ). Defendants filed a motion to dismiss challenging the subject matter jurisdiction in the district court. The district court noted that CleanCOALition filed the citizen suit pursuant to 42 U.S.C. §§ 7604(a)(1) and (3).[2] The district court noted that Section 7604(a)(3) allowed a citizen suit against any person who proposes to construct or constructs any new or modified major emitting facility without a permit required under Part C. Thus, based on the plain language of the statute, the Court found that "Congress intended the violation in this provision to be proposing to construct or constructing a facility without a permit **at all** (or violating an existing permit)." Id. at *25. Moreover, the court held that "Congress did intend this provision to allow a federal court in a citizen suit to force a party to get a permit if it is going to build a major emitting air facility (or to enforce the terms of an existing permit)." Id.

On appeal, the Fifth Circuit affirmed. CleanCOALition, 536 F.3d at 470. As to subject matter jurisdiction over a citizen suit, the Court noted:

> The district court held that § 7604(a)(3) does not authorize preconstruction citizen suits against facilities that have either obtained a permit or are in the

---

[2] Because the suit at issue here was only filed under Section 7604(a)(3), the Court will only delve into that reasoning.

7

process of doing so. Instead, the district court interpreted that section as authorizing citizen suits when an entity proposes to construct or constructs a facility without a permit whatsoever. We agree with the district court's interpretation.

While there is no dispute that a permit has been issued in the case at bar, the CleanCOALition case may be distinguishable such that a citizen suit is appropriate in this situation. Here, Plaintiffs are challenging the facial validity of a PSD permit issued, whereas the defendant in the CleanCOALition case had not yet secured such a permit. Therefore, other avenues of administrative review were available to the CleanCOALition plaintiff. Perhaps most pertinently, however, is that the substantive emissions standards of the unissued PSD permit were challenged there, as opposed to the knowing violation of the procedural requirements here. Those emissions standards were not yet violated at the time the lawsuit was filed. Here, however, the procedural mandates were violated when public comment and participation were extinguished prematurely by MDEQ and Mississippi Silicon. Accordingly, the underlying validity of the pre-permit procedure is at issue in this case, as opposed to an unripe substantive issue, which causes the Court some concern when attempting to rely on CleanCOALition.

Plaintiffs claim that despite the Fifth Circuit's instruction regarding citizen suits, the Court has subject matter jurisdiction over its public participation claim pursuant to two cases: Citizens for Pennsylvania's Future, 898 F. Supp. 2d at 746, and Weiler v. Chatham Forest Products, Inc., 392 F.3d 532 (2nd Cir. 2004). However, a review of those cases shows that jurisdiction was found only where the appropriate permits were not granted prior to construction. See Citizens for Pennsylvania's Future, 898 F. Supp. 2d at 746 (plaintiff's undisputed claim that private defendant failed to obtain a Class D permit before constructing its compressor stations warranted federal district court jurisdiction under Section 7604(a)(3)); Weiler, 392 F.3d at 536

8

(citizens suit under the CAA proper where allegations showed defendant's failure to obtain the permit required for a major emitting facility prior to construction).

The Court notes that at least one district court indicated that a citizen suit may be the proper forum to bring a procedural attack on a PSD permit.  See Zen-Noh Grain Corp. v. Harrold Leggett, et al., 2009 U.S. Dist. Lexis 35238 (E.D. La. Apr. 7, 2009).  The plaintiff citizen's group contended that the Louisiana Department of Environmental Quality (LDEQ) would violate the procedural requirements of the CAA and Louisiana SIP if a PSD permit were issued to the defendant Nucor without allowing the public more time to comment on the proposed permits. Id. at *9.  The Court went on to say that as for the facial procedural defects, it was "not unmindful of this concern" but that "a federal court must always be cognizant of the limits on its authority to adjudicate disputes." Id. at *2-3.  However, because LDEQ was still in the process of reviewing the permitting process, the district court ultimately dismissed the action after determining that the matter was not yet ripe for adjudication. Id. at *15-16.

While the posture of that case is different from this case, i.e., LDEQ was a named defendant, whereas MDEQ is noticeably absent here, the Court faces the same concerns regarding the reach of a CAA citizen suit and a private citizen's ability to enforce the procedural requirements of the CAA present here.  The Court additionally finds this case does not easily fit within the confines of the CleanCOALition line of cases in that while a PSD permit was issued, that permit does not facially comply with the mandates of the CAA or Mississippi SIP.  Because of the uncertainty of subject matter jurisdiction in this case, the Court cannot say that Plaintiffs have met their burden of persuading the Court that there is a substantial likelihood of success on the merits.

The Court stops short of holding today that it lacks subject matter jurisdiction over the procedural defects portion of this citizen suit and will bring on for hearing Plaintiffs' request for a preliminary injunction. However, because of the lack of clear legal direction as to the scope of the citizen suit provisions of the CAA, the Court finds Plaintiffs cannot meet their burden at this stage as required to issue a temporary restraining order, and that request is hereby denied.

*Conclusion*

The Court finds that Plaintiffs have failed to meet their burden of persuasion due to the uncertain nature of subject matter jurisdiction, and Plaintiffs' request for a temporary restraining order is DENIED. A hearing on the request for preliminary injunction will be held forthwith and scheduled by separate notice. Accordingly, Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injuncton [3] is DENIED IN PART and DEFERRED IN PART.

Additionally, the parties are ordered to provide additional briefing as to whether this Court has subject matter jurisdiction over Plaintiffs' public participation claim. The parties are granted fourteen (14) days to provide such briefing.

SO ORDERED, this the 7th day of November, 2014.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE