UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

| | |
|---|---|
| 16 FRONT STREET LLC and<br>C. RICHARD COTTON,<br><br>      Plaintiffs,<br><br>VERSUS<br><br>MISSISSIPPI SILICON, LLC and<br>GARY C. RIKARD, EXECUTIVE DIRECTOR,<br>MISSISSIPPI DEPARTMENT OF<br>ENVIRONMENTAL QUALITY, IN HIS<br>OFFICIAL CAPACITY and AS EXECUTIVE<br>DIRECTOR OF THE MISSISSIPPI<br>ENVIRONMENTAL QUALITY PERMIT BOARD,<br><br>      Defendants. | CIVIL ACTION<br>NO. 1:14-CV-183-DMB-DAS |

**AMENDED COMPLAINT**

This is a Citizen Suit under the Clean Air Act, 42 U.S.C. §7401 *et seq.* *See* 42 U.S. Code § 7604(a). Plaintiffs 16 Front Street LLC ("16 Front Street") and C. Richard Cotton (collectively, "Plaintiffs"), as and for their complaint for injunctive relief and civil penalties against defendants Mississippi Silicon, LLC ("MS Silicon") and Gary C. Rikard, Executive Director, Mississippi Department of Environmental Quality ("MDEQ"), in his official capacity and as Executive Director of the Mississippi Environmental Quality Permit Board ("Permit Board"), state as follows:

# I.
# Parties

1. 16 Front Street is a Delaware limited liability company. 16 Front Street owns real property and improvements thereon in Burnsville, Tishomingo County, Mississippi.

2. C. Richard Cotton ("Cotton") is a resident of Saltillo, Lee County, Mississippi. Cotton is a freelance writer and photographer whose work takes him to Tishomingo County and nearby areas on a regular basis. Cotton also regularly visits Pickwick Landing, Pickwick Lake, and Bay Springs Lake for recreation and to enjoy the aesthetic values of these parks, including the clear, clean air, the absence of dust and odors, the clear water and healthy vegetation. *See* Affidavit of C. Richard Cotton, attached as Exhibit A hereto.

3. 16 Front Street and Cotton have standing to bring this lawsuit under 42 U.S.C. § 7604(a). *See, e.g., Sierra Club v. Franklin County Power of Illinois, LLC*, 546 F.3d 918 (7th Cir. 2008) (holding that plaintiff had associational standing to challenge construction without a PSD permit where individual member visited lake every other year to enjoy its natural beauty and clean environment, and alleged that she would stop visiting the lake if emissions from the proposed plant at issue diminished her aesthetic enjoyment of the lake).

4. On information and belief, MS Silicon is an Ohio limited liability company with a principal place of business in Burnsville, Tishomingo County, Mississippi.

5. Gary C. Rikard is sued herein in his official capacities as the Executive Director of MDEQ and as Executive Director of the Permit Board. MDEQ is the Mississippi state agency responsible for protecting the state's air, land, and water. MDEQ is authorized by federal law to issue permits to new major sources of air pollutants in Mississippi pursuant to regulations APC-S-2 (2005) and APC-S-5 (2011). *See* 40 C.F.R. Part 52, Subpart Z (2013).

6. The Permit Board is required to take action on permits administered through MDEQ. The Permit Board issues, reissues, modifies, denies, transfers, and revokes Mississippi permits and certifications administered under the Clean Air Act. Miss. Code Ann. §§ 49-17-28 and 49-17-29 (Rev. 2003).

## II.
## Jurisdiction and Venue

7. In this Citizens Suit, Plaintiffs seek to enjoin MS Silicon from continuing to construct a new major emitting facility without a permit required under the prevention of significant deterioration provisions of the Clean Air Act, 42 U.S.C. § 7470, *et seq.* ("PSD") and federally enforceable provisions of the Mississippi state implementation plan (the "SIP"), and seek to enjoin, on a continuing basis, MDEQ and the Permit Board from violating the Mississippi SIP, including, *inter alia*, by requiring conformity with the public notice and public participation requirements of the SIP and the Clean Air Act in respect of any putative PSD permit issued to MS Silicon. *See* 42 U.S.C. § 7604(a) & (d); *see also Sierra Club v. Franklin County Power of Illinois, LLC*; 546 F.3d 918, 934-37 (7th Cir. 2008). Based on MDEQ's and the Permit Board's violation of Clean Air Act pre-construction permitting requirements mandated under 42 U.S.C. § 7475(a) and the Mississippi SIP, Plaintiffs also ask the Court to determine that permit no. 2640-00060, issued by MDEQ to MS Silicon on or about November 27, 2013 (the "Permit"), is not a PSD permit, and to award other appropriate relief.

