

# MUSGROVE SMITH LAW

November 14, 2014

**By Certified Mail**

Mississippi Department of Environmental Quality
515 E. Amite Street
Jackson, MS 39201

Gary C. Rikard, Executive Director, Mississippi Department of Environmental Quality
515 E. Amite Street
Jackson, MS 39201

Mississippi Environmental Quality Permit Board c/o Executive Director Gary Rikard
515 E. Amite Street
Jackson, MS 39201

Roy H. Furrh, Esq., Senior Counsel, Mississippi Department of Environmental Quality
515 E. Amite Street
Jackson, MS 39201

**Re: Notice of Intent to Sue for Violation of an Emission Standard or Limitation Under the Clean Air Act**

Dear Mr. Rikard and Mr. Furrh:

This letter serves as notice that 16 Front Street LLC ("16 Front Street") and C. Richard Cotton ("Cotton") intend to file a citizen suit against the Mississippi Department of Environmental Quality ("MDEQ") and the Mississippi Environmental Quality Permit Board ("Permit Board") pursuant to Section 304(a) of the Clean Air Act, 42 U.S.C. § 7604(a).

Without the required 30-day notice to the public or making all application materials available to the public, MDEQ issued Permit No. 2640-00060 (the "Permit") on or about November 27, 2013, which purports to authorize MS Silicon to construct a silicon metal manufacturing facility (the "Plant") in Burnsville, Tishomingo County, Mississippi. Construction of the Plant is ongoing.


EXHIBIT B

601.852.1696 (office)
866.646.3034 (toll free)
601.852.1714 (fax)

1635 Lelia Drive, Suite 104
Jackson, MS 39216

www.musgrovesmith.com

1

MDEQ and the Permit Board failed to comply with the procedural and public participation requirements embodied in the Mississippi State Implementation Plan (SIP). 40 C.F.R. 52, Subpart Z. Specifically, these requirements are included in Mississippi's SIP regulations, APC-S-2 (Permit Regulations for the Construction and/or Operation of Air Emissions Equipment) and APC-S-5 (Regulations for the Prevention of Significant Deterioration of Air Quality), which have been approved by the United States Environmental Protection Agency ("EPA"). Because MDEQ and the Permit Board failed to act in accordance with Mississippi's PSD permitting program (an "air quality maintenance plan"), they acted in violation of an emission standard or limitation under the Clean Air Act and Mississippi's State Implementation Plan. 42 U.S.C. § 7604(a), (f)(3) and (f)(4).

In accordance with section 304(b) of the Clean Air Act, we are writing to notify you that 16 Front Street and Cotton may file suit in federal district court any time sixty (60) days after the postmarked date of this letter to rescind the permit, enjoin construction of the Plant, seek enforcement of Mississippi's Implementation Plan, obtain civil penalties, recover attorney fees and costs of litigation, and obtain any other appropriate relief.

**Legal Background**

The Clean Air Act ("CAA") prohibits construction of a new major source of air pollutants unless a permit has been issued "in accordance with this part [part C, chapter 1 of the CAA - *i.e.*, PSD]." 42 U.S.C. § 7475(a)(1). At all relevant times, MDEQ was authorized by federal law to issue permits to new major sources of air pollutants in Mississippi pursuant to regulations APC-S-2 (2005) and APC-S-5 (2011). *See* 40 C.F.R. Part 52, Subpart Z (2013). APC-S-5 incorporates by reference the provisions of 40 C.F.R. § 51.166(q) and 40 C.F.R. § 52.21, as amended Nov. 4, 2011, except (insofar as relevant here) § 52.21(q), both with minor wording changes to reflect the fact that MDEQ, and not the U.S. Environmental Protection Agency ("EPA"), is the permitting authority and charged, *inter alia*, with responsibility for strict observance of the public participation procedures of the CAA.

Under PSD, a new "major emitting facility" or "major source of air pollutants" is any new stationary source that has the potential to emit more than 250 tons per year of any regulated new source review ("NSR") pollutant. 42 U.S.C § 7479; 40 C.F.R. § 52.21(b)(1). Each proposed emission unit at a new major emitting facility must be expressly authorized in a permit issued in accordance with PSD, including emission limitations representing continuous emission reductions based on the best available control technology ("BACT") applicable to that emissions unit. 42 U.S.C. §§ 7475(a)(4), 7479(3) and 7601(k); 40 C.F.R. §§ 52.21(b) and (j). One of Congress' declared purposes in enacting PSD was "to assure that any decision to permit increased air pollution in any area to which this section [PSD] applies is made only after careful evaluation of all the consequences of such a decision and *after adequate procedural opportunities for informed public participation in the decision-making process.*" 42 U.S.C. § 7470(5) (emphasis added).

