# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### ABERDEEN DIVISION

**16 FRONT STREET LLC and**                                        **PLAINTIFFS**
**C. RICHARD COTTON**

**V.**                                                  **NO. 1:14-CV-00183-DMB-DAS**

**MISSISSIPPI SILICON, LLC and**
**GARY C. RIKARD, Executive Director,**
**Mississippi Department of Environmental**
**Quality, in His Official Capacity and as**
**Executive Director of the Mississippi**
**Environmental Quality Permit Board**                            **DEFENDANTS**


## ORDER DISMISSING CLAIMS FOR LACK OF JURISDICTION

In this citizen suit under the Clean Air Act ("CAA"), this Court must determine whether 42 U.S.C. § 7604(a)(3) authorizes the Court to exercise subject matter jurisdiction over a challenge to a permit issued for the construction of a silicon manufacturing plant in Tishomingo County, Mississippi, that will be a major source of air pollutants. Plaintiffs 16 Front Street LLC and C. Richard Cotton have moved for a preliminary injunction against the permit holder, Defendant Mississippi Silicon, LLC ("MS Silicon"), seeking to halt the plant's ongoing construction. As grounds for injunctive relief, Plaintiffs allege that because the permit was issued contrary to procedural public participation requirements of the CAA and its implementing regulations, MS Silicon is effectively constructing the plant "without a permit" such that jurisdiction under § 7604(a)(3) is conferred. Because the Court concludes, however, that § 7604(a)(3)'s "without a permit" language is not implicated by Plaintiffs' causes of action against MS Silicon, the Court lacks subject matter jurisdiction over Plaintiffs' claims against MS Silicon. As such, Plaintiffs' claims against MS Silicon must be dismissed, with Plaintiffs' motion for a preliminary injunction against MS Silicon denied as moot.

# I
## Standard of Review

Before the merits of Plaintiffs' motion for a preliminary injunction can be reached, the Court must confirm that it has subject matter jurisdiction over Plaintiffs' underlying claims against MS Silicon. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006) ("[C]ourts … have an independent obligation to determine whether subject-matter jurisdiction exists … ."). It is well established that when considering the issue of subject matter jurisdiction, a district court has "broad discretion to consider [any] relevant and competent evidence." 5B Wright & Miller, Federal Practice & Procedure § 1350 & n.47 (3d ed.) (collecting cases). Here, as is often the case, where the jurisdictional inquiry "is directed solely at the sufficiency of the complaint's jurisdictional allegations, then it is unlikely that affidavits or other materials outside the pleadings will be necessary." *Id.* Thus, the Court turns to Plaintiffs' allegations in reviewing the present jurisdictional issue.

# II
## Factual and Procedural Matters

### A.  Relevant Pleadings

As explained in more detail below, Plaintiffs have filed an original and an amended complaint in this action. Doc. #1; Doc. #69. "[A]n amended complaint supersedes [an] original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Plaintiffs' amended complaint does not specifically refer to or adopt the earlier pleading. *See* Doc. #1; Doc. #69. Accordingly, Plaintiffs' amended complaint supersedes their original complaint. *King*, 31 F.3d at 346.

While a complaint may not be amended to "create subject matter jurisdiction when none exists," a court can look to an amended complaint to determine whether it has subject matter

jurisdiction over the original claims, so long as any changes in the allegations are of the "technical" or "formal" variety. *See In re Katrina Canal Breaches Litig.*, 342 Fed. App'x 928, 931 (5th Cir. 2009). Here, except for two paragraphs that would fairly be described as argument, the factual allegations in the amended complaint against MS Silicon are substantively identical to the factual allegations in the original complaint.[1] *Compare* Doc. #1 *with* Doc. #69. Thus, the Court refers to the superseding amended complaint in conducting its jurisdictional analysis.

### B. Factual Allegations

#### 1. The Parties

Plaintiffs are 16 Front Street LLC and C. Richard Cotton. Doc. #69 at ¶¶ 1–2. 16 Front Street is a Delaware limited liability company that owns real property in Burnsville, Tishomingo County, Mississippi.[2] *Id.* at ¶ 1. Cotton, a resident of Saltillo, Mississippi, is a freelance writer and photographer whose work takes him to Tishomingo County and nearby areas. *Id.* at ¶ 2.

Defendants are MS Silicon and Gary C. Rikard.[3] MS Silicon is an Ohio limited liability company with its principal place of business in Burnsville, Tishomingo County, Mississippi. *Id.* at ¶ 4. Rikard is named as a defendant in his official capacity as the Executive Director of the Mississippi Department of Environmental Quality ("MDEQ") and as Executive Director of MDEQ's Permit Board. *Id.* at ¶ 5. MDEQ is an executive agency of the State of Mississippi authorized by federal law to issue permits to new major sources of air pollutants. *Id.* at ¶¶ 5, 17.

---

[1] Although the amended complaint also added Gary Rikard as a defendant in this action, subject matter jurisdiction for the claims against him is alleged under a different statute than the claims against MS Silicon. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 554 (2005) ("In contrast to the diversity requirement, most of the other statutory prerequisites for federal jurisdiction, including the federal-question and amount-in-controversy requirements, can be analyzed claim by claim.").

[2] 16 Front Street is an affiliate of Globe Metallurgical Inc., Doc. #4 at ¶ 3, currently the only producer of silicon metal in Mississippi. According to MS Silicon, the limited liability company that is 16 Front Street was created after MS Silicon was issued a permit to begin construction on the Plant. Doc. #43 at 5-6.

[3] As mentioned above, Rikard was not an original party to this action but was later joined as a defendant through the amended complaint.

MDEQ's Permit Board issues and administers Mississippi permits and certifications under the CAA and Mississippi law, including the preconstruction authorization process for Mississippi under the Prevention of Significant Deterioration ("PSD") program of the CAA. *Id.* at ¶ 6–7.

### 2.     The Plant

MS Silicon is in the midst of constructing a silicon manufacturing plant ("Plant") in Burnsville, Tishomingo County. Doc. #69 at ¶ 14. The Plant will be a major source of air pollutants. *Id.* at ¶¶ 15, 55–56. Plaintiffs allege that, because of their connections to Tishomingo County, they will be adversely affected by emissions from the Plant. *Id.* at ¶¶ 1–2, 15, 71.

### 3.     The Permit Process

In August 2013, MS Silicon applied for a preconstruction permit with MDEQ to construct the Plant. *Id.* at ¶ 26. In support of its application, MS Silicon submitted an air quality impact modeling report to MDEQ in early October 2013. *Id.* at ¶ 32. On or about October 21, 2013, MDEQ made a preliminary determination to issue a permit to MS Silicon. *Id.* at ¶ 33.

MDEQ published notice of its preliminary determination to issue a permit to MS Silicon in the *Northeast Mississippi Daily Journal* on October 24, 2013. *Id.* at ¶ 34. That notice specified that, no later than November 22, 2013, the public could submit comments on the application and MDEQ's preliminary determination to issue a permit. *Id.* at ¶¶ 34–35. Additionally, in October 2013, MDEQ sent to the Burnsville Public Library copies of the notice, MDEQ's PSD air quality analysis project summary, MDEQ's preconstruction review and preliminary determination to issue the permit, and a draft of the permit. *Id.* at ¶¶ 38–39. Plaintiffs allege that although the letter sent by MDEQ to the Burnsville Public Library was dated October 23, 2013,[4] the letter was not actually delivered until October 29, 2013. *Id.* at ¶ 39.

