### IN THE UNITED STATES COURT OF APPEALS
### FOR THE FIFTH CIRCUIT

No. 16-60050

United States Court of Appeals
Fifth Circuit
**FILED**
March 30, 2018
Lyle W. Cayce
Clerk

16 FRONT STREET, L.L.C.; C. RICHARD COTTON,

      Plaintiffs–Appellants,

v.

MISSISSIPPI SILICON, L.L.C.; GARY C. RIKARD, Executive Director, Mississippi Department of Environmental Quality, In His Official Capacity and As Executive Director of the Mississippi Environmental Quality Permit Board,

      Defendants–Appellees.

Appeal from the United States District Court
for the Northern District of Mississippi

Before CLEMENT, PRADO, and OWEN, Circuit Judges.

PRISCILLA OWEN, Circuit Judge:

      16 Front Street, LLC and Richard Cotton (collectively, Front Street) filed a citizen suit under the Clean Air Act (CAA), 42 U.S.C. § 7604, to enjoin Mississippi Silicon from constructing a silicon plant. They later amended their complaint to include Gary C. Rikard, in his official capacity as Executive Director of the Mississippi Department of Environmental Quality and the Mississippi Environmental Quality Permit Board (collectively, MDEQ). The district court dismissed the claim against Mississippi Silicon for lack of subject matter jurisdiction. The court then dismissed the claim against MDEQ,

No. 16-60050

determining that the time-of-filing rule barred amending a complaint over which the court lacked jurisdiction. We affirm in part, reverse in part, and remand for further proceedings.

# I

The CAA prohibits construction of any "major emitting facility" unless the requirements of the Prevention of Significant Deterioration (PSD) Program are met.[1] The PSD program requires that "a permit has been issued for such proposed facility in accordance with this part setting forth emission limitations for such facility which conform to the requirements of this part."[2] The PSD program also includes other substantive and procedural requirements, such as a demonstration that the facility will meet emissions standards and a public hearing on the permit.[3]

This court has previously described the history and intent of the CAA's PSD program.[4] Importantly, the CAA makes "the States and the Federal Government partners in the struggle against air pollution."[5] Though "'[s]tates have the primary role in administering and enforcing the various components of the PSD program[,]' . . . Congress has set forth explicit substantive and procedural requirements that must be met prior to the construction of any major emitting facility."[6] States must design a plan for the enforcement and implementation of the CAA and submit it to the Environmental Protection Agency (EPA) for approval.[7] The EPA "interprets existing law and regulations to require an opportunity for state judicial review of PSD permit actions . . . by

---

[1] 42 U.S.C. § 7475(a).
[2] *Id*. § 7475(a)(1).
[3] *Id.* § 7475(a)(2)-(8).
[4] *CleanCOALition v. TXU Power*, 536 F.3d 469, 471-73 (5th Cir. 2008).
[5] *Id.* at 471 (quoting *Gen. Motors Corp. v. United States*, 496 U.S. 530, 532 (1990)).
[6] *Id.* at 472 (quoting *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 491 (2004)).
[7] *Id.* at 471-72.

2

Case: 16-60050     Document: 00514440951     Page: 3     Date Filed: 04/23/2018
Case: 1:14-cv-00183-DMB-DAS Doc #: 131-1 Filed: 04/23/18 3 of 20 PageID #: 1243

No. 16-60050

permit applicants and affected members of the public in order to ensure an adequate and meaningful opportunity for public review and comment on all issues within the scope of the permitting decision, including environmental justice concerns and alternatives to the proposed source."[8] The EPA approved Mississippi's CAA state implementation plan.[9]

In August 2013, Mississippi Silicon applied to MDEQ for a PSD permit to construct a silicon metal manufacturing plant in Burnsville, Mississippi. MDEQ issued a draft permit, making it available for public notice and comment by posting it on the MDEQ website on October 23, 2013. The following day, it published a notice of the comment period in a local paper, soliciting public comments through November 22, 2013. This notice advised that a public hearing would "be held if the Permit Board finds a significant degree of public interest." MDEQ also made certain materials relating to the permit available at the Burnsville Public Library. Only the EPA and United States Department of Agriculture commented on the draft permit. After the comment period ended, MDEQ issued a final permit for the Burnsville Plant, which the Mississippi Permit Board voted to accept in December of 2013.