8. The Court has jurisdiction under 42 U.S.C. § 7604(a)(1) over Plaintiffs' claim that MDEQ and the Permit Board acted in violation of an emission standard or limitation under the Clean Air Act and Mississippi's SIP by failing to comply with mandatory public notice and public participation requirements prior to issuing the Permit to MS Silicon.

9. The Clean Air Act's citizen suit provision provides that "any person may commence a civil action on his own behalf" against any person, including any "governmental instrumentality or agency . . . who is alleged to have violated . . . or to be in violation of (A) an emission standard or limitation under this chapter [the Clean Air Act]." 42 U.S.C. § 7604(a)(1). An "[e]mission standard or limitation" is defined to include "any condition or requirement under an applicable implementation plan relating to . . . air quality maintenance plans," 42 U.S.C. § 7604(f)(3), and "any other standard, limitation, or schedule established under . . . any applicable State implementation plan approved by the Administrator, any permit term or condition, and any requirement to obtain a permit as a condition of operations." *Id*. at § 7604(f)(4). Air quality maintenance plans include, among other things, state approved implementation plans with "regulations to control and prohibit air pollution throughout the state . . . consistent with the Federal Air Pollution Control Act," which also authorize the applicable state authority to "require persons constructing or establishing new air contaminant sources, including indirect sources, to apply for a permit therefor." *Environmental Study & Protection v. Pac*, 464 F. Supp. 143, 146 (D. Conn. 1978).

10. Accordingly, this Court has jurisdiction to hear Plaintiffs' claims that MDEQ and the Permit Board failed to act in accordance with 42 U.S.C. § 7475(a) and Mississippi's SIP-approved PSD permitting program (an "air quality maintenance plan"), have acted in violation of an emission standard or limitation under the Clean Air Act and Mississippi's SIP, and had no authority to characterize the Permit as "PSD" permit. See *BCCA Appeal Group v. U.S. E.P.A.*, 355 F.3d 817, 839 n. 25 (5th Cir. 2003) (holding that citizens are empowered under § 7604 to request that courts "enforce SIP provisions generally, against the states that failed to comply with

those commitments.")

11. In accordance with 42 U.S.C. § 7604(b)(1), by letter dated November 14, 2014, Plaintiffs provided the requisite 60 days notice of the violation to the EPA Administrator, to the State of Mississippi, and to any alleged violator of the subject standard or limitation, with respect to their claims under § 7604(a)(1). (A true and correct copy of the notice letter is attached as Exhibit B hereto.)

12. The Court has jurisdiction, under 42 U.S.C. § 7604(a)(3), over Plaintiffs' claim that MS Silicon is constructing a new major emitting facility without a permit required under PSD. *See Citizens for Pennsylvania's Future v. Ultra Resources, Inc.*, 898 F. Supp. 2d 741, 746 (M.D. Pa. 2012) (citing *Weiler v. Chatham Forest Prod., Inc.*, 393 F.3d 532 (2d Cir. 2004)) (holding district court has jurisdiction under § 7604(a)(3) where construction is purportedly authorized by a permit that is not a PSD permit).

13. 42 U.S.C. § 7604(b)(1) does not require service of any notice before filing a claim under 42 U.S.C. § 7604(a)(3).

14. The subject air pollution source is a planned silicon metal manufacturing plant that MS Silicon is presently constructing in Burnsville, Tishomingo County, Mississippi (the "Plant"). Venue is proper in the Northern District of Mississippi pursuant to 28 U.S.C. § 1391(b)(2).

15. If built as planned, emissions of air pollutants from the Plant will adversely affect air quality in Burnsville and surrounding areas, including but not limited to Pickwick Landing Dam, Pickwick Lake and Bay Springs Lake.

### III.
### Background

16. The Clean Air Act ("CAA") prohibits construction of a new major source of air pollutants unless a permit has been issued "in accordance with this part [part C, chapter 1 of the CAA - *i.e.,* PSD]." 42 U.S.C. § 7475(a)(1).