Under the Mississippi SIP and the Clean Air Act, a permit has not been issued in accordance with the PSD requirements -- and thus does not qualify as a PSD permit -- unless the

2

permit applicant (in this case MS Silicon) and MDEQ (the permitting authority) have met all applicable procedural requirements, including without limitation, the following:

> (a) The applicant demonstrates that emissions from the proposed facility will not cause or contribute to an exceedance of any national ambient air quality standard ("NAAQS") or maximum allowable increase in the area ("PSD increment"). 42 U.S.C. § 7475(a)(3); 40 C.F.R. § 52.21(k); APC-S-5.
>
> (b) The proposed permit and all materials submitted by the applicant – including specifications and drawings, the typical operating schedule, a detailed construction schedule, emission estimates, detailed descriptions of proposed BACT, and air quality impact analyses of the air quality impacts of the source – are available for public review, in the area in which the source will be located, for not less than 30 days before the permit is issued. 40 C.F.R. §§ 51.160-161 and 166(q); 40 C.F.R. § 52.21(n); APC-S-2; APC-S-5.
>
> (c) MDEQ holds a public hearing before issuing the final permit, with an opportunity at that hearing for interested persons to make written or oral comments on the air quality impacts of and control technology requirements for the new major source. 42 §§ 7475(a)(2) and 7475(e)(2); 40 C.F.R. § 51.166(q); 40 C.F.R. § 52.21(j)-(k); APC-S-2; APC-S-5.
>
> (d) Send a copy of the notice of public comment to the applicant, the Administrator and any State, Federal Land Manager, or Indian Governing body whose lands may be affected by emissions from the source or modification. 40 C.F.R. § 51.166(q); APC-S-5.

Under the Mississippi SIP, a permit for a new major source of air pollutants must state that the source will meet all the requirements under PSD, including the pre-permit public participation requirements. If the permit does not expressly or impliedly state that the public participation requirements have been met, actual construction of the source may not lawfully commence. 40 C.F.R. § 52.21(a)(2)(iii). Under the Mississippi SIP, construction of a new major source of air pollutants that is not in accordance with the permit application or the terms of the permit is subject to appropriate enforcement action. 40 C.F.R. § 52.21(r)(1).

**Factual Background**

In August 2013, MS Silicon submitted a permit application to MDEQ, seeking issuance of a permit to construct the Plant in Tishomingo County, an attainment area for all regulated NSR pollutants. On about November 27, 2013, MDEQ issued Permit no. 2640-00060 (the "Permit") to MS Silicon, purporting to authorize MS Silicon to construct a new silicon metal manufacturing facility. The Permit authorizes the Plant to emit at least 2,170 tons per year of SO2, 1,906 tons per year of NOx, and 1,444 tons per year of CO. On or about December 10, 2013, the Permit Board voted to note and record in its minutes the report of the Permit. Construction of the Plant commenced in or around January 2014.

3

**Public Participation Deficiencies**

MS Silicon submitted air quality impact modeling to MDEQ in October 2013. On about October 21, 2013, MDEQ made a preliminary determination to issue the Permit to MS Silicon. Notice of the preliminary determination to issue the Permit was published in the Northeast Mississippi Daily Journal on October 24, 2013 (the "Notice"). The Notice provides that public comments must be received no later November 22, 2013. Under Mississippi law, the day of publication of the required public notice of the proposed permit does not count toward the minimum 30-day public comment period. Miss. Code § 1-3-67. Contrary to PSD and the SIP, the Notice, on its face, allows the public only 29 days to comment on the proposed permit.

MDEQ sent copies of the Notice, MDEQ's PSD air quality analysis project summary, MDEQ's pre-construction review and preliminary determination to issue the Permit, and a draft of the Permit, to the Burnsville Public Library in Burnsville, Mississippi ("Library"), with a letter ("Cover Letter") requesting that the Library make the information available for public review until November 22, 2013. In the Cover Letter, MDEQ instructed the Library that the information could be discarded after November 22, 2013. Although the Cover Letter is dated October 23, 2014, the Cover Letter and its enclosures were not delivered to the Library until October 29, 2013 and were not available for review by members of the public until at least that time.