---

[4] Plaintiffs' amended complaint alleges the letter was dated "October 23, 201*4*," Doc. #69 at ¶ 39 (emphasis added), which apparently is a typographical error. Exhibit 1D, Doc. #11, filed in support of Plaintiffs' motion for a

On or about November 22, 2013, MS Silicon submitted a supplemental air quality impact modeling report to MDEQ. *Id.* at ¶ 44. According to Plaintiffs, neither MS Silicon's permit application nor the supporting air quality modeling reports that MS Silicon submitted to MDEQ were made available to the public. *Id.* at ¶¶ 41, 44, 51.

On November 27, 2013, MDEQ granted MS Silicon's application and issued a permit authorizing MS Silicon to construct a new silicon manufacturing facility—the Plant.[5] *Id.* at ¶ 27; Doc. #5. In relevant part, the permit authorizes the Plant to emit at least 2,170 tons per year of $SO_2$ (sulfur dioxide), 1,906 tons per year of NOx (nitrogen oxide), and 1,444 tons per year of CO (carbon dioxide). Doc. #69 at ¶¶ 19, 28; Doc. #5 at 6. MDEQ issued MS Silicon's permit without holding a public hearing on the application. Doc. #69 at ¶¶ 45–46.

### C.    Procedural History

#### 1.    Complaint and Request for Injunctive Relief

On September 29, 2014, Plaintiffs filed their original complaint against MS Silicon, alleging this Court's subject matter jurisdiction under 42 U.S.C. § 7604(a)(3). Doc. #1 at ¶ 6. Plaintiffs alleged that MS Silicon is constructing a new major emitting facility without a permit, in violation of the CAA, 42 U.S.C. § 7475(a)(1), and Mississippi regulation APC-S-5. *Id.* at ¶¶ 65–68. Plaintiffs claimed that deficiencies in MDEQ's permitting process violated procedural requirements regarding public participation imposed by the CAA and its implementing regulations, such that MS Silicon did not obtain a valid permit. *Id.* at ¶¶ 25–44. Plaintiffs also claimed that MS Silicon's ongoing construction of the Plant deviated from the materials it

---

temporary restraining order or preliminary injunction, indicates that the date on the letter is "October 23, 2013." *See Amidax Trading Grp. v. S.W.I.F.T. SCRL,* 671 F.3d 140, 145 (2d Cir. 2011) ("In reviewing a facial attack to the court's jurisdiction, we draw all facts—which we assume to be true unless contradicted by more specific allegations or documentary evidence—from the complaint and from the exhibits attached thereto.").

[5] Although not dispositive of the jurisdictional issue, the Court notes that MS Silicon has represented that construction on the Plant began on May 22, 2014, and is ongoing. Doc. #43 at 6 n.1.

submitted to MDEQ in its permit application, and included the construction of unpermitted units. *Id.* at ¶¶ 45–60, 66–67. As a remedy, Plaintiffs sought both damages and injunctive relief, specifically: (1) an order permanently enjoining MS Silicon from continuing to construct the Plant until it obtains a permit that complies with all of the statutory requirements of the CAA and remedies the procedural defects alleged; (2) an assessment of civil penalties against MS Silicon under 42 U.S.C. §§ 7413(d) & 7604; and (3) an award of costs and fees, including reasonable attorney and expert witness fees, under 42 U.S.C. § 7604. *Id.* at 13.

On October 1, 2014, Plaintiffs filed a motion for a temporary restraining order and preliminary injunction. Doc. #3. In their supporting brief, Plaintiffs request that the Court immediately enjoin MS Silicon from continuing to construct the Plant, contending that, based on the allegations in the complaint and exhibits submitted with the motion, they have "established a clear statutory violation mandating injunctive relief … ." Doc. #19 at 1–2, 10.

On October 6, 2014, MS Silicon filed its opposition to the motion, arguing that Plaintiffs' motion for injunctive relief should be denied on numerous grounds, including lack of jurisdiction,[6] failure to state a justiciable claim, and failure to join a required party (MDEQ). Doc. #25. In its brief, MS Silicon relies heavily on a Fifth Circuit case, *CleanCOALition v. TXU Power*, 536 F.3d 469 (5th Cir. 2008), contending that there, the Fifth Circuit held that "an allegation of an improperly issued PSD permit could not sustain a claim under section 304." *Id.*

---

[6] MS Silicon's initial responsive memorandum argues that "[t]he Clean Air Act requires a plaintiff to provide 60 days notice of an alleged violation prior to filing suit in a district court. *See* 42 U.S.C. § 7604(b). The failure to do so requires dismissal for lack of jurisdiction." Doc. #25 at 8. However, the sixty-day notice requirement does not appear to apply to claims brought under § 7604(a)(3), the statutory provision invoked by Plaintiffs' original and amended complaints. *See United Steelworkers of Am. v. Oregon Steel Mills, Inc.*, 322 F.3d 1222, 1227–28 (10th Cir. 2003) ("[T]he Clean Air Act requires 60-day notice for citizen suit claims brought for violations of emissions standards (§ 7604(a)(1)) and for the EPA Administrator's failure to perform a non-discretionary duty (§ 7604(a)(2)), but not for permit requirement claims brought under § 7604(a)(3).").

at 7–8.  MS Silicon argues that *CleanCOALition* is indistinguishable from the instant case and should be treated as controlling precedent.

Plaintiffs submitted a reply brief in support of their motion on October 14, 2014, arguing that *CleanCOALition* is distinguishable and that its holding is not binding in this case.  Doc. #29 at 8–11.  On October 20, 2014, MS Silicon filed a motion for leave to file a surreply brief opposing Plaintiffs' motion for a temporary restraining order.  Doc. #33.  The motion for leave was later granted by text order on November 10, 2014.

### 2.    The Aycock Order

On November 11, 2014, U.S. District Judge Sharion Aycock, then assigned to this case, denied Plaintiffs' motion for a temporary restraining order but granted Plaintiffs' request for a hearing as to the necessity of a preliminary injunction.  Doc. #35.  In her order ("Aycock Order"), Judge Aycock first considered whether the Court had subject matter jurisdiction over Plaintiffs' claims against MS Silicon under the CAA's "citizen suit" provision.  *Id.* at 7.  Leaning towards Plaintiffs' position regarding the applicability of *CleanCOALition*, she found that the instant case did not easily fit "within the confines of" the Fifth Circuit's opinion "in that while a PSD permit was issued, that permit does not facially comply with the mandates of the CAA" and Mississippi's implementing regulations.  *Id.* at 9.

Judge Aycock ultimately did not decide whether the Court had subject matter jurisdiction over Plaintiffs' claims against MS Silicon.  *Id.* at 9–10.  Instead, she denied Plaintiffs' motion for a temporary restraining order on the ground that "[b]ecause of the uncertainty of subject matter jurisdiction in this case, the Court cannot say that Plaintiffs have met their burden of persuading the Court that there is a substantial likelihood of success on the merits."  *Id.* at 9.  Judge Aycock held that Plaintiffs' motion for a preliminary injunction would be heard, and ordered the parties

to provide additional briefing on whether the Court has subject matter jurisdiction over Plaintiffs' claims against MS Silicon.[7]  *Id.* at 10.  Additionally, Judge Aycock commented in passing that MDEQ was "noticeably absent" as a party to this lawsuit.  Doc. #35 at 9.