Front Street filed this suit on September 29, 2014 under the citizen suit section of the CAA, 42 U.S.C. § 7604(a)(3). This section states that "any person may commence a civil action on his own behalf . . . against any person who proposes to construct or constructs any new or modified major emitting facility without a permit required under [the PSD program]."[10] Front Street argued that the permit was not "issued in accordance with PSD," because Mississippi Silicon and MDEQ did not "meet all applicable procedural requirements" and

---

[8] *Id.* at 473 (quoting Approval and Promulgation of Air Quality Implementation Plans; Commonwealth of Virginia—Prevention of Significant Deterioration Program, 61 Fed. Reg. 1880 (Jan. 24, 1996) (to be codified at 40 C.F.R. pt. 52)).

[9] *See* 40 C.F.R. § 52.1272 (2016).

[10] 42 U.S.C. § 7604(a)(3).

3

Case: 16-60050 Document: 00514440951 Page: 4 Date Filed: 04/23/2018
Case: 1:14-cv-00183-DMB-DAS Doc #: 131-1 Filed: 04/23/18 4 of 20 PageID #: 1244

No. 16-60050

that, consequently, Mississippi Silicon was constructing a new major emitting facility without the required PSD permit. Front Street alleged various procedural deficiencies, including: (1) a public comment period of only 29 days (instead of 30); (2) inadequate materials available for public review; (3) insufficient time to review the materials; and (4) the lack of a public hearing.

Front Street moved for a temporary restraining order and preliminary injunction. The district court denied the restraining order due to uncertainty about subject matter jurisdiction. The court called for additional briefing on subject matter jurisdiction, and pointed out that MDEQ was "noticeably absent" from the proceedings and that it was unclear what relief could be obtained if MDEQ were not a party.

Four months after filing, Front Street amended the complaint joining Gary C. Rikard, in his official capacity as Executive Director of MDEQ and its Permit Board, as an additional defendant. The amended complaint asserted that there was jurisdiction over the claim against MDEQ under 42 U.S.C. § 7604(a)(1), which allows an action against any "governmental instrumentality or agency . . . who is alleged to have violated . . . or to be in violation of [ ] an emission standard or limitation under [the CAA]."[11] The CAA requires plaintiffs to give states 60 days' notice prior to commencing an action under § 7604(a)(1).[12] Front Street sent the required notice to MDEQ on November 14, 2014, and filed the amended complaint on January 23, 2015.

The district court dismissed Front Street's claim against Mississippi Silicon for lack of subject matter jurisdiction after determining that the claim did not meet the requirements of the CAA's citizen suit section. The court later

---

[11] 42 U.S.C. § 7604(a)(1).
[12] *Id.* § 7604(b)(1)(A).

4

Case: 16-60050 Document: 00514440951 Page: 5 Date Filed: 04/23/2018
Case: 1:14-cv-00183-DMB-DAS Doc #: 131-1 Filed: 04/23/18 5 of 20 PageID #: 1245

No. 16-60050

dismissed without prejudice the claim against MDEQ for lack of subject matter jurisdiction. The district court concluded that "[b]ecause this Court lacked jurisdiction at the time the original complaint was filed, the time-of-filing rule compels the conclusion that this Court lacks jurisdiction over the amended complaint."

## II

We first consider Front Street's claim against Mississippi Silicon under § 7604(a)(3). We review de novo the district court's dismissal of Mississippi Silicon's claim for lack of subject matter jurisdiction.[13]

This court previously analyzed the language of § 7604(a)(3) in *CleanCOALition v. TXU Power*.[14] In that case, environmental interest groups filed a citizen suit alleging that the defendant's permit application did not comply with the requirements of the PSD program.[15] The defendant had not only applied for a permit, but had since successfully obtained one.[16] We agreed with the district court's interpretation of § 7604(a)(3) "as authorizing citizen suits when an entity proposes to construct or constructs a facility without a permit whatsoever."[17] We rejected the argument that "without a permit" meant "without a permit that complies with the CAA" because we "decline[d] to rewrite the plain language of the statute."[18] We held that "§ 7604(a)(3) does not authorize preconstruction citizen suits against facilities that have either obtained a permit or are in the process of doing so."[19]

---

[13] *Meredith v. La. Fed'n of Teachers*, 209 F.3d 398, 402 (5th Cir. 2000).
[14] 536 F.3d 469 (5th Cir. 2008).
[15] *Id.* at 470.
[16] *Id.* at 479.
[17] *Id.* at 478-79.
[18] *Id.* at 479.
[19] *Id.*

5

Case: 16-60050 Document: 00514440951 Page: 6 Date Filed: 04/23/2018
Case: 1:14-cv-00183-DMB-DAS Doc #: 131-1 Filed: 04/23/18 6 of 20 PageID #: 1246

No. 16-60050

Front Street contends that Mississippi Silicon is "without a permit" because a "purported PSD permit issued in violation of the [PSD program] requirements" is not a PSD permit. Front Street argues that the violations of the permitting process render Mississippi Silicon's permit not a PSD permit, citing language from *CleanCOALition* labeling PSD permit requirements "preconditions for *granting* a preconstruction permit."[20] However, in *CleanCOALition*, we rejected the argument that "without a permit" meant "without a permit that complies with the CAA."[21] We are bound by that decision and therefore reject the argument that "without a permit" means "without a permit that complies with procedural requirements."