17. At all relevant times, the Mississippi Department of Environmental Quality, an executive agency of the State of Mississippi ("MDEQ"), was authorized by federal law to issue permits to new major sources of air pollutants in Mississippi pursuant to regulations APC-S-2 (2005) and APC-S-5 (2011). *See* 40 C.F.R. Part 52, Subpart Z (2013).

18. APC-S-5 incorporates by reference the provisions of 40 C.F.R. § 51.166(q) and 40 C.F.R. § 52.21, as amended Nov. 4, 2011, except (as relevant here) § 52.21(q), both with minor wording changes to reflect the fact that MDEQ, and not the U.S. Environmental Protection Agency ("EPA"), is the permitting authority and charged, *inter alia,* with responsibility for strict observance of the public participation procedures of the CAA.

19. Under PSD, a new "major emitting facility" or "major source of air pollutants" is any new stationary source that has the potential to emit more than 250 tons per year of any regulated new source review ("NSR") pollutant, including sulfur dioxide ("SO2"), nitrogen oxides ("NOx"), particulate matter ("PM"), volatile organic compounds ("VOC") and carbon monoxide ("CO"). 42 U.S.C . § 7479; 40 C.F.R. § 52.21(b)(1).

20. Each proposed emission unit at a new major emitting facility must be expressly authorized in a permit issued in accordance with PSD, including emission limitations representing continuous emission reductions based on the best available control technology ("BACT") applicable to that emissions unit. 42 U.S.C. §§ 7475(a)(4), 7479(3) and 7601(k); 40

C.F.R. §§ 52.21(b) and (j).

21. One of Congress' declared purposes in enacting PSD was "to assure that any decision to permit increased air pollution in any area to which this section [PSD] applies is made only after careful evaluation of all the consequences of such a decision and *after adequate procedural opportunities for informed public participation in the decisionmaking process*." 42 U.S.C. § 7470(5) (emphasis added).

22. Under the Mississippi SIP, a permit has not been issued in accordance with PSD -- and thus is not a PSD permit -- unless the permit applicant (in this case MS Silicon) and MDEQ (the permitting authority) meet all applicable procedural requirements, including without limitation by taking the following steps:

(a) The applicant demonstrates that emissions from the proposed facility will not cause or contribute to an exceedance of any national ambient air quality standard ("NAAQS") or maximum allowable increase in the area ("PSD increment"). 42 U.S.C. § 7475(a)(3); 40 C.F.R. § 52.21(k); APC-S-5.

(b) The proposed permit and all materials submitted by the applicant -- including specifications and drawings, the typical operating schedule, a detailed construction schedule, emission estimates, detailed descriptions of proposed BACT, and air quality impact analyses of the air quality impacts of the source -- are made available for public review, in the area in which the source will be located, for not less than 30 days before the permit is issued. 40 C.F.R. §§ 51.160-161 and 166(q); 40 C.F.R. § 52.21(n); APC-S-2; APC-S-5.

(c) MDEQ holds a public hearing before issuing the final permit, with an opportunity at that mandatory hearing for interested persons to make written or oral comments on the air

quality impacts of and control technology requirements for the new major source. 42 §§ 7475(a)(2) and 7475(e)(2); 40 C.F.R. § 51.166(q); 40 C.F.R. § 52.21(j)-(k); APC-S-2; APC-S-5.

(d) MDEQ sends a copy of the notice of public comment to the applicant, the EPA Administrator and any State, Federal Land Manager, or Indian Governing body whose lands may be affected by emissions from the source or modification. 40 C.F.R. § 51.166(q); APC-S-5.

23. Under the Mississippi SIP, a permit for a new major source of air pollutants must state that the source will meet all the requirements under PSD, including the pre-permit public participation requirements. If the permit does not expressly or impliedly state that the public participation requirements have been met, actual construction of the source may not lawfully commence. 40 C.F.R. § 52.21(a)(2)(iii).

24. Under the Mississippi SIP, construction of a new major source of air pollutants that is not in accordance with the permit application or the terms of the permit is subject to appropriate enforcement action. 40 C.F.R. § 52.21(r)(1).

## IV.
## Factual Allegations

25. Tishomingo County is an "attainment area" for all regulated NSR pollutants and, therefore, is subject to the pre-construction permit requirements under PSD.