Accordingly, contrary to its SIP and federally mandated requirements for PSD programs, the public had at most 24 days in which to review the aforementioned materials. Further, and likewise contrary to PSD, the Library never received, and the public therefore never had the required opportunity to review and comment on, MS Silicon's permit application, MS Silicon's October air quality impact modeling, specifications and drawings, or any other information MS Silicon submitted to MDEQ in support of its permit application. On or about November 22, 2013, MS Silicon submitted a supplemental air quality impact modeling report to MDEQ. This modeling report was likewise never delivered to the Library, such that the public never had the required 30-day opportunity to review and comment on the same.

Contrary to the SIP, MDEQ did not make copies of MS Silicon's air quality impact modeling reports available for public inspection at the Library. Instead, MDEQ provided air quality impact summaries that had been prepared by MDEQ and MS Silicon. These summaries purport to identify the areas in which permitted emissions from the Plant will cause significant impacts. These summaries also purport to demonstrate that permitted emissions from the Plant will not cause or contribute to violations of any NAAQS. In fact, these summaries do not reflect the results of MS Silicon's air quality impact modeling of permitted emissions from the Plant. Instead these summaries improperly reflect modeling of only a portion of the emissions and therefore do not accurately describe ambient impacts, in violation of SIP requirements.

Likewise, contrary to the SIP, MDEQ failed to notify any State or any Federal Land manager whose lands may be affected by emissions from the source or modification. In so doing, neighboring states (such as Alabama or Tennessee), Federal Land Managers, and interested citizens in those states lacked requisite notice that Mississippi planned to authorize a plant that could (and actually would) impact their states.

4

The public – including but not limited to citizens, EPA, Federal Land Managers, and neighboring states – could not have discerned, using only the information made available, that the subject air quality impact analyses are not based on permitted emissions. This was only discernable from a review of the full air quality modeling reports submitted by MS Silicon to MDEQ, which were not made available at the Burnsville Public Library.

Contrary to PSD, MDEQ did not provide the public an opportunity to appear at a public hearing to make oral comments on the air quality impacts of and control technology requirements for the Plant. Rather, MDEQ issued the Permit without holding a public hearing.

The Permit states that it was issued under MDEQ's authority under 40 C.F.R. § 52.20(a) and 52.21, but does not state that it was issued in accordance with the applicable public participation requirements in 40 C.F.R. §§ 51.160-161 and 166(q). In fact, the Permit was not issued in accordance with the public participation requirements in 42 U.S.C. §§ 7475(a) and 7475(e), the rules in 40 C.F.R. § 51.160-161 and 166(q), or APC-S-2 and APC-S-54; therefore, the Permit is not a "PSD permit."

By providing an incomplete and abridged public review and participation process in violation of the public participation requirements of the Clean Air Act, its regulations, and the Mississippi SIP, MDEQ and the Permit Board effectively prohibited any interested party from asserting its rights under such laws with respect to the issuance of the Permit and prevented EPA from exercising its oversight role that the statute envisions through a full opportunity to review and comment.

**Citizen Suit**

16 Front Street and Cotton may bring suit pursuant to Section 304(a) of the Clean Air Act, 42 U.S.C. § 7604(a). That provision provides that "any person may commence a civil action on his own behalf" against any person, including any "governmental instrumentality or agency . . . who is alleged to have violated . . . or to be in violation of (A) an emission standard or limitation under this chapter [the Clean Air Act]." *Id.* An "[e]mission standard or limitation under this chapter" is defined to include "any condition or requirement under an applicable implementation plan relating to . . . air quality maintenance plans," 42 U.S.C. § 7604(f)(3), and "any other standard, limitation, or schedule established under . . . any applicable State implementation plan approved by the Administrator, any permit term or condition, and any requirement to obtain a permit as a condition of operations." *Id.* at § 7604(f)(4). Air quality maintenance plans include among other things, state approved implementation plans with "regulations to control and prohibit air pollution throughout the state . . . consistent with the Federal Air Pollution Control Act," which also authorize the applicable state authority to "require persons constructing or establishing new air contaminant sources, including indirect sources, to apply for a permit therefor." *Environmental Study & Protection v. Pac*, 464 F.Supp. 143, 146 (D. Conn. 1978). Whereas, MDEQ and the Permit Board have failed to act in accordance with Mississippi's SIP-approved PSD permitting program (an "air quality maintenance plan"), have acted in violation of an emission standard or limitation under the Clean Air Act and Mississippi's SIP, and had no authority to characterize the permit as "PSD" permit.