### 3.  Nucor's Motion to Intervene

Following Judge Aycock's Order, Nucor, a company that operates a plant in Decatur, Alabama, moved to intervene in this action in support of Plaintiffs.  Doc. #45.  In its brief supporting its motion for intervention, Nucor articulates environmental, economic, and procedural harms that it would suffer as a result of emissions from MS Silicon's new facility.  Doc. #45-1 at 10–11.  Additionally, Nucor argues that MS Silicon and MDEQ intentionally short-circuited the public participation process in order to prevent Nucor from commenting on the draft permit.  *Id.* at 7–9.

### 4.  Jurisdictional Briefing and Amended Complaint

On November 21, 2014, Plaintiffs and MS Silicon submitted their initial briefs on the jurisdictional issue.  Doc. #42; Doc. #43.  That same day, Nucor moved for leave to file a brief recommending that the Court exercise subject matter jurisdiction.  Doc. #47.  Nucor attached its proposed brief to the motion.  Doc. #47-2.

On November 24, 2014, during the jurisdictional briefing period, the case was reassigned to the undersigned district judge.  Doc. #49.

On January 23, 2015, Plaintiffs filed an amended complaint as of right pursuant to Rule 15(a)(1)(B), which joined Rikard, in his official capacity as Executive Director of MDEQ and its Permit Board, as an additional defendant in the case.  Doc. #69.  Plaintiffs' amended complaint,

---

[7] After the entry of the Aycock Order, Defendants were granted multiple extensions to postpone answering the complaint and the amended complaint, and to file an opposition to the motion to intervene filed by Nucor Steel Decatur, LLC ("Nucor"), described below, until after this Court determined whether it had jurisdiction over Plaintiffs' claims against MS Silicon.  Doc. #66; Doc. #86; Text Order dated Dec. 17, 2014.

which contains essentially the same allegations against MS Silicon as the original complaint, adds a claim that MDEQ, in the process of granting MS Silicon's permit application, violated the CAA, 42 U.S.C. §§ 7475(a), 7604(a)(1), (f)(3) & (f)(4), and Mississippi regulation APC-S-5. *Id.* at ¶¶ 79–86.[8] Plaintiffs seek only equitable relief against MDEQ through Rikard, requesting a declaratory judgment that the permit MDEQ issued to MS Silicon is invalid, and an order enjoining MDEQ from violating Mississippi regulations and requiring it to conform to the public participation requirements of the CAA and Mississippi law with respect to any permit issued to MS Silicon. *Id.* at 18. On February 10, 2015, Rikard moved for an extension of time to respond to the amended complaint. Doc. #75.

On February 12, 2015, MS Silicon moved to file a supplemental brief addressing the impact of the amended complaint on the preliminary injunction motion.[9] Doc. #78. On February 24, 2015, Magistrate Judge Sanders held a hearing on the motion to file a supplemental brief and on Rikard's motion for additional time to respond to the amended complaint. Doc. #84. At the hearing, Plaintiffs, Rikard and Nucor[10] requested leave to file supplemental briefs in response to

---

[8] As explained above, because Plaintiffs did not specifically adopt their original complaint in their amended complaint, the amended complaint supersedes their original complaint in this action, rendering the original complaint a legal nullity. *King*, 31 F.3d at 346. Nevertheless, Plaintiffs' filing of an amended complaint did not moot Plaintiffs' earlier motion for a preliminary injunction. It is widely recognized that, in general, a party "should not be required to file a new motion … simply because an amended pleading was introduced while their motion was pending." 6 Wright & Miller, Federal Practice & Procedure § 1476 & n.4 (3d ed.), *quoted with approval in Thomas v. Miramar Lakes Homeowners Ass'n*, No. 4:13-CV-1479, 2014 WL 3897809, at *4 (S.D. Tex. Aug. 6, 2014); *Brown v. Aetna Life Ins. Co.*, No. EP-13-CV-131-KC, 2013 WL 3442042, at *1 n.1 (W.D. Tex. July 8, 2013); *Davis v. Baylor Reg'l Med. Ctr. at Grapevine*, No. 3:11-CV-1350-L, 2013 WL 866173, at *1 (N.D. Tex. Mar. 8, 2013); *In re Vioxx Prods. Liab. Litig.*, No. MDL 1657, 2008 WL 4681368, at *10 n.11 (E.D. La. Oct. 21, 2008). Instead, as long as the issues raised in the motion apply equally to the original and amended complaints, "the court may simply consider the motion as being addressed to the amended pleading. To hold otherwise would be to exalt form over substance." Wright & Miller, § 1476 & n.4.

[9] MS Silicon additionally filed a Notice of Supplemental Authority, *Nucor-Arkansas v. Big River Steel,* __ F.Supp.3d __, 2015 WL 791108 (E.D. Ark. Feb. 25, 2015), addressing the issue of jurisdiction. Doc. #85.

[10] Judge Sanders allowed Nucor to attend the hearing as a "proposed intervenor." Doc. #86 at 1.

MS Silicon's supplement.  Doc. #86.  Judge Sanders granted these requests in a March 2, 2015, Order.[11]  *Id.*

### 5.    Subsequent Filings

On March 13, 2015, Rikard moved to dismiss Plaintiffs' claims against him for lack of subject matter jurisdiction and for failing to state a claim, and joined MS Silicon's opposition to Plaintiffs' motion for a preliminary injunction.  Doc. #89; Doc. #90.  Although Rikard joined MS Silicon's opposition, Plaintiffs did not revise their motion for a preliminary injunction after amending their complaint, and thus continue to seek preliminary injunctive relief only against MS Silicon.  Plaintiffs filed their opposition to Rikard's motion to dismiss on April 6, 2015.  Doc. #104.

On May 8, 2015, this Court held a lengthy hearing on the question of whether it has subject matter jurisdiction over Plaintiffs' claims against MS Silicon and on whether Plaintiffs' motion for a preliminary injunction against MS Silicon should be granted.  Doc. #110.

### D.  Pending Motions

Before turning to jurisdiction, the Court notes that the following motions remain pending: (1) Plaintiffs' motion for a preliminary injunction, Doc. #3; (2) MS Silicon's motion to strike portions of proposed intervenor Nucor's supplemental brief on jurisdiction, Doc. #97; (3) MS Silicon's motion to strike portions of Plaintiffs' supplemental brief on jurisdiction, Doc. #98; (4) MS Silicon's motion for leave to file an updated declaration regarding the status of construction of the Plant, Doc. #109; and (5) Nucor's motion to submit an initial brief recommending that the Court exercise subject matter jurisdiction, Doc. #47.  Regarding the last motion, the Court denied Nucor's motion to participate in the hearing on Plaintiffs' motion for a preliminary injunction,

---

[11] MS Silicon subsequently moved to strike portions of Plaintiffs' and Nucor's briefs as exceeding the scope of Judge Sanders' Order.  Doc. #97; Doc. #98.