Mississippi Silicon obtained a PSD permit and has since completed construction of the plant. Because § 7604(a)(3) does not authorize suits "against facilities that have either obtained a permit or are in the process of doing so,"[22] it does not apply here. Accordingly, we affirm the district court's dismissal of the claim against Mississippi Silicon.

## III

We turn to the dismissal of the claims against MDEQ for lack of subject matter jurisdiction, which turns only on the time-of-filing rule. We emphasize that no party contends that the district court had jurisdiction over claims against Mississippi Silicon by virtue of the amended complaint that added MDEQ as a defendant. The only question is whether the district court had subject matter jurisdiction over the claims against MDEQ simply because it was not included as a defendant in the initial complaint, and the district court had no subject matter jurisdiction over the claims against Mississippi Silicon, the sole defendant in the initial complaint.

---

[20] *Id.* at 477.
[21] *Id.* at 479.
[22] *Id.* at 478.

6

Case: 16-60050      Document: 00514440951     Page: 7     Date Filed: 04/23/2018
Case: 1:14-cv-00183-DMB-DAS Doc #: 131-1 Filed: 04/23/18 7 of 20 PageID #: 1247

No. 16-60050

Front Street's original complaint named Mississippi Silicon as the sole defendant, asserting a claim under a federal statute. After the district court questioned why MDEQ had not also been made a defendant, Front Street amended its complaint to include MDEQ as a defendant and asserted federal question jurisdiction under § 7604(a)(1). The district court subsequently dismissed the claims against Mississippi Silicon, correctly, for the reasons considered above, because the federal statute under which Front Street sued did not provide a cause of action. The district court then dismissed the claims against MDEQ for lack of subject matter jurisdiction. The district court reasoned that because it had no jurisdiction over the claims in the initial complaint, when only Mississippi Silicon was a defendant, it was barred by the "time-of-filing rule" from considering claims in an amended complaint that had added MDEQ as a defendant, even if it would otherwise have federal question jurisdiction.

The statute granting jurisdiction to federal courts when a federal question is asserted is 28 U.S.C. § 1331, which provides, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."[23] It is undisputed that Front Street's claims against MDEQ arise under the laws of the United States and that if they had been brought in a separate suit, the federal district court would have subject matter jurisdiction. MDEQ contends, however, and the district court held, that the "time-of-filing" rule considers only whether the district court had subject matter jurisdiction when the initial complaint was filed. MDEQ points out that at the time the initial suit was filed, the 60-day notice required under the federal statute had not been given by Front Street, and, therefore, Front Street could not have sued MDEQ when it first sued

---

[23] 28 U.S.C. § 1331.

7

No. 16-60050

Mississippi Silicon. MDEQ also contends—and the district court reasoned—that because MDEQ was not a party to the suit when it was initially filed, and because there was no subject matter jurisdiction over any of the claims against Mississippi Silicon, the district court could not assert jurisdiction over the claims against MDEQ in the amended complaint.

As an initial matter, nothing in the text of § 1331 forecloses jurisdiction over the claims, grounded in federal law, against MDEQ. The time-of-filing rule is not based on the text of § 1331. The time-of-filing rule was initially expressed in 1824 by Justice Marshall in *Mollan v. Torrance*, a case involving diversity jurisdiction, which was and is governed under a statute other than § 1331.[24] The time-of-filing rule in *Mollan* dealt with ouster of diversity jurisdiction.[25]

More recently, the Supreme Court has indicated that the time-of-filing rule pertains to diversity of citizenship cases.[26] Writing for the Court in *Grupo Dataflux*, Justice Scalia recounted that "[i]t has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.'"[27] He recognized the rule's familiarity: "This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure."[28] But he described the rule as one used in diversity jurisdiction cases: "It measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts

---

[24] 22 U.S. 537 (1824).
[25] *Id.* at 539 (concluding that "[i]t is quite clear, that the jurisdiction of the Court depends upon the state of things at the time of the action brought, and that after vesting, it cannot be ousted by subsequent events").
[26] *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004).
[27] *Id.* (quoting *Mollan*, 22 U.S. at 539).
[28] *Id.* at 570-71 (footnote omitted).