26. In August 2013, MS Silicon submitted a permit application to MDEQ, seeking issuance of a permit to construct the Plant.

27. On about November 27, 2013, MDEQ issued the Permit to MS Silicon, purporting to authorize MS Silicon to construct a new silicon metal manufacturing facility.

28. The Permit authorizes the Plant to emit at least 2,170 tons per year of SO2, 1,906 tons per year of NOx, and 1,444 tons per year of CO.

29. The Plant is a new major emitting facility.

30. On or about December 10, 2013, the Permit Board voted to note and record in its minutes the report of the Permit.

31. Construction of the Plant commenced in or around January 2014.

Public Participation Deficiencies

32. MS Silicon submitted air quality impact modeling to MDEQ in October 2013.

33. On about October 21, 2013, MDEQ made a preliminary determination to issue the Permit to MS Silicon.

34. Notice of the preliminary determination to issue the Permit was published in the Northeast Mississippi Daily Journal on October 24, 2013 (the "Notice").

35. The Notice provides that public comments must be received no later November 22, 2013.

36. Under Mississippi law, the day of publication of the required public notice of the proposed permit does not count toward the minimum 30-day public comment period. Miss. Code § 1-3-67.

37. Contrary to PSD and the SIP, the Notice, on its face, allows the public only 29 days to comment on the proposed permit.

38. MDEQ sent copies of the Notice, MDEQ's PSD air quality analysis project summary, MDEQ's pre-construction review and preliminary determination to issue the Permit, and a draft of the Permit, to the Burnsville Public Library in Burnsville, Mississippi ("Library"), with a letter ("Cover Letter") requesting that the Library make the information available for public review until November 22, 2013. In the Cover Letter, MDEQ instructed the Library that

the information could be discarded after November 22, 2013.

39. Although the Cover Letter is dated October 23, 2014, the Cover Letter and its enclosures were not delivered to the Library until October 29, 2013 and were not available for review by members of the public until at least that time.

40. Accordingly, contrary to PSD, the public had at most 24 days in which to review the aforementioned materials.

41. Further, and likewise contrary to PSD, the Library never received, and the public therefore never had the required opportunity to review and comment on, MS Silicon's permit application, MS Silicon's October air quality impact modeling, specifications and drawings, or any other information MS Silicon submitted to MDEQ in support of its permit application.

42. According to the Affidavit of Marc Wyatt, manager of the metals and metal manufacturing branch of the Environmental Permits Division, Office of Pollution Control at the MDEQ in 2013, "[o]nce the MDEQ staff *completes a draft permit, it is sent to be posted on the MDEQ's website. . . .*" *See* Affidavit of Marc Wyatt, dated November 19, 2014 (Exhibit 1 to MS Silicon's Supplemental Memorandum Regarding Subject Matter Jurisdiction, filed November 21, 2014). MDEQ's admitted procedure of publishing only the draft permit -- and even then only on its website rather than making it physically "available in at least one location in [the] region" as 40 C.F.R. § 51.166(q)(2) requires -- constitutes multiple past violations of the Clean Air Act and the Mississippi SIP.

43. And while no publication on a website, no matter how complete, could satisfy the dictates of 40 C.F.R. § 51.166(q)(2), MDEQ admittedly did not even make all MS Silicon permit application materials available on the subject website, further depriving the public of an

opportunity to review and comment meaningfully on the application and exacerbating its violations of the public notice and participation requirements of the Clean Air Act and the Mississippi SIP.

44. On about November 22, 2013, MS Silicon submitted a supplemental air quality impact modeling report to MDEQ. This modeling report was likewise never delivered to the Library, such that the public never had the required 30-day opportunity to review and comment on the same.

45. Contrary to PSD, MDEQ did not provide the public an opportunity to appear at a public hearing to make oral comments on the air quality impacts of and control technology requirements for the Plant.

46. Rather, MDEQ issued the Permit without holding a public hearing.

47. The Permit states that it was issued under MDEQ's authority under 40 C.F.R. § 52.20(a) and 52.21, but does not state that it was issued in accordance with the applicable public participation requirements in 40 C.F.R. §§ 51.160-161 and 166(q).