5

"Once a citizen suit to enforce an EPA-approved state implementation plan has been properly commenced, the district court is obligated, upon a showing that the state has violated the plan, to issue appropriate orders for its enforcement." *Friends of the Earth v. Carey*, 535 F.2d 165, 173 (2nd Cr. 1976). The Fifth Circuit has likewise stated that citizens are empowered under § 7604 to request that courts "enforce SIP provisions generally, against the states that failed to comply with those commitments." *BCCA Appeal Group v. U.S. E.P.A.*, 355 F.3d 817, 839 n. 25 (5th Cir. 2003) *citing Am. Lung Ass'n v. Kean*, 670 F. Supp. 1285 (D.N.J.1987), *aff'd*, 871 F.2d 319 (3d Cir.1989) (concluding that the court has jurisdiction to adjudicate citizen suits against the state in its regulatory capacity and enforcing state's SIP commitments) and *Friends of the Earth*, 535 F. 2d 165 (enforcing provisions of state implementation plan in citizen suit).

Where MDEQ and the Permit Board violated the terms of Mississippi's SIP by failing to comply with its required public notice and public participation requirements in issuing the Permit to MS Silicon, 16 Front Street and Cotton may now seek to enforce the requirements of the SIP.

**Conclusion**

16 Front Street and Cotton reserve the right to file suit to rescind the permit, enjoin construction, seek enforcement of Mississippi's State Implementation Plan, and to obtain civil penalties, recover attorney fees and costs of litigation, and other appropriate relief.

Sincerely,

MUSGROVE/SMITH LAW, PLLC

*Ronnie Musgrove*

Ronnie Musgrove


cc:

| | |
|---|---|
| Mississippi Silicon, LLC<br>c/o CT Corporation System<br>645 Lakeland East Drive, Ste. 101<br>Flowood, MS 39232 | *Via Certified Mail* |
| David Tuten<br>Mississippi Silicon, LLC<br>313 Lawton Road<br>Marietta, OH 45750 | *Via Certified Mail* |
| Gina McCarthy<br>Administrator<br>U.S. Environmental Protection Agency<br>Ariel Rios Building, Mail Code 1101A | *Via Certified Mail* |

6

1200 Pennsylvania Avenue, NW
Washington, DC 20460

Heather McTeer Toney                                        *Via Certified Mail*
Regional Administrator
U.S. Environmental Protection Agency, Region 4
Sam Nunn Atlanta Federal Center
61 Forsyth Street, SW
Atlanta, GA 30303-8960

Eric Holder                                                              *Via Certified Mail*
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Honorable Phil Bryant                                      *Via Certified Mail*
Office of the Governor
P.O. Box 139
Jackson, MS 39205

7

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

MS Environmental Quality
Permit Board
c/o Gary Rikard
515 E. Amite Street
Jackson, MS 39201

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X [signature] Deuthie Bailey
☐ Agent
☐ Addressee

B. Received by (Printed Name): Deuthie Bailey
C. Date of Delivery: 1-17-1[?]

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail®
☐ Registered
☐ Insured Mail
☐ Priority Mail Express™
☑ Return Receipt for Merchandise
☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label)
7014 1820 0001 1752 8133

PS Form 3811, July 2013    Domestic Return Receipt

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

   Gary C. Rikard, Executive Director
   MS Department of
   Environmental Quality
   515 E. Amite Street
   Jackson, MS 39201

2. Article Number
   (Transfer from service label)    7014 1820 0001 1752 8287

PS Form 3811, July 2013    Domestic Return Receipt

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
   X _[signature]_    ☐ Agent
                       ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
   _[illegible]_                  11/17/14

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below:     ☐ No

3. Service Type
   ☑ Certified Mail®    ☐ Priority Mail Express™
   ☐ Registered        ☑ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)    ☐ Yes

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

   Mississippi Department of
   Environmental Quality
   515 E. Amite Street
   Jackson, MS 39201

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Dorothy Bailey_
   ☐ Agent
   ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
   Dorothy Bailey                 11/7/[..]

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
   ☒ Certified Mail®     ☐ Priority Mail Express™
   ☐ Registered          ☒ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)
   7014 1820 0001 1752 8126

PS Form 3811, July 2013         Domestic Return Receipt