Doc. #106, because Nucor had been "granted ample opportunity to brief the legal issues … ." Doc. #108. Accordingly, Nucor's motion to submit its initial brief on subject matter jurisdiction, Doc. #47, to which Nucor attached its proposed brief, Doc. #47-2, is hereby granted *nunc pro tunc*. Because the Court finds it lacks jurisdiction over Plaintiffs' claims against MS Silicon, however, as discussed below, the remaining motions will be denied as moot.[12]

### III
### Analysis

With respect to their claims against MS Silicon, Plaintiffs allege that the Court has subject matter jurisdiction under 42 U.S.C. § 7604(a)(3). Doc. #69 at ¶ 12. Section 7604(a)(3) is the codification of § 304(a)(3) of the CAA,[13] which is better known as the CAA's "citizen suit" provision. *CleanCOALition*, 536 F.3d at 473.

### A.     Jurisdiction to Grant Preliminary Injunctive Relief

The requirements for bringing a citizen suit under § 7604(a) are jurisdictional. *See CleanCOALition*, 536 F.3d at 478 (holding failure to prove that case fell within bounds of § 7604(a)(1) or (a)(3) meant "that subject matter jurisdiction is lacking in this case").[14] Without subject matter jurisdiction, the Court cannot rule on the merits of Plaintiffs' claims, including the

---

[12] *See, e.g.*, *Compana, LLC v. Emke*, No. 3:05-CV-0285-L, 2007 WL 2701525, at *8 (N.D. Tex. Sept. 14, 2007) (denying motions pending as moot after dismissing claims for lack of subject matter jurisdiction). Nucor's motion to intervene, Doc. #45, filed on November 21, 2014, remains pending and is not addressed in this order. Rikard's motion to dismiss, Doc. #89, also remains pending and is similarly unaffected.

[13] References to both are used herein consistent with their use by the parties and in relevant authority, and in the discussion of the textual background of the statute.

[14] Although the United States Supreme Court has cautioned against relying on "drive-by jurisdictional rulings" where a court may have "mischaracterized claim-processing rules or elements of a cause of action as jurisdictional limitations, particularly when that characterization was not central to the case," *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010), the Fifth Circuit's opinion in *CleanCOALition* is not such a "drive-by" ruling. In *CleanCOALition*, the Fifth Circuit Court of Appeals affirmed the district court's dismissal for lack of subject matter jurisdiction after the defendant brought a motion to dismiss for lack of jurisdiction under Rule 12(b)(1). *CleanCOALition*, 536 F.3d at 473. The Fifth Circuit expressly held that "neither of the asserted bases for subject matter jurisdiction, §§ 7604(a)(1) and 7604(a)(3), provides for jurisdiction in this case," *id.* at 470, and declined to reach the issues of justiciability and abstention "[b]ecause we find the district court lacks subject matter jurisdiction in this case," *id.* at 479 n.14.

motion for a preliminary injunction.  *See Hotze v. Burwell*, 784 F.3d 984, 991 (5th Cir. 2015)

("[B]ecause jurisdiction is power to declare the law, if we lack jurisdiction, we may not address

the merits, but must only announce the fact and dismiss the cause.") (internal quotation marks,

brackets, and emphasis omitted); *see also Budget Prepay, Inc. v. AT&T Corp.*, 605 F.3d 273, 281

(5th Cir. 2010) (holding district court was "without subject matter jurisdiction to entertain

[plaintiffs'] claims" and vacating preliminary injunction).  The Court, therefore, must satisfy

itself that it has jurisdiction before addressing whether Plaintiffs are entitled to a preliminary

injunction.  *See Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) ("When a requirement goes to

subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have

disclaimed or have not presented.  Subject-matter jurisdiction can never be waived or forfeited.")

(citation omitted).  Accordingly, the Court must first resolve the threshold jurisdictional issue,

that being, whether § 7604(a)(3) authorizes Plaintiffs' action against MS Silicon.

### B.      Statutory Background and Alleged Basis for Jurisdiction

#### 1.      Statutory and Regulatory Framework

Section 7604(a)(3) provides that a person may bring a civil action:

> against any person who proposes to construct or constructs any
> new or modified major emitting facility without a permit required
> under part C of subchapter I [42 U.S.C. § 7470, *et seq.*] (relating to
> significant deterioration of air quality) or part D of subchapter I
> [42 U.S.C. § 7501, *et seq.*] (relating to nonattainment) or who is
> alleged to have violated (if there is evidence that the alleged
> violation has been repeated) or to be in violation of any condition
> of such permit.

42 U.S.C. § 7604(a)(3).  The relevant provision here is Part C, which requires that any person

who proposes to construct or constructs a "major emitting facility" of air pollution in certain

geographic areas[15] obtain a permit that will prevent the facility from contributing to a significant deterioration of air quality in that area. 42 U.S.C. § 7475(a)(1); *see also Alaska Wilderness League v. U.S. E.P.A.*, 727 F.3d 934, 936 (9th Cir. 2013) ("[T]he Act imposes additional preconstruction permitting requirements under the Prevention of Significant Deterioration program (the "PSD"). … The PSD imposes increment standards to maintain air quality in clean air areas by preventing the total pollution from exceeding a certain level over an established baseline for the given region.") (internal citations omitted). Part C's permitting program is also referred to as the "Prevention of Significant Deterioration" ("PSD") program. *See* 42 U.S.C. § 7401, *et seq.* One of the goals of the PSD program is "to assure that any decision to permit increased air pollution in any area to which this section applies is made only after careful evaluation of all the consequences of such a decision and after adequate procedural opportunities for informed public participation in the decision making process." 42 U.S.C. § 7470(5).

"States have the primary role in administering and enforcing the various components of the PSD program." 57 Fed. Reg. 28,093, 28,095 (June 24, 1992); *see also Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 491 (2004). Each state must submit to the EPA a State Implementation Plan ("SIP") for review and approval. 42 U.S.C. § 7410(a)(1). A state agency must be designated to review applications for PSD permits, and each SIP must use the "specific definitions" established in EPA regulations unless the state's definitions are more stringent. 40 C.F.R. § 51.165(a)(1).

---

[15] The Part C program applies to air quality regions or portions thereof that are designated by the EPA as either "attainment"—*i.e.*, the area meets the applicable national ambient air quality standards—or "unclassifiable"—*i.e.*, the EPA cannot determine based on available information whether the area meets applicable national air quality standards. 42 U.S.C. §§ 7407(d) & 7471. "Nonattainment" areas—areas that do not meet the applicable national air quality requirements—are subject to the permitting requirements of Part D of Title I of the CAA, 42 U.S.C. § 7501, *et seq.*, which, like Part C, is included in the scope of § 7604(a)(3). It is undisputed here that MS Silicon was required to obtain a permit under Part C, not Part D.

Of relevance here, federal regulations implementing the CAA appear to require: (1) a 30-day public comment period; (2) an "opportunity for a public hearing for interested persons" regarding the permit application; and (3) that the applicant "make available … in each region in which the proposed source would be constructed a copy of all materials the applicant submitted, a copy of the preliminary determination, and a copy or summary of other materials, if any, considered in making the preliminary determination." 40 C.F.R. §§ 51.161(b)(2), 51.166(q)(2)(v), 51.166(q)(2)(ii).