8

Case: 16-60050 Document: 00514440951 Page: 9 Date Filed: 04/23/2018
Case: 1:14-cv-00183-DMB-DAS Doc #: 131-1 Filed: 04/23/18 9 of 20 PageID #: 1249

No. 16-60050

that existed at the time of filing—whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal."[29]

The Court's decision in *Grupo Dataflux* recognized, however, that there has "long been an exception to the time-of-filing rule,"[30] citing its decision in *Caterpillar, Inc. v. Lewis*.[31] We begin our analysis of the issue in the present case with *Caterpillar* because, although it involved jurisdiction based on diversity of citizenship in the context of a removed action, its rationale is instructive.

It was undisputed in *Caterpillar* that at the time the suit was removed from state court to federal court, complete diversity of citizenship did not exist, and the district court had clearly erred in denying the motion to remand.[32] But, as the suit progressed in federal court, the non-diverse party was dismissed after a settlement was reached between that party and the plaintiff.[33] By the time of trial and judgment, it was undisputed that "there was . . . complete diversity."[34] The Supreme Court held that the federal district court had subject matter jurisdiction to try the case and render judgment. The Court first recognized that "[d]espite a federal trial court's threshold denial of a motion to remand, if, at the end of the day and case, a *jurisdictional* defect remains uncured, the judgment must be vacated."[35] But that was not the case in *Caterpillar* because "no jurisdictional defect lingered through judgment in the District Court."[36]

---

[29] *Id.* at 571.
[30] *Id.* at 572.
[31] 519 U.S. 61 (1996).
[32] *Id.* at 64.
[33] *Id.* at 66.
[34] *Id.* at 73.
[35] *Id.* at 76-77.
[36] *Id.* at 77.

9

No. 16-60050

The Court's decision in *Caterpillar* stands for the proposition that even in a diversity jurisdiction case, the lack of jurisdiction can be cured when the reason for the lack of diversity was the existence of a non-diverse party at the time the case first reached the district court. The lack of jurisdiction can be cured when the non-diverse party is dismissed in federal court. Assuming, without deciding, that the time-of-filing rule applies when a federal question is asserted as the basis of jurisdiction, the rationale of *Caterpillar* leads us to conclude that there would be a similar exception that permits a "cure" after the time of filing. Though the district court did not have subject matter jurisdiction over the claims against Mississippi Silicon in the initial complaint, it unquestionably had federal question jurisdiction over the claims asserted in the amended complaint against MDEQ. Any defect as to jurisdiction was "cured" as to MDEQ because the amended complaint asserted a basis for federal question jurisdiction, though the initial complaint had not included MDEQ as a party.

The Supreme Court's decision in *Grupo Dataflux* reinforces this conclusion, though it did not directly address the issue with which we are confronted today. The Court explained in *Grupo Dataflux* that "*Caterpillar* broke no new ground, because the jurisdictional defect it addressed had been cured by the dismissal of the party that had destroyed diversity."[37] The Court explained: "[t]hat method of curing a jurisdictional defect had long been an exception to the time-of-filing rule."[38] In *Grupo Dataflux*, the Court emphasized that in *Caterpillar*, "[the] Court unanimously held that the lack of complete diversity at the time of removal did not require dismissal of the case."[39]

---

[37] *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572 (2004).
[38] *Id.*
[39] *Id.* at 573.

10

No. 16-60050

The distinction the Court drew between the facts presented in *Grupo Dataflux* and those in *Caterpillar* also strongly supports our conclusion that because the district court had federal question jurisdiction over the claims against MDEQ, it is irrelevant that it did not have jurisdiction over the claims asserted only against Mississippi Silicon in the initial complaint. In *Grupo Dataflux*, "[t]here was from the beginning of [the] action a single plaintiff . . . which . . . was not diverse from the sole defendant."[40] The question that the Supreme Court decided was "whether a party's post-filing change in citizenship can cure a lack of subject-matter jurisdiction that existed at the time of filing in an action premised upon diversity of citizenship."[41] The Court recognized that because the plaintiff, Atlas, "had two partners who were Mexican citizens at the time of filing, the partnership was a Mexican citizen," and that because "the defendant, Dataflux, was a Mexican corporation, aliens were on both sides of the case, and the requisite diversity was therefore absent."[42] One month before trial began in *Grupo Dataflux*, the Mexican partners in Atlas left the partnership.[43] The case proceeded to trial and a verdict. The Supreme Court held that there was no jurisdiction under these circumstances.