48. In fact, the Permit was not issued in accordance with the public participation requirements in 42 U.S.C. §§ 7475(a) and 7475(e) and the rules in 40 C.F.R. § 51.160-161 and § 51.166(q); therefore, the Permit is not a "PSD permit."

49. According to an admission by counsel for MDEQ, MDEQ and the Permit Board have prospectively changed their procedures for public notice and comment in respect of all PSD permit applications to address the procedural deficiencies associated with the issuance of the MS Silicon Permit.

Willful Misconduct

50. MS Silicon and/or MDEQ intentionally abbreviated or omitted the legally required opportunities for public review and comment to prevent objections from putative intervenor Nucor Corporation, which was (and still is) objecting to a PSD permit issued to Big River Steel LLC in Arkansas, an entity which, on information and belief, is an affiliate of MS Silicon -- John D. Correnti, a former Nucor executive, being Chairman of both Big River Steel LLC and MS Silicon. The public-at-large, including Plaintiffs, has born the adverse effect of the steps taken to prevent objections from Nucor Corporation.

51. Contrary to the SIP, MDEQ did not make copies of MS Silicon's air quality impact modeling reports available for public inspection at the Library. Instead, MDEQ provided air quality impact summaries that had been prepared by MDEQ and MS Silicon. These summaries purport to identify the areas in which permitted emissions from the Plant will cause significant impacts. These summaries also purport to demonstrate that permitted emissions from the Plant will not cause or contribute to violations of any NAAQS. In fact, however, these summaries do not reflect the results of MS Silicon's air quality impact modeling of permitted emissions from the Plant, as PSD requires. Instead, these summaries improperly reflect modeling of lesser emissions amounting only to about 50% of the permitted emissions.

52. The public could not have discerned, using only the information made available at the Library, that the subject air quality impact analyses are not based on permitted emissions. This fact could only be discerned by reviewing the full air quality impact modeling reports submitted by MS Silicon to MDEQ, which, as noted, were *not* made available at the Library.

53. Contrary to the incomplete and misleading air quality impact information MS

Silicon and/or MDEQ selectively disclosed to the public, permitted emissions from the Plant will, in fact, cause violations of several NAAQS and will significantly impact large areas beyond Tishomingo County, including in the states of Alabama and Tennessee.

54. Before the instant case was filed, EPA was not satisfied with MS Silicon's attempts to demonstrate that the Plant will not cause NAAQS violations. On information and belief, the EPA remains dissatisfied with those efforts and with the Permit as issued.

<u>Construction of Stacks Not in Accordance with Air Quality Modeling</u>

55. The largest sources of emissions at the Plant will be four submerged arc furnaces ("SAFs") for the smelting of silicon metal. Each SAF individually is a major source of regulated NSR pollutants.

56. The air quality impact summaries made available for public review at the Burnsville Library indicate that the proposed Plant would emit air pollutants from the SAFs through stacks that are 91.44 meters (300 feet) tall and 1.93 meters (6.33 feet) in diameter, and with an exit temperature of $449.82^{\circ}K$ ($350^{\circ}F$).

57. On information and belief, the SAF stacks that MS Silicon plans to construct will be 300 feet tall, but will have a diameter of 15 feet and an exit temperature of $140^{\circ}F$.

58. Larger stack diameters and lower exit temperatures decrease the velocity and buoyancy of emission plumes; these decreases have the effect of increasing ground level impacts. Therefore, with the stacks MS Silicon intends to construct, actual air quality impacts from the Plant will be materially worse than the air quality impacts described in the materials MDEQ made available for public review and comment, rendering the materials misleading in this further respect.

Unpermitted Emission Sources

59. Cooling water and silicon metal product loading systems are necessary components of a silicon metal manufacturing facility.

60. On information and belief, the Plant will utilize cooling water, with "recooling" systems, to cool the submerged arc furnaces.

61. On information and belief, the Plant will include cooling towers to provide cooling water.

62. On information and belief, the Plant will include systems to load crushed silicon metal and silica fume into bags, trucks, railcars and/or barges.

63. A cooling tower is a significant source of $PM_{10}$ and $PM_{2.5}$ emissions if not properly controlled.

64. Silicon metal product loading is a significant source of $PM_{10}$ and $PM_{2.5}$ emissions if not properly controlled.

65. BACT for cooling towers typically includes the use of internal baffles and total dissolved solids ("TDS") limitations on recycled cooling water.