In Mississippi, the agency designated to develop the rules and regulations that implement the CAA, including the PSD program, is the Air and Water Pollution Control Commission, which is part of MDEQ. Mississippi's SIP, regulation APC-S-5, has been approved by the EPA. Doc. #69 at ¶ 17. Mississippi has established procedures for both administrative and state court review of CAA permits. *See* Miss. Code Ann. §§ 49-17-29(4) & (5); 11-2-2 Miss. Code R. § 2.4.

### 2.    Plaintiffs' Allegations and Arguments

Plaintiffs allege that MS Silicon and MDEQ violated the three procedural requirements of the CAA's PSD program mentioned above with regard to the permitting of the Plant by: (1) establishing a comment period that was only 29 days long, rather than the required 30-day period; (2) failing to make available to the public a copy of all the materials MS Silicon submitted in support of its permit application; and (3) declining to hold a public hearing on MS Silicon's application. Doc. #69 at ¶¶ 37, 41–43, 45–47. Plaintiffs argue that because MS Silicon and MDEQ did not follow these requirements, the permit issued by MDEQ to MS Silicon is not a permit "issued in accordance with PSD and SIP." Doc. #19 at 3. According to Plaintiffs, because MS Silicon lacks a procedurally valid PSD permit authorizing construction of the Plant,

it is constructing the Plant "without 'a permit required under part C of subchapter I' of the CAA," and this Court therefore has jurisdiction to enjoin MS Silicon from continuing construction of the facility under § 304(a)(3). Doc. #42 at 9.

MS Silicon does not dispute that the Plant will be a "new major emitting facility" within the meaning of the statute or that it is required to obtain a PSD permit to construct the Plant. Rather, MS Silicon argues that it has obtained a PSD permit, that it is not constructing the Plant "without a permit," and that this Court therefore lacks jurisdiction under § 7604(a)(3). Doc. #25 at 6. Further, MS Silicon argues that Plaintiffs cannot use the citizen suit provision to collaterally attack a facially valid PSD permit issued by the appropriate state agency.[16] *Id.* Relying on *CleanCOALition*, MS Silicon submits that the "without a permit" jurisdiction conferred by § 7604(a)(3) applies only where a person fails to obtain a PSD permit altogether, not where a plaintiff alleges that the permit is invalid. Doc. #43 at 7.

## C. Textual Analysis of the Clean Air Act's Citizen Suit Provision

Whether the Court has jurisdiction over the claims against MS Silicon turns on whether the scope of "without a permit" includes a PSD permit that is alleged to be defective for failing to comply with the PSD program's procedural requirements. This is a question of statutory interpretation.[17]

---

[16] At hearing, Plaintiffs indicated that they do not challenge this argument, agreeing that collateral attacks on the permit could not be heard by the Court.

[17] For their separate claims against Rikard, Plaintiffs rely on a different subsection of the citizen suit provision, § 7604(a)(1), which provides for jurisdiction against a person "who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation." 42 U.S.C. § 7604(a)(1). Because this subsection focuses on whether an "emission standard or limitation" or "order" has been violated, and not on whether the defendant has a "permit," whether the Court has jurisdiction over Plaintiffs' claims against MS Silicon under subsection (a)(3) does not determine whether the Court also has jurisdiction over Plaintiffs' claims against Rikard under subsection (a)(1). While Rikard has separately moved to dismiss for lack of jurisdiction under § 7604(a)(1), *see* Doc. #89, addressed herein is only the interpretation of § 7604(a)(3) as it relates to Plaintiffs' claims against MS Silicon, which was the subject of the hearing held on May 8,

"[T]he starting point in every case involving construction of a statute is the language itself." *Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 330 (1978); *see also Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.") (internal quotation marks omitted). "If the intent of Congress is clear, that is the end of the matter; for the court ... must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984). Thus, "[t]he plain meaning of a statute's language governs its construction unless so doing would clearly violate congressional intent or lead to absurd results." *Hope Med. Grp. for Women v. Edwards*, 65 F.3d 418, 425 (5th Cir. 1995). The United States Supreme Court has recognized that "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

In the present case, the clear and plain text of § 7604(a)(3) does not support Plaintiffs' jurisdictional argument.[18] Section 7604(a)(3) gives the Court jurisdiction where, among other things, a defendant constructs a facility "without a permit" required under the PSD program. The CAA does not define the term "permit" as used in § 7604(a)(3) or elsewhere. In ascertaining § 7604(a)(3)'s plain meaning, therefore, the Court may look to common dictionary

---

2015. As discussed below, lack of jurisdiction over Plaintiffs' claim against MS Silicon may, in and of itself, separately require dismissal of Plaintiffs' claims against Rikard for lack of jurisdiction over the case in its entirety.

[18] Courts describe a statute's "clear language" and "plain meaning" interchangeably. *See e.g. Lopez v. Sentrillion Corp.*, 749 F.3d 347, 349 (5th Cir. 2014) ("The language of the statute creates an unambiguous exception to the general rule of unreviewability …. [The plaintiff] urges us to disregard this clear language and hold instead that the exception is limited to review of orders remanding suits against federal officers …. But it is 'well established that, when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'") (internal citations and footnotes omitted).

definitions of the operative term, "permit." *See U.S. v. Radley*, 632 F.3d 177, 182–83 (5th Cir. 2011) ("Beyond the law itself, dictionary definitions inform the plain meaning of a statute.").

Common dictionary definitions reveal that the plain meaning of "permit" is a document giving the bearer permission to perform an act. *See* "Permit," Black's Law Dictionary (10th ed. 2014) (defining "permit" as "[a] certificate evidencing permission; an official written statement that someone has the right to do something"); *see also* "Permit," Oxford English Dictionary Online, http://www.oed.com/view/Entry/141221?rskey=AU9gdI&result=1&isAdvanced=false (last visited July 27, 2015) (defining "permit" as "[a] document giving permission to do something; a licence, warrant, or pass. Formerly *esp.*: a licence to import or export dutiable goods."). When framed in this fashion, the plain meaning of § 7604(a)(3) is that the citizen suit provision does not apply where the constructing party has received a document giving it permission to undertake the construction, and the document is of the type required under Part C (when relating to significant deterioration of air quality) or Part D (when relating to non-attainment).

Part C,[19] the relevant part here, provides that "[n]o major emitting facility … may be constructed in any area to which this part applies unless … a [PSD] *permit* has been issued for such proposed facility in accordance with this part setting forth emission limitations for such facility which conform to the requirements of this part." 42 U.S.C. § 7475(a)(1) (emphasis added); *see also U.S. Marine Shale Processors*, 81 F.3d 1329, 1352 (5th Cir. 1996) ("The CAA requires facilities constructing or modifying major sources to obtain a preconstruction permit from agencies administering EPA-approved state implementation programs.") (citing 42 U.S.C.

---

[19] The entirety of Part C is found in 42 U.S.C. §§ 7470–7479, 7491–7492.

§§ 7475(a)(1), 7479(2)(C)).[20]   Thus, a "permit required under Part C" must have been: (1) "issued in accordance" with the part; and (2) conform to the part's emission limitations.  *Id.*  In this regard, Part C sets forth certain emissions and notice requirements for permit applications, *see* 42 U.S.C § 7475(d), and provides specific maximum allowable increases and maximum allowable concentrations for various pollutants, *see* 42 U.S.C. § 7473.  No other substantive or procedural requirements regarding a permit that "has been issued," whether or not to *issue* a permit, or emission limitations, appear in Part C's sections.[21]   Accordingly, under the plain meaning of § 7604(a)(3) where, as here, a permit has been issued that contains conforming emission limitations and is not alleged to have been issued contrary to § 7475(d), a citizen suit challenging that permit falls outside the jurisdictional grant of the statute.[22]

---

[20] 42 U.S.C. § 7479(2)(C) defines construction as including "modification … of any source or facility."