The Court distinguished the situation in *Caterpillar*, where, at the time of trial, there had been *a change in parties*. The Court explained that in *Caterpillar*, "[t]he postsettlement dismissal of the diversity-destroying defendant cured the jurisdictional defect," and "the less-than-complete diversity which had subsisted throughout the action had been converted to complete diversity between the remaining parties to the final judgment."[44] The

---

[40] *Id.* at 579.
[41] *Id.* at 568.
[42] *Id.* at 569.
[43] *Id.*
[44] *Id.* at 573.

11

Case: 16-60050 Document: 00514440951 Page: 12 Date Filed: 04/23/2018
Case: 1:14-cv-00183-DMB-DAS Doc #: 131-1 Filed: 04/23/18 12 of 20 PageID #: 1252

No. 16-60050

"crux of the analysis in *Caterpillar*," the Court explained, "related not to cure of the *jurisdictional* defect, but to cure of a *statutory* defect, namely, failure to comply with the requirement of the removal statute . . . that there be complete diversity at the time of removal."[45] The Court emphasized in *Grupo Dataflux* that "'[w]here there is *no* change of party, a jurisdiction depending on the condition of the party is governed by that condition, as it was at the commencement of the suit.'"[46] In *Grupo Dataflux*, there was no change in parties to the action, but here, the amended complaint did change the parties to the action. As the decision in *Grupo Dataflux* emphasizes, "[t]he purported cure arose not from a change in the parties to the action, but from a change in the citizenship of a continuing party. Withdrawal of the Mexican partners from Atlas did not change the fact that Atlas, the single artificial entity created under Texas law, remained a party to the action."[47] The Court recognized that "[t]rue, the composition of the partnership, and consequently its citizenship, changed. But allowing a citizenship change to cure the jurisdictional defect that existed at the time of filing would contravene the principle articulated by Chief Justice Marshall in *Conolly*."[48]

In the present case, there was a change in parties after the initial complaint was filed. MDEQ was added as a new party, and a claim arising under federal law was alleged against it. Allowing a suit against a new party to proceed is not an attempt to cure the jurisdictional defect that existed at the time of filing as to the initial defendant. Had the initial complaint included claims against both MDEQ and Mississippi Silicon, the fact that there was no jurisdiction over the claims against Mississippi Silicon would not have

---

[45] *Id*. at 574.
[46] *Id*. (quoting *Conolly v. Taylor*, 27 U.S. 556, 565 (1829))
[47] *Id*. at 575.
[48] *Id*.

Case: 16-60050 Document: 00514440951 Page: 13 Date Filed: 04/23/2018
Case: 1:14-cv-00183-DMB-DAS Doc #: 131-1 Filed: 04/23/18 13 of 20 PageID #: 1253

No. 16-60050

precluded federal question jurisdiction over the claims against MDEQ, assuming the requisite notice had been given. The jurisdictional bases of the claims are independent of one another.

Front Street has cited no decision in which the Supreme Court or a Circuit Court has held that the time-of-filing rule applies to facts like those in the present case. To the contrary, the First Circuit in *ConnectU LLC v. Zuckerberg* held that the time-of-filing rule does not apply when a plaintiff "switch[es] jurisdictional horses before any jurisdictional issue has been raised" from a defective allegation of diversity jurisdiction in an initial complaint to an allegation of federal question jurisdiction in an amended complaint.[49] That court reasoned that "concerns about forum-shopping and strategic behavior" in diversity cases "offer special justifications for" the rule, but that such "concerns are not present in the mine-run of federal question cases."[50] The *ConnectU* decision further interpreted the Supreme Court's decision in *Grupo Dataflux* as "explicitly restrict[ing] the time-of-filing rule to diversity cases."[51]

We do not hold that that the Supreme Court's decision in *Grupo Dataflux* restricts the time-of-filing rule to diversity cases. The time-of-filing rule is most frequently employed in the removal context, to prevent a plaintiff from re-pleading after removal to deprive the federal court of jurisdiction. The fact that a case was removed based on a federal question rather than diversity should not affect whether a plaintiff may re-plead in order to obtain a remand to state court. Our court explored this in *Boelens v. Redman Homes, Inc.*, although the plaintiffs in that case had filed suit in federal court and

---

[49] 522 F.3d 82, 92 (1st Cir. 2008).
[50] *Id.*
[51] *Id.* at 93.