66. BACT for silicon metal product loading systems typically includes some form of enclosure and/or aspiration to a control device.

67. MS Silicon's permit application does not provide any information regarding emissions or control technologies for cooling towers and silicon metal product loading.

68. MS Silicon's air quality impact analyses do not account for emissions from cooling towers or silicon metal product loading.

69. The Permit does not include emissions limitations or control requirements for

cooling towers or silicon metal product loading.

70. The Permit does not authorize MS Silicon to construct cooling towers or silicon metal product loading operations.

Public Interest

71. Plaintiffs will be irreparably harmed if MS Silicon continues to construct the Plant without obtaining a PSD permit pursuant to 42 U.S.C. § 7475 and the SIP. Plaintiff Cotton and the public at large will have lost statutorily prescribed rights of informed participation in the MDEQ's decision to permit construction of the Plant and thereby permit increased air pollution in the areas in which Plaintiffs reside, work, recreate or own property. More effective control technologies that would be technically and economically feasible if included in the preliminary design of the Plant may become unfeasible as a result of the design and layout of the Plant if constructed as proposed and allowed by the Permit. Plaintiffs and the public at large will be subjected to unhealthy, harmful and damaging air pollution if the Plant is constructed as proposed and operated as allowed by the Permit.

72. MS Silicon has no legally cognizable interest in continuing to construct the Plant without a PSD permit.

73. The public interest will be served by enjoining MS Silicon from continuing to construct the Plant until such time as MS Silicon obtains a PSD permit that has been issued in accordance with all the requirements of PSD and the SIP, including the public participation requirements in 40 C.F.R. §§ 51.160-161 and 166(q), from continuing to construct SAF stacks that are not in conformity with its own air quality impact analyses, and from continuing to construct the cooling towers, silicon metal product loading equipment, and other emission units

not specifically authorized in any permit.

**V.**
**Claims**

**Count I: MS Silicon's Violations of 42 U.S.C. § 7475(a) and the SIP**

74. Plaintiffs incorporate by reference the allegations in paragraphs 1-73 above.

75. MS Silicon is constructing a new major emitting facility without a PSD permit, in violation of 42 U.S.C. § 7475(a)(1) and APC-S-5.

76. MS Silicon is constructing a new major emitting facility that is not in accordance with the materials it submitted to MDEQ and upon which MDEQ made the determination to issue the Permit, in violation of APC-S-5.

77. MS Silicon is constructing emission units that are not authorized by any permit, in violation of 42 U.S.C. § 7475(a)(1) and APC-S-5.

78. Plaintiffs are entitled to an order enjoining MS Silicon from continuing to construct the Plant in violation of 42 U.S.C. § 7475 and APC-S-5.

**Count II: MDEQ's and the Permit Board's Violations of 42 U.S.C. § 7475(a) and the SIP**

79. Plaintiffs incorporate by reference the allegations in paragraphs 1-78 above.

80. MDEQ issued a permit to a major emitting facility (*viz.* the Permit) in non-conformity with and in violation of 42 U.S.C. § 7475(a) and the Mississippi SIP, 40 C.F.R. Part 52, Subpart Z (2013) (incorporating APC-S-2 and APC-S-5).

81. In issuing the MS Silicon Permit, MDEQ failed to give the required 30-day notice to the public, failed to make all permit application materials available to the public, and failed to provide the public an opportunity to appear at a public hearing in violation of the mandatory public notice and public participation requirements of 42 U.S.C. § 7475(a) and the Mississippi

SIP, 40 C.F.R. Part 52, Subpart Z (2013) (incorporating APC-S-2 and APC-S-5).

82. MDEQ also failed to notify any State or any Federal Land manager whose lands may be affected by emissions from the source in violation of 40 C.F.R. § 51.166(q) and APC-S-5.

83. The Permit Board voted to note and record in its minutes the report of the Permit without denying its issuance for failure to comply with the Clean Air Act and the Mississippi SIP.

84. These actions deprived the public, EPA, and neighboring states, among others, of the opportunity to review, analyze, comment, and object to the issuance of a permit purporting to authorize construction of a major emitting facility and its associated air quality impacts. By providing an incomplete and abridged public review and participation process in violation of the public participation requirements of the Clean Air Act, its regulations, and the Mississippi SIP, MDEQ and the Permit Board effectively prohibited any interested party from asserting its rights under such laws with respect to the issuance of the Permit and prevented EPA from exercising its oversight role that the statute envisions through a full opportunity to review and comment.