[21] In addition to subparagraph (a)(1)'s requirement of obtaining an issued permit prior to constructing a major emitting facility, subparagraphs (a)(2) through (a)(8) of the same section set forth additional requirements for constructing a major emitting facility, such as (as explained below) a public hearing on a "proposed permit," 42 U.S.C. § 7475(a)(2), and that "the proposed facility is subject to the best available control technology for each pollutant," *id.* at § 7475(a)(4).  However, as explained above, the permit requirement of (a)(1) asks whether a permit was *issued* in accordance with Part C.  Necessarily, this requirement only incorporates language in Part C governing the issuance of permits.  The plain language of § 7475 demonstrates that subparagraphs (a)(1) through (a)(8) are conditions for *construction* of a major emitting facility, not conditions for *issuance* of a permit.  Accordingly, subparagraphs (a)(2) through (a)(8) do not fall under the ambit of § 7475(a)(1)'s requirement that a permit be "issued … in accordance" with part C.  *Compare* 42 U.S.C. § 7475(a) ("No major emitting facility … may be constructed … unless…") *with* 42 U.S.C. § 7475(d)(2)(C)(i) ("[A] permit shall not be issued unless…").  The conclusion that subparagraphs (a)(2) through (a)(8) are not contained in § 7475(a)(1)'s permit requirement is buttressed by the structure of § 7475(a), under which the additional "conditions are not contained as subparagraphs to existing subparagraph (1)," thus suggesting that the "additional requirements … are not subsumed by the initial requirement to obtain a preconstruction permit."  *New York v. Niagara Mohawk Power Corp.*, 263 F.Supp.2d 650, 664 (W.D.N.Y. 2003); *see also Club v. Dairyland Power Co-op.*, No. 10-cv-303, 2010 WL 4296422, at *5 (W.D. Wisc. Oct. 22, 2010) ("[A]lthough the obligations [of the other subparagraphs] may be determined during the permitting process and included in a PSD permit, they are obligations independent of the permit requirement ….").

[22] At various points during this litigation, Plaintiffs (and Nucor) have cited § 7475(e) as support for the proposition that Part C incorporates public participation requirements.  *See* Doc. #29 at 3 (citing § 7475(e)(3); Doc. #69 at ¶¶ 22(c) & 48 (citing § 7475(e) and § 7475(e)(2)); Doc. #47-2 at 2 (citing § 7475(e)(2)).  None of § 7475(e)'s three subparagraphs supports this proposition.  Subparagraph (1), which only requires that an "analysis" of ambient air quality be conducted by the State or "the major emitting facility applying for [the] permit," does not establish any public participation requirements.  Subparagraph (2) requires that such analysis "be available at the time of the public hearing;" it does not require a public hearing.  Finally, subparagraph (3) merely authorizes the promulgation of regulations "respecting the analysis required," it does not create any public participation requirements, much less requirements that would be conditions of issuance of a permit.  Regardless, none of the provisions, which each relate solely to analysis of pollutants, governs the issuance of a permit or emissions limitations.  Accordingly, the provisions do not alter the scope of s 7475(a)(1).

In addition to the clear language of § 7604(a)(3), the broader statutory context further demonstrates that the plain meaning of "without a permit required under Part C" does not include a permit alleged to be invalid due to non-compliance with permit requirements beyond those specifically enumerated by the part. *See Reich v. Arcadian Corp.*, 110 F.3d 1192, 1195–96 (5th Cir. 1997) ("When we evaluate the terms of a statute, the Supreme Court has cautioned us to abide by a 'fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used.'") (quoting *Deal v. United States*, 508 U.S. 129, 132 (1993)). The CAA's statutory scheme, particularly Part C, indicates that, had Congress intended to do so, it could very well have written the citizen suit provision in a way that made clear that jurisdiction existed over such challenges.

Subsection (a)(2) of § 7475 states:

> No major emitting facility on which construction is commenced after August 7, 1977, may be constructed in any area to which this part applies unless ... *the proposed permit* has been subject to a review in accordance with this section, the required analysis has been conducted in accordance with regulations promulgated by the Administrator, *and a public hearing has been held with opportunity for interested persons including representatives of the Administrator to appear and submit written or oral presentations on the air quality impact of such source, alternatives thereto, control technology requirements, and other appropriate considerations* ….

(emphases added). Based on the text of this section, it is clear that Congress knew how to specifically include references to procedural and regulatory requirements but chose not to do so in § 7604(a)(3) or § 7475(a)(1) (the provision setting forth the permit requirement). This omission supports the conclusion that § 7604(a)(3)'s use of "permit required under Part C" was not intended to include the procedural compliance argued by Plaintiffs. *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (ellipsis in original) ("Where Congress includes particular

language in one section of a statute but omits it in another …, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."); *see generally Bos Dairy, L.C. v. U.S. Dep't of Agric.*, 209 F.3d 785, 788 (5th Cir. 2000) (applying omission canon in determining plain meaning); *In re Mirant Corp.*, 303 B.R. 319, 327 (N.D. Tex. 2003) (same). More importantly, the provision solidifies the distinction between the permit requirement of Part C – which is only subject to certain statutory requirements – and Part C's requirements governing "proposed permits" – which are subject to regulations and hearing requirements.

Thus, the text of § 7604(a)(3), viewed in isolation and in the broader context of the statutory scheme, simply does not support Plaintiffs' contention that the Court has jurisdiction where a defendant possesses a PSD permit that sets forth valid emissions limitations. Likewise, Plaintiffs have not identified, and this Court has been unable to find, anything in the text of the CAA[23] or, to the extent relevant,[24] its legislative history,[25] that would suggest that Congress

---

[23] The Court is aware that, as cited above, one of the purposes of Part C is "to assure that any decision to permit increased air pollution in any area to which this section applies is made only after careful evaluation of all the consequences of such a decision and after adequate procedural opportunities for informed public participation in the decisionmaking process." 42 U.S.C. § 7470(5). This stated purpose relates to Part C, not the jurisdictional reach of citizen suits under § 7604(a)(3). Furthermore, nothing in this Court's decision curtails the procedural requirements of Part C.

[24] Because the language at issue here is plain, the Court need not resort to an analysis of the legislative history of the CAA's citizen suit provision. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) ("As we have repeatedly held, the authoritative statement is the statutory text, not the legislative history or any other extrinsic material. Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise *ambiguous* terms.") (emphasis added).