13

Case: 16-60050 Document: 00514440951 Page: 14 Date Filed: 04/23/2018
Case: 1:14-cv-00183-DMB-DAS Doc #: 131-1 Filed: 04/23/18 14 of 20 PageID #: 1254

No. 16-60050

established federal question jurisdiction in their initial complaint.[52] They amended their complaint, however, and it failed to establish jurisdiction in federal court.[53] The case nevertheless proceeded to trial, but this court held that when the plaintiffs voluntarily amended their complaint, the amended complaint governed whether the court continued to have jurisdiction and that the judgment in their favor obtained at trial must be reversed.[54] In so doing, we contrasted cases that had been removed to federal court, rather than initially filed in federal court.[55] We reasoned that the time-of-filing rule applies when a case has been *removed* on the basis of a federal question because "[t]he rule that a plaintiff cannot oust removal jurisdiction by voluntarily amending the complaint to drop all federal questions serves the salutary purpose of preventing the plaintiff from being able to destroy the jurisdictional choice that Congress intended to afford a defendant in the removal statute."[56] We explained that, "[t]he same considerations are not present, however, in a case of original federal question jurisdiction in which the plaintiff, rather than the defendant, is invoking the jurisdiction of the federal court."[57] "In that case, because the burden is on the plaintiff to establish jurisdiction in the first instance, we conclude that the plaintiff must be held to the jurisdictional consequences of a voluntary abandonment of claims that would otherwise provide federal jurisdiction."[58] We looked to the

---

[52] 759 F.2d 504, 506 (5th Cir. 1985).
[53] *Id.*
[54] *Id.* at 512.
[55] *Id.* at 507.
[56] *Id.*; *see also id.* ("Although there is older authority to the contrary, the majority view is that a plaintiff's voluntary amendment to a complaint after removal to eliminate the federal claim upon which removal was based will not defeat federal jurisdiction.").
[57] *Id.* at 507-08.
[58] *Id.* at 508.

14

Case: 16-60050      Document: 00514440951      Page: 15      Date Filed: 04/23/2018
Case: 1:14-cv-00183-DMB-DAS Doc #: 131-1 Filed: 04/23/18 15 of 20 PageID #: 1255

No. 16-60050

amended complaint, not the initial complaint, in *Boelens* to determine if the federal court had jurisdiction.

Our decision in *Boelens* teaches that the time-of-filing rule should apply in the context of cases raising a federal question that have been removed, but that in cases initially brought by a plaintiff in federal court, the time-of-filing rule is not dispositive.[59] Jurisdiction in federal court may be lost if the amended pleading fails to state a claim arising under the laws of the United States.

Our decision in *Spear Marketing* is entirely consistent with *Boelens*.[60] In *Spear Marketing*, the defendants removed the case to federal court on the ground that the plaintiff's claims were completely preempted by the Copyright Act.[61] In an amended complaint following removal, the plaintiffs no longer asserted claims that were preempted and then moved to remand the case to state court.[62] Unsurprisingly, this court held that "once a case is properly removed, the district court retains jurisdiction *even if* the federal claims are later dropped."[63] We explained in *Spear Marketing* that the plaintiff had "conflated the question whether the *initial* removal was proper—which follows the time-of-filing rule—with the question whether the district court should, in its *discretion*, remand the case when the federal claims disappear as the case progresses."[64] We rejected a number of the plaintiff's arguments regarding jurisdiction, including its assertion that the time-of-filing rule was limited by *Grupo Dataflux* to diversity cases.[65] But that statement must be considered in

---

[59] *Id.* at 507-08.
[60] *Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 591-92 (5th Cir. 2015).
[61] *Id.* at 591.
[62] *Id.*
[63] *Id.* at 592.
[64] *Id.* at 593.
[65] *Id.*

15

Case: 16-60050      Document: 00514440951     Page: 16     Date Filed: 04/23/2018
Case: 1:14-cv-00183-DMB-DAS Doc #: 131-1 Filed: 04/23/18 16 of 20 PageID #: 1256

No. 16-60050

the context of the issue presented, which was whether, after a defendant had properly removed a case, the plaintiff could replead to divest the federal court of jurisdiction and therefore require remand to state court. The law is clear that a plaintiff cannot do so after removal, and our conclusion that *Grupo Dataflux* did not change the law in this regard is correct and entirely consistent with the Supreme Court's jurisprudence regarding removal cases.[66] Our decision in *Spear Marketing* did not address, and did not purport to address, the factual pattern presented here.