85. Because MDEQ and the Permit Board failed to act in accordance with Mississippi's PSD permitting program as embodied in its SIP, they acted in violation of an emission standard or limitation under the Clean Air Act and Mississippi's State Implementation Plan. 42 U.S.C. § 7604(a)(1), (f)(3) and (f)(4).

86. Pursuant to 42 U.S.C. § 7604(a)(1), (f)(3) and (f)(4), this Court should determine that the permit issued by MDEQ is not a valid PSD permit because of MDEQ's and the Permit Board's failure to comply with the Clean Air Act and the Mississippi SIP, and should enjoin

MDEQ and the Permit Board from allowing construction to proceed pursuant to such defective permit.

## VI.
## Prayer for Relief

Plaintiffs respectfully request the Court to enter judgment for Plaintiffs and against MS Silicon, MDEQ, and the Permit Board, and enter an order:

1) enjoining MS Silicon from continuing to construct any part of the Plant until such time as MS Silicon obtains a pre-construction permit, for all sources of emissions of regulated NSR pollutants, issued in accordance with 42 U.S.C. § 7475 and the SIP, requiring in particular:

   (a) a full 30-day opportunity for the public to review and comment on: the air quality impacts of permitted emissions from the Plant, considering actual stack parameters and all emission units at the Plant; control technology determinations; and other appropriate considerations;

   (b) a full 30-day opportunity for the public to review the application, air quality impact modeling, drawings and specification, and any other information submitted by MS Silicon in support of the permit, at the Burnsville Public Library or other suitable place in the region as per 40 C.F.R. § 51.166(q)(2)(ii); and

   (c) a public hearing to provide an opportunity for the public to appear and make oral or written comments.

2) assessing civil penalties against MS Silicon pursuant to 42 U.S.C. §§ 7413(d) and 7604;

3) determine that the permit issued by MDEQ is not a valid PSD permit because of MDEQ and the Permit Board's failure to comply with the Clean Air Act and the Mississippi SIP;

4) enjoining, on a continuing basis, MDEQ and the Permit Board from violating the Mississippi SIP, including *inter alia*, by requiring conformity with the public notice and public participation requirements of the SIP and the Clean Air Act in respect of any PSD permit issued to MS Silicon;

5) awarding Plaintiffs their costs and fees (including reasonable attorney and expert witness fees) pursuant to 42 U.S.C. § 7604; and

- 19 -

    6)    awarding Plaintiffs all other just and equitable relief.

/s/ Ronnie Musgrove
RONNIE MUSGROVE (MSB #3698)
*Attorney for Plaintiffs, 16 Front Street LLC and C. Richard Cotton*

OF COUNSEL:

**MUSGROVE/SMITH LAW**
1635 Lelia Drive, Suite 104 (39216)
Post Office Box 4670
Jackson, Mississippi 39296
Tel: 601.852.1696 / Fax: 601.852.1714

## CERTIFICATE OF SERVICE

I hereby certify that on January 23rd, 2015, I electronically filed the foregoing document with the Clerk of the Court using the ECF system and it was served on the following counsel of record:

Rebecca Lee Wiggs
Keith W. Turner
WATKINS & EAGER PLLC
400 East Capitol Street (39201)
Post Office Box 650
Jackson, Mississippi 39205
*rwiggs@watkinseager.com*
*kturner@watkinseager.com*

Martin T. Booher
Michael J. Montgomery
Baker & Hostetler, LLP
Cleveland PNC Center
1900 East 9th Street, Suite 3200
Cleveland, OH 44114-3482
*mbooher@bakerlaw.com*
*mmontgomery@bakerlaw.com*

Mark W. DeLaquil
Peter C. Whitfield
Baker & Hostetler, LLP
1050 Connecticut Avenue, Suite 1100
Washington, D.C. 20036-5304
*mdelaquil@bakerlaw.com*
*pwhitfield@bakerlaw.com*

       s/ Ronnie Musgrove
       RONNIE MUSGROVE (MSB #3698)
       *Attorney for Plaintiffs, 16 Front Street LLC and C. Richard Cotton*