[25] To the extent Plaintiffs have argued that their lawsuit is at the heart of what Congress intended to protect through citizen suit provisions, namely, the right for citizens to participate in public hearings regarding CAA permits, Doc. #42 at 8, the Court finds the argument unpersuasive. Plaintiffs have not cited any legislative history that specifically suggests an intent by Congress to allow citizen suits to be used to vindicate procedural rights that can also be vindicated in the administrative review process. *See Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 298–99 (2010) ("While the absence of specific legislative history in no way modifies the conventional judicial duty to give faithful meaning to the language Congress adopted in the light of the evident legislative purpose in enacting the law in question, there is no evident legislative purpose to guide our resolution of the discrete issue that confronts us.") (internal quotation marks and citation omitted). To the contrary, in the Senate Committee Report to the Clean Air Act Amendments of 1977, the Senate Committee noted that "in order to challenge the legality of a permit *which a State has actually issued*, or proposes to issue, under section 110(g)

intended for § 7604(a)(3) to reach suits where a plaintiff challenges a permit that sets forth valid emissions limitations based on grounds not specifically included in Part C's provisions. Finally, there is no argument or indication that following the plain meaning of § 7604(a)(3) would produce an absurd result. Accordingly, the plain meaning of "without a permit required under Part C," as it appears in § 7604(a)(3), does *not* include an issued permit alleged to be invalid on procedural grounds. *Aaron v. Sec. & Exchange Comm'n*, 446 U.S. 680, 700 (1980) ("In the absence of a conflict between reasonably plain meaning and legislative history, the words of the statute must prevail.").

### D. Existing Fifth Circuit Precedent Regarding § 7604(a)(3)'s Scope

The conclusion that the plain meaning of "without a permit" in § 7604(a)(3) does not authorize jurisdiction in this case is consistent with the existing Fifth Circuit precedent in *CleanCOALition*, as argued by MS Silicon.

In *CleanCOALition*, environmental groups challenged the proposed construction of a coal plant in Texas under the CAA's citizen suit provision, alleging that the permit application of the coal company, TXU Power, did not comply with the CAA's preconstruction emissions requirements because the permit application submitted was incomplete. 536 F.3d at 469, 477. The plaintiffs sought to enjoin construction on the plant after the state issued a preliminary notice of its intent to grant TXU Power's application but before a final permit had issued or construction had begun. *Id.* at 469–71. The plaintiffs argued that the court had jurisdiction

---

[proposed Part C to the Clean Air Act], a citizen must seek administrative remedies under the State permit consideration process, or judicial review of the permit in State court." S. Rep. No. 94-717, at 82 (1976) (emphasis added). Even giving full weight to Plaintiffs' argument that not allowing their suit to proceed would undermine the integrity of the public participation requirements that Congress made a key component of the CAA, any such legislative intent that is theoretically discernible here does not overcome the plain text of the statute. *See Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (internal quotation marks omitted).

under § 7604(a)(3) because "without a permit" means "without a permit that complies with the [CAA]," including a complete permit application. *Id.* at 479 & n.13. The Fifth Circuit rejected this argument, holding that "§ 7604(a)(3) does not authorize preconstruction citizen suits against facilities that have *either obtained a permit* or are in the process of doing so."[26] *Id.* at 479 (emphasis added). Indeed, although TXU Power had not yet obtained a PSD permit at the time suit was commenced, the Fifth Circuit noted that TXU Power had since "successfully obtained" a permit from the Texas permitting agency, and that "[t]hus, it can hardly be said—as Appellants must in order for § 7604(a)(3) to apply—that TXU is proposing to construct or constructing a facility 'without a permit.'" *Id. Accord Nucor Steel-Arkansas*, 2015 WL 791108, at *8 ("In short, challenges to state-issued permits may not be brought in federal court.") (internal quotation marks and brackets omitted).[27]

MS Silicon argues that *CleanCOALition* controls the outcome of this case, and that Plaintiffs' suit is nothing more than a collateral attack on a facially valid permit. Doc. #25 at 6–7. Plaintiffs contend that *CleanCOALition* is not controlling because the opinion "did not answer … whether § 7604(a)(3) authorizes citizen suits against defendants who commence construction … with a permit that is not a PSD permit [or] whether [the statute] authorizes citizen suits after a final permit is issued without strict compliance with the public participation requirements mandated by PSD." Doc. #29 at 9; Doc. #42 at 9. In other words, Plaintiffs submit that

---

[26] The Fifth Circuit "agreed[d] with the district court's interpretation" that § 7604(a)(3) "authoriz[es] citizen suits when an entity proposes to construct or constructs a facility without a permit whatsoever." 536 F.3d at 478-79.

[27] To the extent Plaintiffs may dispute the Court's reading of the plain language of the statute, and instead argue that § 7604(a)(3) grants jurisdiction where a proposed plant operator does not act "'in accordance with [the PSD provisions of the Act],'" Doc. #42 at 2 (citing 42 U.S.C. § 7475(a)(1)), the Court notes that the district court in *CleanCOALition* considered this very argument. *CleanCOALition v. TXU Power*, No. 6:06-cv-00355-WSS, slip op. at 17–18 (W.D. Tex. May 21, 2007); *aff'd*, 536 F.3d 469 (5th Cir. 2008) (internal citations omitted). The Court echoes the *CleanCOALition* trial court's reasoning that "[b]ased on the plain language of the statute, … Congress intended the violation in this provision to be proposing to construct or constructing a facility without a permit at all (or violating an existing permit). … Congress did not intend a federal CAA violation for proceeding through the permitting process, which would include determining the adequacy of information and analyses proposed in the permit application and setting the terms and conditions of the permit." *Id.* at 19–20.

*CleanCOALition* represents a challenge to the substantive, rather than procedural, standards of a potential PSD permit, a permit that was later issued. In contrast, Plaintiffs argue here that the procedural defects in the permitting process mean that the process never yielded a valid permit and that MS Silicon is thus constructing the Plant "without a permit." Doc. #42 at 9. In short, Plaintiffs urge this Court to distinguish between a challenge to a permit that is alleged to be invalid because the permit's substantive requirements on their face do not satisfy the CAA, and a challenge to a permit that is alleged to be invalid because the issuing authority did not follow the procedural requirements of the CAA.

Plaintiffs' attempt to distinguish *CleanCOALition* is not persuasive. There is no basis in § 7604(a)(3)'s use of the language "without a permit" to allow challenges on procedural grounds and yet not allow challenges to permits on substantive grounds. Indeed, at oral argument, Plaintiffs' counsel conceded that § 7604(a)(3) does not distinguish between a procedural and substantive challenge. Regardless, even if the facts of *CleanCOALition* are distinguishable from this matter, the Fifth Circuit's statement that § 7604(a)(3) does not apply where a defendant holds a permit is consistent with this Court's interpretation of the statute. *See O'Dell v. N. River Ins. Co.*, 614 F.Supp. 1556, 1559 (W.D. La. 1985) ("[D]icta by one [Fifth Circuit] panel stands as persuasive authority only, although it is entitled to great weight absent a contrary holding in the circuit.") (emphasis omitted); *see also Turner v. Raynes*, 611 F.2d 92, 94 (5th Cir. 1980) (Supreme Court dicta entitled to "great weight because of [its] source").

### E. Inapposite Cases Relied on by Plaintiffs

Apparently finding no comfort in the text of the statute, Plaintiffs cite an array of nonbinding authority in their brief that is easily distinguishable. Doc. #19 at 4; Doc. #29 at 3–4, 7, 11, 15; Doc. #42 at 4–10; Doc. #92 at 8. Such authorities, which include administrative

decisions, either: (1) rely on wholly different statutory schemes;[28] (2) concern cases in which the plant operator did not obtain the required permit at all;[29] or (3) relate to the issue of ripeness, not jurisdiction, under the citizen suit provision.[30] As such, this case law provides no authority for the Court to depart from the clear language of the statute.