With regard to federal question jurisdiction, this court has said, in certain contexts, that "[a] complaint that is defective because it does not allege a claim within the subject matter jurisdiction of a federal court may be amended to state a different claim over which the federal court has jurisdiction" if the claim "arises out of the conduct or occurrence set forth in the original complaint."[67] Using this rationale, we have allowed amendments that change the cause of action from § 1981 to Title VII to relate back to the original complaint for the purposes of tolling, even though the court had no jurisdiction over § 1981 claims, so long as the "amendment ar[ose] out of the conduct or occurrence set forth in the original complaint."[68]

In *Whitmire v. Victus Ltd.*, the plaintiff filed suit in federal court asserting causes of action under a federal statute and contended that the district court had supplemental jurisdiction over state-law claims.[69] The

---

[66] *See, e.g., Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 n.6 (2007) ("[W]hen a defendant removes a case to federal court based on the presence of a federal claim, an amendment eliminating the original basis for federal jurisdiction generally does not defeat jurisdiction.").

[67] *Johnson v. Crown Enters., Inc.*, 398 F.3d 339, 342-43 n.3 (5th Cir. 2005) (quoting *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1070 (5th Cir. Unit A Jun. 1981)).

[68] *Watkins v. Lujan*, 922 F.2d 261, 265 (5th Cir. 1991) (quoting *Sessions*, 648 F.2d at 1070); *see also Johnson*, 398 F.3d at 342 n.3 (allowing a § 1981 claim first made in an amendment to cure the possible jurisdictional defect over the original Title VII claim).

[69] 212 F.3d 885, 886-87 (5th Cir. 2000).

16

Case: 16-60050   Document: 00514440951   Page: 17   Date Filed: 04/23/2018
Case: 1:14-cv-00183-DMB-DAS Doc #: 131-1 Filed: 04/23/18 17 of 20 PageID #: 1257

No. 16-60050

district court granted summary judgment against the plaintiff on the federal claims, and dismissed the state-law claims without prejudice.[70] The plaintiff sought leave to amend to assert that there had been diversity jurisdiction from the inception of the case.[71] This court held that she could so amend, and that the district court abused its discretion in denying the motion to amend.[72]

By contrast, in *United States ex rel. Jamison v. McKesson Corp.*, we rejected attempts by plaintiffs to rest jurisdiction on "substantive jurisdictional fact[s]" that first appear in amended complaints, noting that § 1653 does not allow curing "substantive defects in jurisdiction."[73] But a later decision from our court, *Arena v. Graybar Electric Co.*, held that in a case initially filed in federal district court, that court may have had pendant jurisdiction to adjudicate state-law claims, even though federal question jurisdiction was lacking, and we remanded for a factual determination of whether the plaintiff could establish that there had been diversity jurisdiction from the outset of the suit.[74]

---

[70] *Id.*

[71] *Id.*

[72] *Id.* at 890.

[73] 649 F.3d 322, 328 n.8 (5th Cir. 2011); *see id.* at 328 (discussing, in a False Claims Act case, the Supreme Court's decision in *Rockwell*, and holding that "'[t]he term "allegations" is *not limited* to the allegations of the original complaint.' The [Supreme] Court did not hold, however, that the original complaint is irrelevant to jurisdiction or that a relator need not establish jurisdiction from the moment he first files his action. Indeed, *Rockwell* did not speak to the question whether a relator can use an amended complaint to establish jurisdiction when the original complaint is lacking. Consequently, we fall back on the longstanding rule that the amendment process cannot 'be used to create jurisdiction retroactively where it did not previously exist.' If Jamison's complaint did not establish jurisdiction, it should have been dismissed; his amendments cannot save it." (quoting *Rockwell Intern. Corp. v. United States*, 549 U.S. 457, 473 (2007))); *see also In re Katrina Canal Breaches Litig.*, 342 F. App'x 928, 930-31 (5th Cir. 2009) (per curiam) (rejecting the exercise of supplemental jurisdiction over state-law claims in an original complaint based solely on claims in an amended complaint when the amended complaint added a new defendant, new allegations, and a new cause of action).

[74] 669 F.3d 214, 224-25 (5th Cir. 2012).

No. 16-60050

To the extent that there is a conflict between *Jamison*, on one hand, and one of our decisions such as *Whitmire*, *Watkins*, *Sessions*, *Johnson*, or *Arena* on the other, the earlier-in-time decision controls. But in any event, none of these cases considers whether, in a suit initially filed in federal court, the addition of a new party in an amended complaint can confer jurisdiction over the new party even though the initial complaint failed to establish federal question jurisdiction as to a different defendant.