### F. Summary

Plaintiffs ask this Court to interpret § 7604(a)(3)'s "without a permit" language to include looking *past* the permit itself to uncover alleged procedural violations in the permitting process that are said to render the permit invalid.[31] The language of the statute does not support such a tortured interpretation of its clear text. For this reason, as discussed above, the Court finds that it lacks jurisdiction over the claims against MS Silicon. Consequently, Plaintiffs' claims against MS Silicon must be dismissed.

### G. Jurisdiction over Plaintiffs' Remaining Claims against Rikard

Although the Court lacks jurisdiction over Plaintiffs' claims against MS Silicon, it remains to be determined whether the Court lacks jurisdiction over the entire case such that it must also dismiss Plaintiffs' claims against Rikard, who was not a party to Plaintiffs' original

---

[28] *See Alaska Dep't of Envtl. Conservation*, 540 U.S. at 501 (statute regarding EPA enforcement authority); *In Re: Russell City Energy Ctr.*, PSD Appeal No. 08-01, 2008 WL 3047431, at *9–10 (E.A.B. July 29, 2008) (discussing jurisdiction of Environmental Appeals Board to hear direct appeal of state permitting decision, citing 40 C.F.R. part 124); *Sierra Club v. Johnson*, 436 F.3d 1269, 1273 (11th Cir. 2006) (explaining Title V objection procedures under 42 U.S.C. § 7661d & 40 C.F.R. § 70.8).

[29] *Weiler v. Chatham Forest Prods., Inc.*, 392 F.3d 532, 534 (2d Cir. 2004) ("Chatham concedes that it has not obtained the permit identified by the plaintiffs, a so-called 'major source permit'"); *Citizens for Pennsylvania's Future v. Ultra Res., Inc.*, 898 F.Supp.2d 741, 746 (M.D. Pa. 2012) ("PennFuture claims that Ultra failed to obtain a Class D permit before constructing … properly alleging facts … from which the Court can conclude it has jurisdiction to hear the case.").

[30] *Zen-Noh Grain Corp. v. Leggett*, No. 09-282, 2009 WL 961253, at *5–8 (E.D. La. Apr. 7, 2009) (claim not ripe because no permit yet issued).

[31] During oral argument, when asked if Plaintiffs took the position that the permit is not facially valid, Plaintiffs' counsel conceded that Plaintiffs were not attacking any of the permit's provisions. Plaintiffs also do not dispute that the permit is a PSD permit.

complaint.[32]  *Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 346 n.7 (5th Cir. 2014) ("[S]ubject matter jurisdiction … is typically determined at the time the lawsuit is filed.") (citing *Carney v. Resolution Tr. Corp.*, 19 F.3d 950, 954 (5th Cir. 1994)).

When Plaintiffs filed their initial complaint, they included only the claims against MS Silicon, which this Court has found should be dismissed for lack of jurisdiction.  Doc. #1 at ¶ 6. Rikard, and the claims against him, were subsequently added through Plaintiffs' amended complaint.  Doc. #69.  Although amended claims are often dismissed where there is no jurisdiction over the original claims,[33] the lack of jurisdiction over an initial complaint does not automatically require the dismissal of claims first pleaded in an amended complaint.  In certain instances, a "complaint that is defective because it does not allege a claim within the subject matter jurisdiction of a federal court may be amended to state a different claim over which the federal court has jurisdiction."  *Watkins v. Lujan*, 922 F.2d 261, 264 (5th Cir. 1991) (quoting *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1070 (5th Cir. Unit A June 1981)).  Whether a court can exercise subject matter jurisdiction over an amended claim depends on whether the amendment relates back to the original complaint such that the amendment "is given retroactive effect to the date the original complaint was filed."  *Id.* at 265 (quoting *Sessions*, 648 F.2d at 1070).  This relation back analysis is governed by Rule 15 of the Federal Rules of Civil Procedure, which provides that "[a]n amendment to a pleading relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;

---

[32] As noted above, Plaintiffs rely separately on subsection (1) of § 7604(a) as granting the Court jurisdiction over Plaintiffs' claims against Rikard.

[33] *See, e.g.*, *In re Katrina Canal Breaches Litig.*, 342 Fed. App'x at 931.

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).

It is presently unclear whether the claims against Rikard relate back to the original complaint. The claims against Rikard appear to arise out of the same "conduct, transaction, or occurrence" as the claims against MS Silicon. *See Watkins*, 922 F.2d at 265 ("The common thread running through these opinions is that the relation-back doctrine is controlled not by the caption given a particular cause of action, but by the underlying facts upon which the cause of action is based."). Indeed, Plaintiffs' amended complaint adds no new factual allegations regarding the permitting violations alleged in the initial complaint but merely adds Rikard, an officer of MDEQ, as a party; adds a separate claim against Rikard; and amends the prayer for relief. *Compare* Doc. #1 *with* Doc. #69.

However, "[u]nder federal law, adding a new defendant generally does not relate back to the filing of the original complaint unless" Rule 15(c)(1)(C) also applies. *Braud v. Transp. Serv. Co. of Ill.*, 445 F.3d 801, 807 (5th Cir. 2006).[34] *See, e.g.*, *Anderson v. Phoenix of Hartford Ins. Co.*, 320 F. Supp. 399, 405 (W.D. La. 1970) (declining to allow relation back for jurisdictional purposes where "there is no misnomer or misdescription about the defendants when plaintiff first brought suit"); *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 548 (2010) (in holding that

---

[34] Rule 15(c)(1)(C) applies not only to the substitution of a named party but also to the addition of a party where the operative facts are the same. *Braud*, 445 F.3d at 807 n.12.

amended complaint related back to original complaint, clarifying that "Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known …, not what the *plaintiff* knew or should have known at the time of filing her original complaint.") (emphases in original).

Whether Plaintiffs' claims against Rikard relate back to the original complaint is a jurisdictional issue that the Court is obligated to consider. Because the issue has not been briefed or argued by the parties, it would not be appropriate for the Court to address the issue now. The Court will therefore order Plaintiffs and Rikard to submit a supplemental brief addressing whether Plaintiffs' claims against Rikard relate back to the original complaint.

## IV
### Conclusion

For the reasons discussed above, the Court does not have subject matter jurisdiction over Plaintiffs' claims against MS Silicon; thus, the claims against MS Silicon are **DISMISSED without prejudice**. Accordingly, the following pending motions relating to those claims are **DENIED as moot**: (1) Plaintiffs' motion [3] for a preliminary injunction; (2) MS Silicon's motion [97] to strike portions of Nucor's supplemental brief on jurisdiction; (3) MS Silicon's motion [98] to strike portions of Plaintiffs' supplemental brief on jurisdiction; and (4) MS Silicon's motion [109] for leave to file an updated declaration regarding the status of construction of the Plant. Nucor's motion [47] to submit its initial brief recommending that the Court exercise subject matter jurisdiction is **GRANTED.**

Additionally, Plaintiffs and Rikard are **ORDERED** to submit a supplemental brief, limited to ten (10) pages, addressing whether Plaintiffs' claims against Rikard relate back to the original complaint. Such briefs should be submitted no later than **August 18, 2015**.

**SO ORDERED**, this 30th day of July, 2015.

/s/ Debra M. Brown
**UNITED STATES DISTRICT JUDGE**