The addition of MDEQ as a party is not being used to create jurisdiction over the claim against Mississippi Silicon. Nor could it. As described above, the district court did not have subject matter jurisdiction over the federal question claim in the original complaint, which only named Mississippi Silicon as a defendant.[75] We have found no decision that holds that if an original complaint—arising via federal question, not diversity or removal—asserts a claim against a party over which the court has no subject matter jurisdiction, the district court cannot assert federal question jurisdiction over a claim asserted against a new party in an amendment adding the new defendant. It is undisputed that had 16 Front Street sued MDEQ alone, after giving the required 60 days' notice, the district court would have had jurisdiction. We can discern no basis in the Supreme Court's jurisprudence for concluding that the district court lacked subject matter jurisdiction over the federal-law claims against MDEQ. Accordingly, the district court should not have dismissed the claims against MDEQ based on the time-of-filing rule.

### IV

MS Silicon briefly argues that Front Street lacks standing to appeal the dismissal of the claims against MDEQ because Front Street may refile against MDEQ and therefore suffered no injury as a result of the district court's

---

[75] *Supra*, Section II.

18

Case: 16-60050 Document: 00514440951 Page: 19 Date Filed: 04/23/2018
Case: 1:14-cv-00183-DMB-DAS Doc #: 131-1 Filed: 04/23/18 19 of 20 PageID #: 1259

No. 16-60050

dismissal without prejudice. This argument runs counter to both the Supreme Court's and our precedents. As the Supreme Court held in *United States v. Wallace & Tiernan Co.*, "[t]hat the dismissal was without prejudice to filing another suit does not make the cause unappealable, for denial of relief and dismissal of the case ended this suit so far as the District Court was concerned."[76] We have consistently echoed this position[77] and accordingly reject the argument that Appellants lack standing to appeal their claim against MDEQ.

## V

Finally, Mississippi Silicon moves for attorneys' fees pursuant to Rule 38 of the Federal Rules of Appellate Procedure, which allows the court to award damages if an appeal is "frivolous."[78] Mississippi Silicon makes three arguments: (1) Appellants' interpretation of § 7604(a)(3) is frivolous as it was "identical to that rejected in *CleanCOALition*"; (2) Appellants' appeal of the dismissal without prejudice of their claim against MDEQ is "unnecessary and a waste," and thus frivolous; and (3) attorneys' fees are also warranted because Appellants have abused litigation.

As to the first argument, "[a]n appeal is frivolous if the result is obvious or the arguments of error are wholly without merit."[79] Bad faith and harassment are not necessary for sanctions, but "[b]ad faith may aggravate the

---

[76] 336 U.S. 793, 794 n.1 (1949).

[77] *See, e.g.*, *Linn v. Chivatero*, 714 F.2d 1278, 1280 (5th Cir. 1983) ("To say that [appellant] may bring a different action in the future is not to say that this action was not fully and finally disposed of below."); *see also Prewitt v. City of Greenville*, 1999 WL 1131957, at *1 (5th Cir. Nov. 16, 1999) (per curiam) (unpublished) ("A dismissal without prejudice may constitute a final judgment for purposes of appeal.").

[78] FED. R. APP. P. 38 ("If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.").

[79] *Coghlan v. Starkey*, 852 F.2d 806, 811 (5th Cir. 1988) (per curiam) (citation omitted).

circumstances justifying sanctions."[80] Attempting to distinguish precedent and offering independent legal analysis are factors that can weigh against sanctions.[81] Front Street faced long odds in overcoming two legal hurdles as to its claims against Mississippi Silicon: the plain text of the statute and the Fifth Circuit precedent in *CleanCOALition*. Nevertheless, Front Street made legitimate arguments and attempts to distinguish *CleanCOALition*. Though ultimately unsuccessful, the arguments were not "wholly without merit" and do not warrant sanctions.

As to the second argument, Mississippi Silicon argues that this appeal is frivolous because Front Street lacks standing to bring it. Mississippi Silicon offers no binding precedent for this proposition and, as discussed above, it is without merit. Sanctions are also not warranted here.

As to its final argument, Mississippi Silicon requests that this court consider Appellants' "[r]elentless [l]itigation [c]ampaign" of filing "meritless suits" to damage Mississippi Silicon's business interests. While "[b]ad faith may aggravate the circumstances justifying sanctions,"[82] Front Street's appeal of the claim against Mississippi Silicon is not wholly without merit. We therefore deny sanctions.

\* \* \*

For the foregoing reasons, we AFFIRM the district court's judgment that it lacks jurisdiction over Mississippi Silicon, L.L.C., but we REVERSE the district court's judgment regarding MDEQ and REMAND for further proceedings, as warranted. Mississippi Silicon's motion for attorneys' fees is also DENIED.

---

[80] *Id.* at 814.
[81] *See id.* at 809.
[82] *Id.* at 814.